UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------

ESTER LORUSSO,

                Plaintiff,

        -against-

ALITALIA-LINEE AEREE ITALIANE SpA,

                Defendant.

------------------------------------

Case No. 07 CV 3583 (LBS)(RLE)

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT ALITALIA-LINEE AEREE ITALIANE SpA'S
MOTION FOR SUMMARY JUDGMENT**

Alan M. Koral (AK-1503)
Daniel C. Green (DG-0059)
VEDDER PRICE P.C.
1633 Broadway, 47th Floor
New York, New York  10019
(212) 407-7700

*Attorneys for Defendant
Alitalia-Linee Aeree Italiane SpA*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ...................................................................................... 2

ARGUMENT ........................................................................................................ 12

POINT ONE     THE ELIMINATION IN 2004 OF LORUSSO'S POSITION IN THE
PASSENGER DIVISION CANNOT ESTABLISH ANY OF HER
CLAIMS ........................................................................................ 13

    A.    Lorusso's "Transfer" Was Not an Adverse Action .............................................. 14

    B.    Lorusso Has Failed to Raise an Inference of Discriminatory Intent in the
Elimination of Her Position as Director of Marketing......................................... 15

    C.    Lorusso Complained Because of Her "Transfer," Making Retaliation a
Factual Impossibility........................................................................................ 16

    D.    Alitalia Has Established a Legitimate, Nondiscriminatory Reason for Its
Decision to Eliminate Lorusso's Position as Director Of Marketing .................. 17

POINT TWO     THE ELIMINATION OF PLAINTIFF'S POSITION AS
MANAGING DIRECTOR OF GA 2000 CANNOT SUPPORT ANY
OF HER CLAIMS ......................................................................... 17

    A.    Lorusso Did Not Suffer Any Adverse Employment Action Upon the
Elimination of GA 2000.................................................................................... 17

    B.    Lorusso Has Failed to Raise Any Inference of Discriminatory Intent................. 18

    C.    Evidence Surrounding the Elimination of GA 2000 is Insufficient to
Establish Causal Connection Required for Retaliation Claim............................ 19

    D.    Alitalia Has Presented a Legitimate, Nondiscriminatory Reason for Its
Decision to Eliminate GA 2000........................................................................ 20

POINT THREE     THE EVENTS THAT OCCURRED AFTER LORUSSO LEFT GA
2000 CANNOT ESTABLISH ANY OF HER CLAIMS ............................. 20

    A.    Lorusso Has Failed to Establish That Alitalia Discriminated or Retaliated
Against Her in Its Decision to Fill Positions for Which Lorusso Feels She
Was Qualified .................................................................................................. 20

        1.    Regulatory Affairs Positions.................................................................... 20

        2.    Marketing/Sales Positions........................................................................ 22

    B.    Alitalia's Failure to Include Lorusso in The Cargo Division Incentive-
Based Bonus Program Cannot Support Any of Lorusso's Claims ..................... 23

POINT FOUR     PLAINTIFF'S TERMINATION FOLLOWING ELIMINATION OF
HER CARGO POSITION CANNOT ESTABLISH ANY OF HER
CLAIMS ........................................................................................ 23

# TABLE OF CONTENTS
## (continued)

**Page**

A.  There is No Evidence of Discriminatory Intent Behind Alitalia's Decision to Eliminate Lorusso's Position ........................................................................ 23

B.  There is No Evidence of Retaliatory Intent Behind Alitalia's Decision to Eliminate Lorusso's Position ........................................................................ 24

C.  Alitalia Has Articulated a Legitimate Nondiscriminatory Business Reason for the Elimination of Lorusso's Position ........................................................ 24

CONCLUSION ........................................................................................................ 25

# TABLE OF AUTHORITIES

**Page**

## Cases

*Allen v. St. Cabrini Nursing Home, Inc.*, 198 F.Supp.2d 442 (S.D.N.Y. 2002) .......................... 19

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed. 2d 202 (1986) .......... 12

*Blessing v. J.P. Morgan Chase and Co.*, 394 F.Supp.2d 569 (S.D.N.Y. 2005) .......................... 15

*Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed. 2d 345, 359 (2006) ............................................................................................................................ 14, 15

*Campbell v. Alliance Nat'l Inc.*, 107 F.Supp.2d 234 (S.D.N.Y. 2000) .................................... 16

*Celotex v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed. 2d 265 (1986) ................................ 12

*Decintio v. Westchester Cty. Med. Ctr.*, 807 F.2d 304 (2d Cir. 1986) ........................................ 21

*Ferrante v. American Lung Ass'n.*, 90 N.Y.2d 623, 665 N.Y.S.2d 25, 687 N.E.2d 1308 (1997) ................................................................................................................ 18

*Forrest v. Jewish Guild for the Blind*, 309 A.D.2d 546, 765 N.Y.S.2d 326 (1st Dept. 2003) ................................................................................ 13, 18

*Fullard v. City of New York*, 274 F. Supp. 2d 347 at 362 (S.D.N.Y. 2003) ................................ 15

*Galabya v. New York City Board of Educ.*, 202 F.3d 636 (2d Cir. 2000) .................................... 14

*Giannone v. Deutsche Bank Sec., Inc.*, 392 F. Supp. 2d 576 (S.D.N.Y. 2005) ............... 16, 22, 24

*Grant v. Morgan Guar. Trust Co.*, 638 F.Supp. 1528 (S.D.N.Y. 1986) ...................................... 22

*Hanna v. NY Hotel Trades Council*, 2007 N.Y. Misc. LEXIS 8262 (Sup. Ct. N.Y. Co. 2007) ........................................................ 13

*In re Laverack & Haines, Inc. v. NY State Div. of Human Rights*, 88 N.Y.2d 734, 650 N.Y.S.2d 76, 673 N.E.2d 586 (1996) ........................................................................ 22, 25

*James v. New York Racing Ass'n.*, 233 F.3d 149 (2d Cir. 2000) ........................................... 17, 20

*Kessler v. Westchester County Dept. of Social Services*, 461 F.3d 199 (2d Cir. 2006) ............... 14

*Knight v. N.Y. City Housing Authority*, 2007 U.S. Dist. LEXIS 9148 (S.D.N.Y. 2007) ............. 13

*Mauro v. Orville*, 259 A.D.2d 89, 697 N.Y.S.2d 704 (3d Dept. 1999) ...................................... 21

*Meckenberg v. N.Y. City Off-Track Betting*, 42 F.Supp.2d 359 (S.D.N.Y. 1999) ........................ 21

*Nicolo v. Citibank New York State, N.A.*, 147 Misc. 2d 111, 554 N.Y.S. 2d 795 (Sup. Ct. Monroe Co. 1990) ...................................................................................................... 21

*Nonnenmann v. City of New York*, 174 F.Supp.2d 121 (S.D.N.Y. 2001) .................................... 22

*Patrolmen's Benevolent Ass'n. v. City of New York*, 74 F.Supp.2d 321 (S.D.N.Y. 1999) ........... 14

NEWYORK/#190788.11

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Peer Int'l. Corp. v. Luna Records, Inc.*, 887 F.Supp. 560 (S.D.N.Y. 1995)................................. 12

*Phillips v. Mt. Sinai Med. Ctr.*, 2005 U.S. Dist. LEXIS 32312 (S.D.N.Y. 2005) ........................ 13

*Schwapp v. Town of Avon*, 118 F.3d 106 (2d Cir. 1997) ............................................................... 24

*Scotto v. Almenas*, 143 F. 3d 105 (2d Cir. 1998) ......................................................................... 12

*Seltzer v. Dresdner, Kleinwort, Wasserstein, Inc.*, 356 F.Supp.2d 288
  (S.D.N.Y. 2000) ................................................................................................. 14, 16, 17, 20

*Stetson v. Nynex Service Co.*, 995 F.2d 355 (2d. Cir. 1993).......................................................... 13

*Tarshis v. Riese Organization*, 195 F.Supp.2d 518 (S.D.N.Y. 2002)........................................... 25

*Timothy v. Our Lady of Mercy Med. Ctr.*, 2007 U.S. App. LEXIS 3980 (2d Cir. 2007) ............. 14

*Windham v. Time Warner, Inc.*, 275 F.3d 179 (2d Cir. 2001) ....................................................... 18

### Statutes and Other Authorities

Fed. R. Civ. P. 56................................................................................................................... 1, 12

New York City Human Rights Law ("NYCHRL") ............................................................... 13, 18

N.Y. City Admin. Code ................................................................................................................ 13

NYC Local Law 85 of 2005 ......................................................................................................... 13

NEWYORK/#190788.11

Defendant Alitalia–Linee Aeree Italiane SpA ("Defendant" or "Alitalia"), by its attorneys Vedder Price P.C., submits this memorandum of law in support of its motion, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment dismissing the Complaint of Ester Lorusso ("Plaintiff" or "Lorusso"), on the ground that the undisputed facts in the record preclude Lorusso from establishing the requisite elements of any of her claims against Defendant.

## PRELIMINARY STATEMENT

Lorusso has asserted three claims under the New York City Human Rights Law: 1) "gender" discrimination (First Cause of Action); 2) age discrimination (Second Cause of Action); and 3) retaliation (Third Cause of Action). In this memorandum, her three claims are addressed together because of the essential similarity of their requisite elements and of their legal and factual deficiencies. Lorusso has identified five occurrences or events which she alleges support her claims: 1) the elimination of her position as Director of Marketing in Alitalia's Passenger Division in 2004, which occurred after her acceptance of a promotion to Managing Director of an Alitalia subsidiary, GA 2000; 2) the elimination of her position at GA 2000 in November 2005 because of the closing of that subsidiary; 3) the failure to interview her for certain positions during the subsequent period, from February 2006 to roughly January 2007, although during almost all of this period she served as Director of Marketing Communications in Alitalia's Cargo Division; 4) her not being included in an incentive-based bonus program while in the Cargo Division; and 5) the ultimate elimination of her position in the Cargo Division and the termination of her employment by Alitalia in January 2007.

Summary judgment should be awarded to Alitalia on all claims arising from these events. First, Lorusso's transfers among Alitalia's subsidiaries and divisions were not adverse

employment decisions as a matter of law (*see* Points 1(A) and 2(A)).  Lorusso's two claims of

discrimination are untenable because she cannot establish the necessary inference of

discriminatory animus on the part of any of the decision-makers (*see* Points 1(B), 2(B) 3(A)(1-2)

and 4(B)).  Lorusso's claim of retaliation is likewise untenable because she cannot establish the

necessary retaliatory link, having invariably engaged in allegedly protected activities only *after*

the alleged "retaliatory" employment action took place or at a point too remote in time from the

employment action to support an inference of retaliation (*see* Points 1(C), 2(C) and 4(B)).

Moreover, Alitalia has presented legitimate business reasons for each of the complained-of

employment decisions (*see* Points 1(D), 2(D) and 4(C)).  Finally, Lorusso alleges that she was

discriminatorily excluded from an incentive program offered to certain Cargo Division

employees, but, as her job responsibilities were not revenue related, she was ineligible to

participate in the program (*see* Point 3(B)).  Ultimately, as demonstrated in detail below, during a

period in which Alitalia was in a widely-reported financial crisis and facing bankruptcy, and was

forced to reduce the number or employees in its New York office from approximately 130 to

fewer than 60, Lorusso thrived in a series of executive positions until 2007, when there simply

was no further available job for her.

## STATEMENT OF FACTS

Defendant Alitalia–Linee Aeree Italiane SpA ("Defendant" or "Alitalia") is the national

airline of Italy and is headquartered in Rome, Italy.  Alitalia's principal New York office is at

350 Fifth Avenue, New York, New York (Accompanying Statement of Uncontested Material

Facts in Support of Defendant Alitalia–Linee Aeree Italiane Spa's Motion for Summary

Judgment, hereafter "Facts," ¶1).  Lorusso was an employee of Alitalia from October 1978 until

January 2007 (Facts ¶2).

NEWYORK/#190788.11

**Elimination of Lorusso's Position as
Director of Marketing for Alitalia's Passenger Division**

By the year 2000, Lorusso had been promoted to the position of Director of Marketing for Alitalia's Passenger Division (Facts ¶3). In 2003, Giulio Libutti ("Libutti") was transferred from Buenos Aires Argentina to Alitalia's New York office, where he became Senior Vice President, North America, and where Lorusso reported to him (Facts ¶4). In 2004, in response to widely-reported financial difficulties characterized variously as a "big financial crisis," a "very strong [financial] crisis," and the "bad condition of the company," Alitalia took a number of cost-saving initiatives including, *inter alia*, the introduction of an early retirement plan ("ERP") and worldwide reductions in force (Facts ¶5). Over the course of the three years from December 31, 2003 to December 31, 2006, Alitalia reduced its presence in New York from 130 employees to just 58, and it reduced its presence by a further 10 employees over the course of the next year (Facts ¶6).

In or around August of 2004, a decision was made by the Senior Vice President of Marketing and Business Strategies at Alitalia's headquarters to centralize all of the company's Passenger Division advertising functions there and to close the rest of the company's Passenger Division advertising and marketing offices (Facts ¶7). Lorusso's work responsibilities principally addressed advertising, and consequently her job was eliminated, although not until she had accepted a new position (Facts ¶7). Neither Libutti nor or his supervisor, Pierandrea Galli, was the decisionmaker (Facts ¶7). Certain of the surviving functions of Lorusso's department were redistributed to Lisa Del Percio and Francesca Forte, both women. Responsibilities for planning an annual symposium were transferred from Elizabeth Santella, a female subordinate of Lorusso's, to Grace DeFranco, a female subordinate of Timothy O'Neill, a man who was "a little older" than Lorusso (Facts ¶ 8). Lorusso herself was promoted to the

-3-

position of Managing Director of GA 2000, a subsidiary of Alitalia. GA 2000's objective was to "safeguard and regain" Italian-American "ethnic" air passenger traffic (Facts ¶9).

### Lorusso's First Complaint

On or around August 24, 2004, Lorusso met with Andrea Sciarresi ("Sciarresi"), then Alitalia's Human Resources Director, and complained that she was the lowest paid of the three directors at her level, and about two events that had previously occurred: the transfer of certain of her department's duties to Timothy O'Neill's department, and the plan to promote her to Managing Director of GA 2000. She memorialized these concerns via an e-mail to Sciarresi, claiming that "these instances are resulting in an issue of gender bias" (Facts ¶10). Lorusso maintains that she was being "transferred" to GA 2000, rather than promoted, and complained on or around September 1, 2004, via e-mail to Sciarresi, that this constituted "continuing discrimination." Nonetheless, she acknowledges that her title was changed from "Director" to "Managing Director" and that her salary was increased from "$80,000.00" (actually $78,520.80) per year to $105,000 per year. Francesco Gallo, then Alitalia's Senior Vice President for Corporate Affairs, who orchestrated the transfer, confirmed that it was a promotion[1] (Facts ¶11).

On or around September 16, 2004, Lorusso complained again via e-mail, this time to Libutti and Gallo, that she had not been invited to a recent sales meeting in Rome and that it was her belief that she was "systematically being cut out of… [her] responsibilities". She acknowledged in that e-mail that an investigation into her complaints was already under way (Facts ¶13). Lorusso was informed via a letter dated September 17, 2004, signed by Libutti and Gallo, that the list of invitees to the sales meeting had been composed in Rome and that "the

---

[1] It should be noted that Gallo has brought a separate litigation against Alitalia in this court, *Gallo v. Alitalia-Linee Aeree Italiane-Societa Per Azioni*, 07 Civ. 06418 (CM)(HP), and is by no means a friendly witness for the company.

-4-

home office decided to limit it to certain functions only". She was also assured that her office would be involved in the planning of an upcoming concert sponsored by Alitalia—which had prompted her complaint that she believed that her responsibilities were being "systematically taken from her—"in due time".

Lorusso then responded, on or around September 20, 2004, via an e-mail to Libutti and Gallo, characterizing the representation that the sales meeting had been limited to "certain functions only" as "false" (Facts ¶14). On or around September 2, 2004, as part of the investigation, Gallo and Stephanie DiClemente ("DiClemente"), then Manager of Employee Relations and Organizational Development for Alitalia, met with Lorusso, as documented in a memorandum prepared by DiClemente. Gallo and DiClemente also met subsequently with Libutti, who rebutted all of Lorusso's accusations, including her claim that she was paid less than all of the company's other directors, as documented in a second memorandum prepared by DiClemente (Facts ¶15).

Lorusso testified that she resisted the transfer to GA 2000 in part because she "suspected" that the subsidiary might soon close. However, Gallo, who also functioned as GA 2000's president at the time, testified that at the point that Lorusso arrived and in the subsequent year he had no reason to believe that Alitalia's management was considering closing GA 2000 and, in fact, that he "expected GA [2000] to grow, because that was the project". Libutti, Lorusso's supervisor prior to her promotion, also lacked awareness of any such plan to close GA 2000. Indeed, a memorandum signed by Libutti and Gallo, dated July 6, 2004, contrasted GA 2000 favorably with another Alitalia subsidiary, noting that GA 2000, "despite the negative trends in the sector in the years 2002/2003, has developed to the point that it recorded (2002) sales for more than USD 25 million…". The memorandum did not reflect any plan to close GA 2000,

although it did recommend the closing of the other subsidiary (Facts ¶16).  Gallo did not

consider Lorusso's promotion to GA 2000 to be discriminatory and disagreed with her

characterization of it at the time as a "unilateral transfer".

Libutti felt that the promotion to GA 2000 was "a very good opportunity" because "she

[could] work as a managing director [and] have a lot of autonomy in her profit and loss," in

addition to gaining the sales experience that she lacked and receiving a significant salary increase

(Facts ¶12).  However, while Lorusso was at GA 2000, her subordinate, John Ferro ("Ferro"),

actually held primary responsibility for sales (Facts ¶12).

### Elimination of Lorusso's Position as Managing Director of GA 2000

In late 2005, Libutti, Gallo and Marco Marchese—Alitalia's Chief Financial Officer for

the Americas—determined to close GA 2000, with the approval Alitalia's Rome offices, because

the subsidiary was by then losing money and "there was no more commercial need [for it]"

(Facts ¶17).  All of GA 2000's employees (16 to 18 individuals), except for Lorusso and Ferro,

were terminated and received two weeks severance.  Ferro qualified for the 2005 ERP (offered to

employees who were aged 50 or older with 15 years or more of service as of December 31,

2005), but Lorusso was too young. (Facts ¶18).

Lorusso alleges that in October 2005, after she learned that GA 2000 was closing, she

complained of "age and gender discrimination".  She does not recall to whom this complaint was

made or whether or not it was in writing.  No evidence of this purported complaint other than

Lorusso's testimony has been adduced during the discovery process (Facts ¶19).  Lorusso

retained her Managing Director's salary of $105,000.00 from November, 2005 until she was

given the position of Director of Marketing Communications for Alitalia's Cargo Division in

April of 2006 (Facts ¶20).  While in the Cargo Division, Lorusso's job consisted of, among other

-6-

functions, assembling a client database, putting together newsletters, and developing promotional

materials.  Lorusso also assumed responsibility for a "very, very important" project with

Delta/Air France, and Gallo testified that the Director of Marketing Communications position

was "a real job" (Facts ¶21).

### The Regulatory Affairs Positions

After being informed of the elimination of her position as Managing Director of GA

2000, Lorusso expressed an interest in applying for the position of Vice President of Regulatory

Affairs.  She claims that she was denied the opportunity to do so and that the position went to "a

younger male with no experience," Dursun Oksuz (Facts ¶23).  Lorusso's purported qualification

for the position as Vice President for Regulatory Affairs, in which she would be required to deal

with government agencies and ensure compliance with their regulations, was the fact that she

had "been in charge of customer relations," and she acknowledged that she had never actually

dealt with any government agencies in connection with her previous job duties (Facts ¶24).

When Lorusso inquired as to "why would someone who barely speaks English, is totally

incompetent, be placed in that position when I wasn't even considered," she was told that Oksuz

was engaged in a homosexual liaison with Gallo, who promoted him to the Regulatory Affairs

position.  Allegations regarding this relationship and promotion were "in the air" in Alitalia's

offices (Facts ¶25).  Gallo, for his part, testified that he did not consider Lorusso for the position

because she was already employed with GA 2000 (Facts ¶26).  He also testified that he viewed

Lorusso and Oksuz as equally unqualified, but that Oksuz had more potential to "learn and

grow" because of his background in law and computer technology, as well as his dedication and

willingness to devote a significant amount of time to learning the job (Facts ¶26).

Subsequently, in or around November 2006, the Regulatory Affairs position became available a second time (though it had now been downgraded to Director) and Lorusso actually interviewed for it on November 8, 2006.  However, she did not then and has at no time since alleged or offered any evidence that her qualifications had improved since the first time that she had expressed interest in the position and, in any case, the benefits and compensation for the position would have been the same as those of the director-level position that she already held (Facts ¶27).  Lorusso also does not allege that the position was filled at any time prior to her departure from Alitalia, but admits instead that Orlando D'Oro—the previous Vice President of Regulatory Affairs, who had accepted the ERP—remained on as a consultant for regulatory affairs matters (Facts ¶27).

### The Sales and Marketing Positions

Lorusso asserts that two positions "in her area of expertise, marketing and sales, opened up" in the fall of 2006, while she was in the Cargo Division.  She did not ask to interview for either position because she "didn't even know they were available" (Facts ¶28).  One of the two positions was given to Lucia Alla, a female of "[a]bout 50"  Lorusso did not express an interest in that position to anyone in either the Passenger Division or in Human Resources; in fact, the only supervisor with whom she discussed it was Walter Longo ("Longo"), her own boss in the Cargo Division (Facts ¶29).

### The Bonus Program

During 2006, Alitalia offered an incentive program to certain Cargo Division employees whose job responsibilities primarily concerned generating revenue, and to certain executives in Italy whose job responsibilities primarily concerned airline operations.  It was not offered to employees whose job responsibilities primarily concerned communications.  Because Lorusso, as

-8-

Director of Marketing Communications, was one such employee, she was not eligible to participate in the program (Facts ¶30). Lorusso never inquired of anyone at Alitalia—either in management or human resources—why she was not a participant in the bonus program (Facts ¶31).

### Lorusso's Complaints While in Cargo Division

On or around September 27, 2006, Lorusso complained via e-mail to Longo, her supervisor, copying Alitalia's new Director of Human Resources for the Americas, Andrea Porru ("Porru"), that her job responsibilities as Director of Marketing Communications for the Cargo Division "remain[ed] unclear". She further complained that her salary had been reduced from the amount she had earned as Managing Director of GA 2000, that she had been placed on probation for six months, that she had not been invited to attend certain meetings and that she was "isolated" on the 36th floor. She did not suggest that she believed that she was being discriminated against on the basis of her age or sex, although she did refer to her earlier complaint regarding "sexual discrimination" of summer 2004 (Facts ¶32).

On or around October 11, 2006, Porru responded to Lorusso, promising to investigate her claims regarding the alleged failure to include her in meetings and her purported isolation, and informing her that Longo had confirmed that she had successfully completed probation (Lorusso herself acknowledges that she did not suffer any ill effects as a result of being on probation) (Facts ¶33). On or around October 30, 2006, Porru e-mailed a list of nine questions—some with multiple parts—to Longo as part of his investigation into Lorusso's concerns; Longo responded on or around November 9, stating, *inter alia*, that the decision not to invite Lorusso to certain meetings had been made in Rome because the meetings in question did not require a contribution

-9-

from her and that he (Longo) had, in fact, requested previously that Lorusso be moved to a less "isolated"[2] area (Facts ¶34).

Lorusso meanwhile complained to Porru directly via e-mail on or around November 6, 2006, detailing the ways in which she believed that her current position was below her capabilities. She noted that Lucia Alla—a woman who is Lorusso's age—had recently been promoted to a director-level position in the Passenger Division, for which Lorusso believed herself to be qualified, and questioned Alitalia's business judgment, asking "Is there a need to… tax the company further?" Again, she did not refer to discrimination on the basis of either her age or sex (Facts ¶35). On or around November 7, 2006, Porru again e-mailed Longo asking that Longo respond to a further series of questions addressing the allegations raised by Lorusso in her November 6 e-mail; Longo then responded on or around November 10, confirming that Lorusso's position was "real," that Lorusso had performed significant work in the position and that she would continue to do so (Facts ¶36).

Simultaneously, on or around November 8, 2006, Porru e-mailed a list of twenty-five questions—many of which contained multiple parts—to Libutti as part of his investigation into Lorusso's allegations about him, and Libutti responded on or around November 9, 2006, interpolating his responses into the body of Porru's e-mail (Facts ¶37). Porru's investigation of Lorusso's complaints concluded upon her departure from Alitalia in January 2007 because Lorusso refused to speak with him beyond that point (Facts ¶38).

---

[2] In fact, during both the period that Lorusso was Managing Director of GA 2000 and most of the subsequent period when she worked in the Cargo Division, she shared the 36th floor with the IT department and the ticketing office (the latter consisting of about eight people) as well as with her subordinates at GA 2000, until that subsidiary closed (Facts 22).

**Worldwide Reduction in Force**

In December of 2006 and January of 2007, Alitalia's management determined to engage in a worldwide restructuring of the Cargo Division in an effort to achieve the company's profitability targets.  As part of that process, management determined to eliminate more than fifty positions (more than 14% of the Cargo Division's total workforce) and to centralize the Cargo Division's director level marketing and communications positions in Alitalia's Rome office, as the company had done with respect to the Passenger Division in 2004 (Facts ¶39).  Marco D'Ilario ("D'Ilario"), then Head of International Cargo Sales, consequently determined to eliminate Lorusso's position as part of this restructuring.  On or around December 13, 2006, D'Ilario sent an e-mail to various members of Alitalia's management reflecting a determination made by him at an earlier meeting amongst some of those managers to reconfigure the Cargo Division by eliminating 8 positions in North America and 50 positions worldwide, including that of "Director of Communications and Marketing" (Facts ¶40).

On or around January 4, 2007, D'Ilario sent a further e-mail elaborating on his intention to eliminate the 8 positions identified in his previous e-mail.  The position of Director of Communications and Marketing was to be eliminated by January 31 (Facts ¶41).  Lorusso was informed of her impending termination on or around January 18.  At the time of her job elimination, she was offered an enhanced severance package based upon her status as a director, which she refused (Facts ¶42).  Libutti had already departed the employ of Alitalia at the point that the decision was made to eliminate her position and, in any case, he had had no involvement with the Cargo Division when he was at Alitalia (Facts ¶47).

-11-

**Alleged Discriminatory Acts by Libutti and Galli**

Lorusso does not recall ever having heard Libutti or his supervisor, Pierandrea Galli ("Galli"), publicly or privately express contempt for older employees (Facts ¶43).  She recalls only one instance which she characterizes as an expression of contempt by Libutti for female employees, in which Libutti "referred to a female marketing executive in Rome and he alluded to the fact that she could get a higher position if she would sleep with someone" (Facts ¶44).  She also recalls one instance in which Galli allegedly stated publicly that "[S]peeches are like women's skirts.  The shorter the better." (Facts ¶45).  She also claims that on one occasion, at an event commemorating the launch of Alitalia's Washington D.C. office, Libutti "screamed at" her because she had employed Alitalia staff, rather than professional models, to serve as greeters and because he believed that she was purposely failing to return his telephone calls (Facts ¶46).

## **ARGUMENT**

A party is entitled to summary judgment when there is no "genuine issue of material fact" and the undisputed facts warrant judgment for the moving party as a matter of law.  Fed. R. Civ. P. 56 (c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2510, 91 L.Ed. 2d 202, 211 (1986).  The moving party has the initial burden of demonstrating the absence of a disputed issue of material fact, *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed. 2d 265, 274 (1986), but once such a showing has been made, the nonmoving party must present "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  The party opposing summary judgment "may not rely on conclusory allegations or unsubstantiated speculation," *Scotto v. Almenas*, 143 F. 3d 105, 114 (2d Cir. 1998), but "must show the existence of a disputed material fact in light of the substantive law."  *Peer Int'l. Corp. v. Luna Records, Inc.*, 887 F.Supp. 560, 564 (S.D.N.Y. 1995).

-12-

## POINT ONE

### THE ELIMINATION IN 2004 OF LORUSSO'S POSITION IN THE PASSENGER DIVISION CANNOT ESTABLISH ANY OF HER CLAIMS

Sex and age discrimination claims brought under the New York City Human Rights Law (the "NYCHRL"), N.Y. City Admin. Code § 8-107(1)(a) *et seq.*, are governed by the same standards as those brought under Title VII and the Age Discrimination in Employment Act. *Knight* v. *N.Y. City Housing Authority*, 2007 U.S. Dist. LEXIS 9148, *29 (S.D.N.Y. 2007) (annexed as Exhibit A hereto); *Phillips v. Mt. Sinai Med. Ctr.*, 2005 U.S. Dist. LEXIS 32312, *14 (S.D.N.Y. 2005) (annexed as Exhibit B hereto).[3]  This remains true, even after the passage of the Local Civil Rights Restoration Act of 2005, NYC Local Law 85 of 2005 § 1.  *See, e.g., Hanna v. NY Hotel Trades Council*, 2007 N.Y. Misc. LEXIS 8262, *2 n.1 (Sup. Ct. N.Y. Co. 2007) (annexed as Exhibit C hereto).

To establish a *prima facie* case of age or sex discrimination, a plaintiff must show that: 1) she was a member of a protected class; 2) she was qualified for the job; 3) she was subjected to an adverse employment action; and 4) that action occurred under circumstances giving rise to an inference of discrimination.  *Stetson v. Nynex Service Co.*, 995 F.2d 355, 359 (2d. Cir. 1993); *Forrest v. Jewish Guild for the Blind*, 309 A.D.2d 546, 765 N.Y.S.2d 326 (1st Dept. 2003). Similarly, to successfully plead a claim for retaliation, a plaintiff must show that:  1) she engaged in a protected activity; 2) the defendant was aware of her participation in that protected activity; 3) the defendant acted in a way that was materially adverse to the plaintiff; and 4) there is a causal connection between the protected activity and the adverse action.  *Burlington Northern &*

---

[3] Because of the small number of published cases addressing the impact of The Local Civil Rights Restoration Act of 2005 on claims filed under the NYCHRL in the employment context, Alitalia relies upon a number of recent unpublished opinions on this point, which are annexed as Exhibits A through C hereto.

NEWYORK/#190788.11

*Santa Fe Ry. v. White*, 548 U.S. 53, 126 S.Ct. 2405, 2415, 165 L.Ed. 2d 345, 359 (2006); *Kessler v. Westchester County Dept. of Social Services*, 461 F.3d 199, 205-06 (2d Cir. 2006).  All three of Lorusso's claims are therefore analyzed in tandem because of the essential similarity of their elements and of their deficiencies: a claim of discrimination requires an actual adverse employment action and a claim of retaliation requires an action that would dissuade a reasonable worker from complaining of discrimination, while both claims require evidence of illegal (discriminatory or retaliatory) intent underlying the actions.

A.    <u>**Lorusso's "Transfer" Was Not an Adverse Action**</u>

As a matter of law, Lorusso's promotion to GA 2000, with its attendant salary increase of nearly twenty-six thousand dollars (more than one third of her previous salary) and promotion from "director" to "managing director," cannot be deemed an adverse employment action. Unless a plaintiff shows that a transfer "significantly hampered her growth at the firm, so as to constitute an action on the same level as a material loss of benefits, a demotion, or significantly diminished responsibilities," that action will not be considered adverse.  *Galabya v. New York City Board of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)("[t]o be 'materially adverse' a change in working conditions must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities"); *Seltzer v. Dresdner, Kleinwort, Wasserstein, Inc.*, 356 F.Supp.2d 288, 297 (S.D.N.Y. 2000); *Patrolmen's Benevolent Ass'n. v. City of New York*, 74 F.Supp.2d 321, 335 (S.D.N.Y. 1999) (transfers must be  tantamount to a demotion).  In the context of Lorusso's claim that she was retaliated against, the Second Circuit has specifically held that a raise and promotion are not actions that would "dissuade a reasonable worker from making or supporting a charge of discrimination."  *Timothy v. Our Lady of Mercy Med. Ctr.*, 2007 U.S. App. LEXIS 3980 (2d Cir. 2007)(quoting *Burlington Northern*, 126 S. Ct. at 2415, 165 L. Ed. 2d at 359;

annexed as Exhibit D hereto).  Consequently, Lorusso lacks a necessary element of a *prima facie* case of either discrimination or retaliation.

Lorusso alleges that, because GA 2000 was one of a number of subsidiaries that she thinks were slated for elimination, her promotion to the position of managing director of this company was merely a pretext in a scheme by Libutti to terminate her.  First, employment actions are held to an objective standard when evaluating their adverse nature.  *See, e.g., Fullard v. City of New York*, 274 F. Supp. 2d 347 at 362 (S.D.N.Y. 2003)

; *Blessing* v. *J.P. Morgan Chase and Co.*, 394 F.Supp.2d 569, 577 (S.D.N.Y. 2005) (employee's subjective dissatisfaction with employment action does not constitute evidence of adverse employment action).  This is true in the context of a claim of retaliation as well as of discrimination.  *Burlington Northern*, 126 S. Ct. at 2415, 165 L. Ed. 2d at 360 ("We refer to reactions of a *reasonable* employee because we believe that the provision's standard for judging harm must be objective").  Moreover, the uncontroverted evidence shows that, at the time of Lorusso's promotion, Libutti, Gallo and others viewed GA 2000 as a valuable Alitalia subsidiary with an excellent future.  Accordingly, summary judgment should be granted to Alitalia on all of Lorusso's claims to the extent that they spring from her promotion to GA 2000 and the subsequent elimination of her position as Director of Marketing.

**B.    Lorusso Has Failed to Raise an Inference of Discriminatory
Intent in the Elimination of Her Position as Director of Marketing**

To establish a *prima facie* case of discrimination, a plaintiff must demonstrate that the circumstances under which she experienced an adverse employment action give rise to an inference of discrimination.  Lorusso has attributed one remark that she contends is "sexist" to each of Libutti and Galli, but the record establishes that neither of these two individuals was responsible for the decision to centralize marketing functions which ultimately led to the

-15-

elimination of her position as Director of Marketing.  That decision was made by Alitalia's home

office in Rome and affected marketing functions in the Passenger Division worldwide.

Moreover, "Stray remarks by non-decision-makers or by decision-makers unrelated to the

decision process are rarely given great weight, particularly if they were made temporally remote

from the date of decision."  *Seltzer*, 356 F.Supp.2d at 295; *Campbell v. Alliance Nat'l Inc.*, 107

F.Supp.2d 234, 247 (S.D.N.Y. 2000).  Consequently, Lorusso cannot show the connection

between any supposed discriminatory animus on the part of Libutti and/or Galli and the

elimination of her position.

Lorusso's claims of age and sex discrimination are further undermined by the fact that

those of her duties that remained were redistributed to two women.  Additionally, the

performance of responsibilities that were transferred from her department to another department

were overseen by Timothy O'Neill, an individual several years her senior.  *See, e.g., Giannone v.

Deutsche Bank Sec., Inc.*, 392 F. Supp. 2d 576, 587-88 (S.D.N.Y. 2005) ("where no evidence

giving rise to an inference of discrimination has been presented, the fact that a plaintiff is

replaced with an individual within his protected class undermines his attempt to establish a *prima

facie* case of discrimination," citation omitted).  Consequently, to the extent that the elimination

of Lorusso's position as Director of Marketing underlies either of her discrimination claims,

those two claims must be dismissed.

**C.    Lorusso Complained *Because* of Her "Transfer,"**
**Making Retaliation a Factual Impossibility**

Lorusso's first complaint of sex and age discrimination was in late August 2004, in

response to circumstances surrounding her proposed transfer to GA 2000.  As such, it is

impossible for Lorusso to establish a *prima facie* case of retaliation regarding this employment

action.  The alleged retaliatory act was initiated *before* Lorusso complained of alleged sex and/or

-16-

age discrimination, and consequently it would have been impossible for Alitalia to decide to eliminate the major duties of her position as Director of Marketing and place her in GA 2000 in response to a complaint that did not exist at the time that the decision was made. Therefore, to the extent that the elimination of Lorusso's position as Director of Marketing underlies her retaliation claim, that claim must be dismissed.

**D.    Alitalia Has Established a Legitimate, Nondiscriminatory Reason for Its Decision to Eliminate Lorusso's Position as Director Of Marketing**

Alitalia's elimination of Lorusso's position as Director of Marketing was part of an overall business strategy to eliminate expenses and to return Alitalia to a position of financial viability. In 2004, in response to the ongoing financial crisis it faced, Alitalia centralized the company's Passenger Division marketing functions in its Rome headquarters and closed all other marketing offices. Business decisions made in an effort to reduce costs are legitimate and non-discriminatory. *See, e.g., James v. New York Racing Ass'n.*, 233 F.3d 149, 152 (2d Cir. 2000); *Seltzer* 356 F.Supp.2d at 297. Because Lorusso is unable to offer any evidence indicating that this reason is pretextual and that Alitalia was actually motivated by unlawful reasons, her claims of discrimination and retaliation must be dismissed to the extent that they spring from the elimination of her Marketing position following her promotion to Managing Director of GA 2000.

**POINT TWO**

**THE ELIMINATION OF PLAINTIFF'S POSITION AS MANAGING DIRECTOR OF GA 2000 CANNOT SUPPORT ANY OF HER CLAIMS**

**A.    Lorusso Did Not Suffer Any Adverse Employment Action Upon the Elimination of GA 2000**

When GA 2000 was eliminated all of its employees but for Lorusso and Ferro were terminated outright, and these approximately seventeen individuals were provided with only two

-17-

weeks of severance pay (unlike Lorusso, Ferro was eligible for the ERP, which he accepted). Moreover, Lorusso actually retained her salary of $105,000 until April of 2006, when a position was found for her within Alitalia's Cargo division.

To successfully plead that a reduction in force was administered in a discriminatory manner, a plaintiff must demonstrate that she was qualified for other existing jobs, and that she was denied those jobs for discriminatory reasons. *Windham v. Time Warner, Inc.*, 275 F.3d 179, 187 (2d Cir. 2001). Here, Lorusso fails to set forth a *prima facie* case in the context of her transfer because Alitalia did, in fact, transfer her to an available marketing position for which she was qualified, and which was equivalent to the Marketing Director position she had held before she went to GA 2000. Moreover, Gallo testified to the value and legitimacy of the Cargo Division job in which she was ultimately placed, and her supervisor, Longo, assured Alitalia's Human Resources Director of the job's legitimacy. Consequently, Lorusso cannot establish a *prima facie* case in support of either her discrimination or retaliation claims.

**B.    Lorusso Has Failed to Raise Any Inference of Discriminatory Intent**

Lorusso has adduced no evidence that the closure was pretextual, and that Alitalia was actually motivated by discriminatory or retaliatory reasons. *See Ferrante v. American Lung Ass'n.*, 90 N.Y.2d 623, 629, 665 N.Y.S.2d 25, 687 N.E.2d 1308 (1997) (summary judgment appropriate on an employment discrimination claim "if plaintiff had been unable to raise a question of fact concerning either the falsity of defendant's proffered basis for the termination or that discrimination was more likely the real reason"); *Forrest,* 309 A.D.2d at 556, 559, 765 N.Y.S.2d at 335, 337-38 (same, under the NYCHRL). Even if Libutti had—as has been alleged—wanted to fire Lorusso since his arrival in 2003, the fact that she was twice transferred when her position was eliminated demonstrates that he either did not wish to, or simply could not, do so. Accordingly, where Lorusso remained while so many of her colleagues were

-18-

terminated, summary judgment should be granted to Alitalia on all of her claims to the extent
that they spring from the elimination of her position as Managing Director of GA 2000.

### C.    Evidence Surrounding the Elimination of GA 2000 is Insufficient to Establish Causal Connection Required for Retaliation Claim

Lorusso's own testimony demonstrates the unavailing nature of her claim of retaliation.
According to Lorusso, by the time GA 2000 was closed in November 2005, she had engaged in
the protected activity of complaining about sex and age discrimination twice: once in the summer
of 2004 and again in response to the news that GA 2000 was to be closed.  In the Second Circuit,
a lapse of over a year between engaging in a protected activity and an employment action is too
remote to sustain an inference of retaliation.  *See, e.g., Allen v. St. Cabrini Nursing Home, Inc.*,
198 F.Supp.2d 442, 450 (S.D.N.Y. 2002) (reviewing relevant case law and finding that a lapse of
nearly sixteen months between a protected activity and termination "defeats [the plaintiff's]
claim that the two events were causally related").  Hence, her complaint of 2004 cannot support
an inference of retaliation in late 2005.

Her claim that she complained of discrimination again in October 2005, shortly after she
learned of the decision to close GA 2000, is similarly unavailing.  Aside from the fact that
discovery has failed to produce any evidence of this alleged complaint other than Lorusso's own
exceedingly vague testimony,[4] the mere allegation that these complaints were made is
insufficient to rebut Alitalia's non-discriminatory reason for the elimination of her position.
And, as discussed in Point 1(C) *supra*, the fact that she complained about discrimination *after*
learning of the elimination of GA 2000 fatally undermines her claim that the closing of GA 2000

---

[4] As noted above, Lorusso recalls neither to whom she directed the alleged complaint nor
whether it was written or verbal (Facts ¶19).

was retaliatory.  Because the allegedly adverse employment decision preceded her purported

complaint of October 2005, Lorusso is unable to present a *prima facie* claim of retaliation.

**D.    Alitalia Has Presented a Legitimate, Nondiscriminatory**
**Reason for Its Decision to Eliminate GA 2000**

As elaborated upon above, GA 2000 was closed as part of a business decision in Rome,

eliminating 18 positions to help restore financial viability.  As discussed at Point 1(D), *supra*,

courts have consistently recognized that reductions in force implemented in an effort to minimize

expenses are legitimate and non-discriminatory.  *See, e.g., James v. New York Racing Ass'n.*, 233

F.3d at 152, *Seltzer*, 356 F.Supp.2d at 297.  Consequently, to the extent that they spring from the

elimination of her position at GA 2000, Lorusso's claims must be dismissed.

**POINT THREE**

**THE EVENTS THAT OCCURRED AFTER LORUSSO LEFT GA 2000**
**CANNOT ESTABLISH ANY OF HER CLAIMS**

**A.    Lorusso Has Failed to Establish That Alitalia Discriminated or Retaliated Against**
**Her in Its Decision to Fill Positions for Which Lorusso Feels She Was Qualified**

Lorusso has identified three positions that became available just before or during the

period in which she was employed in the Cargo Division for which she feels she was qualified

but for which she was not interviewed: one position as Vice President for Regulatory Affairs;

and two positions in her self-described "area of expertise," marketing and sales.

**1.    Regulatory Affairs Positions**

Lorusso claims that the position of Vice President of Regulatory Affairs was denied to

her for discriminatory and/or retaliatory reasons, but cannot establish that she was actually

qualified for that position.  She acknowledges that she has no background in dealing with

regulatory agencies, but claims that her experience in the unrelated field of customer relations

and her friendship with an outside attorney made her more qualified for the position than Dursun

-20-

Oksuz, the person who received it.  However, Lorusso's comparison of her own qualifications with a person who was performing the job poorly is insufficient to establish that she actually was qualified for the position, and she therefore fails to present a *prima facie* case of discrimination. *See Meckenberg v. N.Y. City Off-Track Betting*, 42 F.Supp.2d 359, 378 (S.D.N.Y. 1999) (no *prima facie* case where plaintiff adduces no evidence that she was qualified for the job and admits to no direct relevant experience; conclusory allegations that other less qualified employees received comparable positions rejected).  Additionally, Lorusso's testimony indicates that Gallo was romantically involved with the individual to whom the position was given, and that this was the reason why Gallo hired him for the position.[5]  Workplace favoritism springing from a romantic relationship cannot support a claim of discrimination by an employee who was not the beneficiary of the favoritism.  *Decintio v. Westchester Cty. Med. Ctr.*, 807 F.2d 304, 308 (2d Cir. 1986); *Nicolo v. Citibank New York State, N.A.*, 147 Misc.2d 111, 115, 554 N.Y.S.2d 795, 799 (Sup. Ct. Monroe Co. 1990); *see, also, Mauro v. Orville*, 259 A.D.2d 89, 92, 697 N.Y.S.2d 704, 708 (3d Dept. 1999).

Lorusso was no more qualified in September or October 2006, when she sought the Regulatory Affairs position a second time (by which point it had been downgraded to Director[6]), than she was when she initially learned of it.  Nor has she identified some purportedly less qualified individual to whom the position was awarded the second time it became available; in fact, at the time of Lorusso's termination, the position remained unfilled, with Orlando D'Oro

---

[5] Gallo, for his part, testified that Oksuz and plaintiff were equally unqualified for the position, but that Oksuz's background in computers and law led him to believe that Oksuz was more readily trainable in the area of regulatory affairs.

[6] Consequently, the compensation for the position was no greater than that of the director-level position that she already had, and so she cannot credibly claim to have been adversely impacted by not having been offered the position on this second occasion.

-21-

serving as a consultant on regulatory affairs issues.  Lorusso has therefore failed to make a *prima facie* case with respect to either position nor, in either case, are there circumstances giving rise to an inference of discrimination or relation.  Consequently, Lorusso's claims must be dismissed to the extent that they spring from Alitalia's failure to award her either Regulatory Affairs position.

### 2.    <u>Marketing/Sales Positions</u>

Lorusso's claims are similarly flawed to the extent that they are based upon the fact that she was not informed of vacancies in a marketing position and a sales position in the fall of 2006.  The Passenger Division marketing position, one of the two positions at issue, was filled by Lucia Alla, a female of Lorusso's own age.  And Lorusso lacked the requisite experience for the sales position, sales having been handled by John Ferro during her time at GA 2000.  Thus, Lorusso lacks the basic elements of a *prima facie* claim of age or sex discrimination regarding the marketing position and cannot establish that she was qualified for the sales position. *Giannone*, 392 F.Supp.2d at 590 ("The failure to post job notices . . . is insufficient to substantiate a claim of intentional discrimination where there has been no showing of how the absence of posting resulted in discrimination against the plaintiff," *quoting Grant v. Morgan Guar. Trust Co.*, 638 F.Supp. 1528, 1538 (S.D.N.Y. 1986)).

Additionally, Alitalia had no reason to advertise the positions to Lorusso because she was already employed in a director-level marketing position in the Cargo Division.  *In re Laverack & Haines, Inc. v. NY State Div. of Human Rights*, 88 N.Y.2d 734, 740, 650 N.Y.S.2d 76, 79, 673 N.E.2d 586 (1996) (employer under no duty to transfer employee from one "legally discrete" department to another); *Nonnenmann v. City of New York*, 174 F.Supp.2d 121, 133 (S.D.N.Y. 2001) (finding "no cases in which a denial of a request for a purely lateral transfer was found to constitute an adverse employment action").  Moreover, the only person to whom Lorusso expressed an interest in this position was Walter Longo, her supervisor in the Cargo Division,

-22-

who had no authority to make any hiring or promotion decisions in the Passenger Division. Consequently, Lorusso cannot establish an inference of discrimination with respect to either position and her claims must be dismissed to the extent that they relate to either position.

**B.     Alitalia's Failure to Include Lorusso in The Cargo Division Incentive-Based Bonus Program Cannot Support Any of Lorusso's Claims**

To make a *prima facie* case that her exclusion from the Cargo Division's incentive plan was unlawful under the NYCHRL, Lorusso must first establish that she was eligible to participate in that plan. *See*, *e.g.*, *Giannone*, 392 F.Supp.2d at 593 (leave to amend complaint denied where plaintiff could not show that she was entitled to receive the bonus denied to her). Lorusso cannot do this, as she acknowledges that she has no idea what the criteria for participation in the plan were. In fact, the incentive plan was available only to Cargo Division employees whose job responsibilities primarily involved revenue generation, and employees whose responsibilities primarily involved communications were not eligible for this bonus program. Consequently, Lorusso's claims of discrimination and/or retaliation must be dismissed to the extent that they spring from the fact that she was not included in the program.

## POINT FOUR

### PLAINTIFF'S TERMINATION FOLLOWING ELIMINATION OF HER CARGO POSITION CANNOT ESTABLISH ANY OF HER CLAIMS

**A.     There is No Evidence of Discriminatory Intent Behind Alitalia's Decision to Eliminate Lorusso's Cargo Position**

Lorusso's allegations regarding ageist or sexist motives behind her termination are insufficient to rebut Alitalia's well-documented nondiscriminatory business reasons for eliminating her position. A claim must rely upon more than conjecture and speculation to rebut Alitalia's well-supported legitimate non-discriminatory reasons for termination. *Schwapp* v. *Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997). Lorusso points to no circumstances

surrounding her termination in early 2007, along with fifty other Cargo positions worldwide, that would support an inference of discrimination.  Consequently, to the extent that her discrimination claims spring from the elimination of her position in Cargo, they must be dismissed.

**B.     There is No Evidence of Retaliatory Intent Behind
        Alitalia's Decision to Eliminate Lorusso's Position**

Marco D'Ilario was the person responsible for the decision to eliminate Lorusso's position as part of Alitalia's worldwide reduction in force.  Yet none of her complaints in 2006 were directed to D'Ilario, he was not the object of any of these complaints, and Lorusso has adduced no evidence that D'Ilario bore retaliatory animus towards her.  Without this link, Lorusso cannot establish a *prima facie* case.  *See Giannone,* 392 F. Supp. 2d at 592 (because plaintiff had presented no evidence that the acrimony between her and her supervisor had anything to do with her complaints, her *prima facie* case was fatally flawed with respect to evidence of causation).  Consequently, to the extent that Lorusso's claim for retaliation springs from the elimination of her position in Cargo, Alitalia is entitled to summary judgment on that claim.

**C.     Alitalia Has Articulated a Legitimate Nondiscriminatory
        Business Reason for the Elimination of Lorusso's Position**

The record is undisputed that the director-level marketing responsibilities of the Cargo Division were centralized in Rome pursuant to decisions made at Alitalia's Rome headquarters in late 2006.  The January 2007 e-mail sent by Marco D'Ilario, then Head of International Sales, which included responsibility for the Cargo Division in North America, outlined Alitalia's worldwide Cargo Division reduction efforts and identified the need to eliminate "14% of the total workforce" as part of an overall drive to "achieve the profitability targets and the objectives of the Cargo Division."  As discussed in Point 1(D), *supra*, a *bona fide* reduction in force made

-24-

in an effort to minimize expenses and maintain a company's financial viability is a legitimate non-discriminatory reason for an adverse employment action. *See, also, Tarshis v. Riese Organization*, 195 F.Supp.2d 518, 526 (S.D.N.Y. 2002)(inability to rebut the legitimate nondiscriminatory reason for "layoff" fatal to discrimination claim); *In re Laverack & Haines, Inc.*, 88 N.Y.2d at 738, 650 N.Y.S.2d at 78, 673 N.E.2d at 588 ("[t]he downsizing of a company's employment rolls, due to business failings and economic setbacks, constitutes a sustainable rebuttal and explanation for the decision to terminate a particular employee"). Because Lorusso cannot rebut this legitimate non-discriminatory reason for her termination, her claims springing from the elimination of her position with Cargo must be dismissed.

## CONCLUSION

From 2004 to 2007, while Alitalia was in crisis, and reduced the workplace in New York from about 130 to under 60, Lorusso was given a series of important executive positions to avoid laying her off, until there simply was no further job available for her. From this she conjures her claims of discrimination and retaliation. Thus Defendant respectfully requests an Order, pursuant to Rule 56, granting its motion for summary judgment dismissing the Complaint of Ester Lorusso, and granting such other and further relief as the Court deems appropriate .

-25-

Dated: New York, New York
April 28, 2008

                               VEDDER PRICE P.C.

                               By: _s/ Alan M. Koral_____
                                   Alan M. Koral (AK-1503)
                                   Daniel C. Green (DG-0059)
                                   1633 Broadway, 47th Floor
                                   New York, New York  10019
                                   (212) 407-7700

                               *Attorneys for Defendant*
                               *Alitalia–Linee Aeree Italiane SpA*

NEWYORK/#190788.11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------

ESTER LORUSSO,

                  Plaintiff,

       -against-

ALITALIA–LINEE AEREE ITALIANE SpA,

                  Defendant.

---------------------------------------------------------

Case No. 07 CV 3583 (LBS)(RLE)

**<u>CERTIFICATE OF SERVICE</u>**

      I, Daniel Green, hereby declare, pursuant to 28 U.S.C. 1746, under penalty of perjury, that on April 28, 2008, I caused a copy of the **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ALITALIA-LINEE AEREE ITALIANE SpA'S MOTION FOR SUMMARY JUDGMENT** to be served upon Plaintiff by electronically filing same, thereby ensuring that Plaintiff's attorney, Robert Ottinger, Esq. of The Ottinger Firm, P.C., received same because he is a registered e-filer and registered to receive e-notices in this case.

DATED:  April 28, 2008            s/  Daniel C. Green_____
                                       Daniel C. Green