**Exhibit B**

LEXSEE


Positive
As of: Mar 05, 2008

**BARBARA PHILLIPS, Plaintiff, -against- MT. SINAI MEDICAL CENTER, Defendant.**

**01 Civ. 5656 (GBD)(FM)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

**2005 U.S. Dist. LEXIS 32312**

**November 14, 2005, Decided**

**SUBSEQUENT HISTORY:** Adopted by, Summary judgment granted by, Complaint dismissed at Phillips v. Mt. Sinai Med. Ctr., 2006 U.S. Dist. LEXIS 2606 (S.D.N.Y., Jan. 24, 2006)

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff former employee sued defendant former employer alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq., the Age Discrimination in Employment Act (ADEA), 29 U.S.C.S. § 621 et seq., the New York State Human Rights Law (NYSHRL), N.Y. Exec. Law § 290 et seq., and the New York City Human Rights Law (NYCHRL), New York City, N.Y., Admin. Code § 8-101 et seq. The employer moved for summary judgment.

**OVERVIEW:** Although the employee established the first three elements of her prima facie case of age discrimination, there was a question as to whether she had shown that an adverse employment action occurred under circumstances giving rise to an inference of age discrimination. The employee's contentions to support the inference of age discrimination included, inter alia, allegations that a younger employee was the one who should have been disciplined for one incident and that the younger employee paid a dead employee and overpaid an employee without receiving disciplinary notices. The court concluded, however, that the employee could not prove that the employer's legitimate, non-discriminatory reason for terminating the employee, her repeated errors, was a pretext. As for the employee's national origin claims under the NYSHRL and NYCHRL, the court concluded that the remarks made about the employee's accent were insufficient to support such claims. Finally, the court held that the employee's retaliation claim relating to her filing of a charge of discrimination with the Equal Employment Opportunity Commission

Page 1

survived as the temporal nexus of three months was sufficient to support the claim.

**OUTCOME:** The magistrate recommended that the employer's motion for summary judgment be denied as to the employee's retaliation claim under the ADEA relating to her filing of a charge of discrimination with the Equal Employment Opportunity Commission, and be granted as to all other claims.

**CORE TERMS:** payroll, summary judgment, retaliation, termination, notice, index card, non-productive, age discrimination, national origin, prima facie case, accent, mail, clerk, card, protected activity, deposition, younger, nexus, time cards, warning notice, discriminated, disciplinary, conclusory, proffered, causal, sick, nondiscriminatory reason, disciplined, terminated, suspension

**LexisNexis(R) Headnotes**

*Civil Procedure > Summary Judgment > Standards > General Overview*
[HN1]Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

*Civil Procedure > Summary Judgment > Standards > General Overview*
[HN2]In deciding a motion for summary judgment, a court must view the evidence in the light most favorable to the party against whom summary judgment is sought and draw all permissible inferences in favor of that party. The court also must accept as true the non-moving party's evidence, if supported by affidavits or other evidentiary material. Assessments of credibility, choosing between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court. Thus, the court's function is not to resolve disputed issues of fact but only to determine whether there is a genuine issue of material fact to be tried.

*Civil Procedure > Summary Judgment > Burdens of Production & Proof > General Overview*
[HN3]To defeat a motion for summary judgment, the non-moving party cannot merely rely upon allegations contained in the pleadings that raise no more than some metaphysical doubt as to the material facts. Rather, the non-moving party must offer concrete evidence from which a reasonable juror could return a verdict in his favor.

*Civil Procedure > Summary Judgment > Standards > General Overview*
[HN4]The Second Circuit has cautioned that summary judgment is often inappropriate in cases where the trier of fact will have to delve into an employer's intent, because intent is an issue as to which direct evidence is rarely available. However, when an employer has explained its conduct and the plaintiff has offered only conclusory assertions in opposition, summary judgment may be granted.

*Labor & Employment Law > Discrimination > Age Discrimination*
[HN5]Under the Age Discrimination in Employment Act, 29 U.S.C.S. § 621 et seq., it is unlawful for an employer to discharge any individual or otherwise discriminate against any individual with respect to his or her compensation, terms, conditions, or privileges of employment, because of such individual's age. 29 U.S.C.S. § 623(a)(1).

*Labor & Employment Law > Discrimination > Age Discrimination*
[HN6]The New York State Human Rights Law, N.Y. Exec. Law § 290, et seq., and the New York City Human Rights Law, New York City, N.Y., Admin. Code § 8-101 et seq. make it unlawful for an employer to discriminate against an employee in the terms, conditions, or privileges of employment on the basis of age. N.Y. Exec. Law § 296(1)(a); New York City, N.Y., Admin. Code § 8-107(1)(a).

*Labor & Employment Law > Discrimination > Age Discrimination*
[HN7]The framework for analyzing age discrimination claims under the New York State Human Rights Law, N.Y. Exec. Law § 290 et seq., and the New York City Human Rights Law, New York City, N.Y., Admin. Code § 8-101 et seq. is essentially the same as under the Age Discrimination in Employment Act, 29 U.S.C.S. § 621 et seq.

*Labor & Employment Law > Discrimination > Age Discrimination > Proof > Burdens of Proof*
[HN8]In assessing a claim under the Age Discrimination in Employment Act, 29 U.S.C.S. § 621 et seq., a court must apply the burden-shifting analysis set forth in McDonnell Douglas Corp. and its progeny. Under that rubric, a plaintiff must satisfy an initial burden of proving by a preponderance of the evidence a prima facie case of discrimination. To establish a prima facie case, an employee must show that: (1) she was within the protected age group; (2) she was qualified for the job; (3) she was subjected to an adverse employment decision or discharge; and (4) the adverse action occurred under circumstances giving rise to an inference of age discrimination.

*Labor & Employment Law > Discrimination > Age Discrimination > Proof > Burdens of Proof*
[HN9]Once a plaintiff makes out a prima facie case of age discrimination under the Age Discrimination in Employment Act, 29 U.S.C.S. § 621 et seq., a rebuttable presumption of discrimination arises and the burden then shifts to the defendant to articulate a legitimate nondiscriminatory reason for the employment decision. Finally, if the defendant provides a nondiscriminatory rationale for its conduct, the rebuttable presumption drops out of the case. The burden then rests on the plaintiff to prove not only that the proffered nondiscriminatory reason was pretextual, but also that the defendant discriminated against the plaintiff.

*Civil Procedure > Summary Judgment > Burdens of Production & Proof > General Overview*
*Labor & Employment Law > Discrimination > Age Discrimination > Proof > Burdens of Proof*
[HN10]Conclusory allegations concerning the treatment of similarly situated employees do not raise a genuine issue of material fact for purposes of age discrimination claims.

*Labor & Employment Law > Discrimination > National Origin Discrimination*
[HN11]The New York State Human Rights Law, N.Y. Exec. Law § 290, et seq., and the New York City Human Rights Law, New York City, N.Y., Admin. Code § 8-101 et seq. make it unlawful for an employer to discriminate against an employee in the terms, conditions or privileges of employment on the basis of national origin. N.Y. Exec. Law § 296(1)(a); New York City, N.Y., Admin. Code § 8-107(1)(a).

*Labor & Employment Law > Discrimination > National Origin Discrimination > Proof > Evidence*
[HN12]As a general rule, isolated and disconnected derogatory remarks by a decision maker are by themselves insufficient to raise an inference of discrimination.

*Labor & Employment Law > Discrimination > Retaliation > Statutory Application > Age Discrimination in Employment Act*
[HN13]Under the Age Discrimination in Employment Act, 29 U.S.C.S. § 621 et seq., it is unlawful for an employer to retaliate against an employee who has exercised her statutory right to complain about conduct that she considers discriminatory.

*Labor & Employment Law > Discrimination > Retaliation > Statutory Application > Age Discrimination in Employment Act*
[HN14]The New York State Human Rights Law, N.Y. Exec. Law § 290 et seq., and the New York City Human Rights Law, New York City, N.Y., Admin. Code § 8-101 et seq. both provide that an employer may not retaliate against an employee engaged in a protected activity. N.Y. Exec. Law § 296(7); New York City, N.Y., Admin. Code § 8-107(7).

*Labor & Employment Law > Discrimination > Retaliation > Elements > General Overview*
[HN15]To make out a prima facie case of retaliation, a plaintiff must show that (1) she participated in a protected activity; (2) the employer knew of this activity; (3) she was subjected to an adverse employment action; and (4) there is a causal connection between the protected activity and the adverse employment action. The last of these elements can be established: (a) directly through evidence of retaliatory animus directed against a plaintiff by the defendant; or (b) indirectly by showing that the protected activity was followed closely by discriminatory treatment or through other evidence such as disparate treatment of fellow employees who engaged in similar conduct.

*Labor & Employment Law > Discrimination > Retaliation > Burdens of Proof*
[HN16]Once a prima facie showing has been made, an employee's retaliation claim is subject to the McDonnell Douglas burden-shifting analysis. Consequently, if the employer furnishes a legitimate nondiscriminatory reason for the contested actions, the burden of persuasion rests with the employee, who must demonstrate that there is sufficient potential proof for a reasonable juror to find the proffered legitimate reason merely a pretext for impermissible retaliation.

*Labor & Employment Law > Discrimination > Retaliation > Elements > Causal Link*
[HN17]The Second Circuit has not drawn a bright line as to the maximum amount of time between a protected activity and an adverse employment action that will satisfy the causation element of a retaliation claim. Nevertheless, a gap of only a month or two clearly warrants the inference that a causal nexus may exist. On the other hand, durations longer than that may not be sufficient to defeat a motion for summary judgment in the absence of other corroborative evidence.

*Civil Procedure > Summary Judgment > Burdens of Production & Proof > General Overview*
[HN18]A party opposing summary judgment may not rely on conclusory allegations or unsubstantiated speculation.

**COUNSEL:** For Barbara A. Phillips, Plaintiff Pro se: Robert J. Barsch, New York, NY.

For Mount Sinai Medical Center, Defendant: Laura E. Evangelista, Ricki E. Roer, Wilson, Elser, Moskowitz, Edelman & Dicker LLP, New York, NY.

**JUDGES:** [*1] FRANK MAAS, United States Magistrate Judge, THE HONORABLE GEORGE B. DANIELS.

**OPINION BY:** FRANK MAAS

**OPINION**

REPORT AND RECOMMENDATION TO THE HONORABLE GEORGE B. DANIELS

**FRANK MAAS**, United States Magistrate Judge.

I. *Introduction*

Plaintiff Barbara Phillips ("Phillips") brings this employment discrimination action against her former employer, Mt. Sinai Medical Center ("Mt. Sinai"), under federal, state, and local law. Phillips alleges that she was improperly terminated on the basis of her age and national origin and was also the victim of unlawful retaliation. Following the close of discovery, Mt. Sinai has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, Mt. Sinai's motion for summary judgment should be granted in part and denied in part.

II. *Facts*

Unless otherwise noted, the following facts either are undisputed or are set forth in the light most favorable to Phillips.

A. *Phillips' Employment at Mt. Sinai*

On January 29, 1990, Phillips began her employment at Mt. Sinai as a payroll clerk in the Payroll Department. (*See* Def.'s R. 56.1 Stmt. P1; [*2] Def.'s Ex. B (Dep. of Barbara Phillips, taken on Dec. 17, 2004 and Jan. 6, 2005 ("Phillips Dep.")), at 28-29). [1] At the time of her hiring, Phillips was 46 years old. (Phillips Dep. 30). In 1995, Mt. Sinai agreed to Phillips' request that she be transferred from the Payroll Department to the Cardiac Care Unit to become a Patient Care Administrator. (Def.'s R. 56.1 Stmt. P2; Phillips Dep. 31-32). Mt. Sinai also paid for her retraining. (Phillips Dep. 8). After approximately four months in the Cardiac Care Unit, Phillips asked to be transferred back to the Payroll Department as a payroll clerk. (*Id.* at 32-33). Once again, Mt. Sinai granted her request. (*Id.*).

> 1   All but one of the exhibits proffered to the Court in connection with Mt. Sinai's summary judgment motion are defense exhibits. Accordingly, unless otherwise noted, all subsequent citations to exhibits by letter refer to the exhibits submitted by Mt. Sinai.

Phillips' responsibilities as a payroll clerk included completion of payroll and informational [*3] forms, answering telephones at a front desk, and processing a "manual" payroll. (*See* Ex. D) (Duties and Responsibilities List). As part of her duties in connection with the manual payroll, Phillips was required to pick up employee time cards from the Mt. Sinai mail room and review them to identify any "non-productive" time, such as sick time. (*See* Phillips Dep. 45, 49-50). If an employee requested payment for non-productive time, Phillips was required to check the employee's index card to determine whether the employee had an appropriate time credit in the "bank." If the employee did have time available, Phillips was required to process a salary payment for the employee and note the payment on the index card. (*Id.* at 45-46). If the employee did not have time available, Phillips was required to note on the index card that a request for time had been made and denied due

to lack of available non-productive time. (*Id.*; *see also id.* at 126-127).

According to Phillips, misplaced index cards were a "big problem" in the Payroll Department. (Aff. of Barbara Phillips, sworn to on March 31, 2005 ("Phillips Aff."), P11). Accordingly, whenever an employee's index card could [*4] not be located, Phillips would "put the time card[] through" since she "could not post non-productive time on the card[] if the card[] could not be located." (*Id.*). Phillips contends that this was the uniform "practice [in] the department." (*Id.*). Phillips similarly contends that time not worked on holidays was routinely not posted on the index cards because there were "too many cards, so you let it go through." (Phillips Dep. 152-53). When holiday or other non-productive time was not properly posted on index cards, employees received payments in excess of their proper wages. (*Id.*).

B. *Warnings to Phillips*

On Monday, March 27, 2000, Phillips was scheduled to process the weekly manual payroll. (*See* Ex. E; Phillips Dep. 96). That morning, Phillips called in sick and did not arrive at work until 2 p.m. (Phillips Dep. 99-100). In her absence, another Payroll Department employee, Brenda Anthony, picked up the mail from the mail room. (*Id.* at 100). According to Phillips, Anthony removed some, but not all, of the time cards from the mail bag. (*Id.* at 100-02). When Phillips came into the office, she noticed the mail bag sitting near a printer and placed [*5] it in the incoming mail box without realizing that some of the time cards remained in the bag. (*Id.*). In keeping with her understanding that the first task after retrieving the mail bag was to segregate all the time cards, Phillips did not look inside the mail bag because she believed that Anthony had removed all of the cards. (*Id.* at 102-03). As a result of this mistaken assumption, 150 employees did not receive their paychecks on time. (*See* Def.'s R. 56.1 Stmt. P6). Mt. Sinai's computer system also had to be taken off its regular schedule so that a special payroll could be run. (*See* Ex. F). On April 5, 2000, as a result of this incident, Phillips was issued a Warning Notice. (*Id.*). The notice charged that Phillips had refused to follow a supervisor's instructions or accept a job. (*Id.*). Phillips was cautioned that "further disregard for the Medical Center's policies will result in additional disciplinary actions up to and including termination." (*Id.*). Phillips filed a grievance, but her union failed to pursue it, claiming that it was untimely. (Phillips Dep. 113).

On October 5, 2000, Phillips received a second Warning Notice and a three-day suspension [*6] for overpaying an employee on medical disability on two occasions. (*See* Ex. G). The notice charged that on August 14 and 28, 2000, Phillips had approved the payment of 37.5 sick hours to an employee who did not have the requisite sick time available. (*Id.*; Phillips Dep. 119-23). According to the notice, in the second instance, Phillips posted on the employee's index card that "five days were requested and none were paid." (*See* Ex. G). The two payments resulted in the employee receiving a total of $ 1,364 to which she was not entitled. (Phillips Dep. 127).

Phillips does not deny that she paid the employee in error on the first occasion, but asserts that her immediate supervisor, Hassan Shroff, told her on the second occasion that the employee was entitled to be paid. (Phillips Aff. P7; Phillips Dep. 123-27). Phillips further contends that the two alleged errors both resulted from "poor management by Mr. Lopez and Mr. Shroff in maintaining the index cards that list the employee's information," which were "often misplaced." (Phillips Aff. P7). Despite this contention, the Warning Notice issued by Mt. Sinai charged that "[Phillips'] failure to follow instructions has caused [*7] needless overpayments to an employee of the Medical Center." (Ex. G).

Mt. Sinai terminated Phillips on April 20, 2001. The Termination Notice issued to her cited two further incidents involving Phillips' failure to post non-productive time on employee time cards. According to the notice, on February 26, 2001, Phillips failed to record non-productive time on four employee index cards, which resulted in overpayments to them. (Phillips Dep. 145-46). Thereafter, on March 19, 2001, Phillips failed to record holiday time on another employee's index card. (*Id.* at 153-58). The Termination Notice alleged that, "despite previous disciplinary actions concerning [Phillips'] failure to follow instructions and conduct detrimental to [Mt. Sinai]'s operations, no improvement has been made." (Notice of Motion Ex. H) (Termination Notice).

Phillips concedes that she failed to post non-productive time on employee index cards and therefore caused overpayments to be made. (*See* Phillips Dep. 119-20, 123-27, 145-48, 150-52, 156-58). Phillips argues, however, that the practice in the Payroll Department was to put a time card through if a clerk was unable to find the employee's index card. (Phillips [*8] Aff. P11). Phillips contends that other payroll clerks, including at least one who was under the age of forty, also failed to post non-productive time on index cards. (*Id.* PP9, 11).

C. *Administrative Proceedings*

On April 24, 2000, Phillips filed a charge against Mt. Sinai with the State Division of Human Rights ("SDHR"), in which she alleged that she was the victim of age discrimination in violation of Section 296 of the New York State Human Rights Law ("NYSHRL"). (*See* Ex. J). This charge was filed only a few weeks after Phillips received her first Warning Notice. It is unclear from the record how her complaint was resolved.

On January 23, 2001, Phillips filed a Charge of Discrimination against Mt. Sinai with the federal Equal Employment Opportunity Commission ("EEOC"). (*See* Ex. K). Phillips alleged that she was discriminated against because of her age in violation of the Age Discrimination in Employment Act ("ADEA"). Phillips cited several instances of alleged age discrimination by Mt. Sinai. (*Id.*). In her charge, Phillips conceded that she had "overpaid a client for [one] week ( $ 300.00)." (*Id.*). With respect to the March 27, 2000 episode, Phillips [*9] alleged that "it was the responsibility of a younger employee . . . Brenda Anthony . . . to retrieve time cards and place them in the incoming mail boxes. I was blamed for the error that was committed by my younger counterpart." (*Id.*). Phillips also cited two other incidents in which younger employees (Anthony and Shroff) had overpaid Mt. Sinai employees without being sanctioned. In the first incident, Anthony allegedly paid a doctor the sum of $ 18,000 in error. (*Id.*). In the second, Shroff allegedly caused an employee to be paid for four weeks of sick leave he had not earned. (*Id.*).

On March 23, 2001, the EEOC issued a Right to Sue letter to Phillips, in which it stated that its investigation did not lead to the conclusion that Mt. Sinai had violated the ADEA. (*See* Ex. L).

On February 13, 2002, after she was terminated, Phillips filed a second EEOC Charge of Discrimination against Mt. Sinai, in which she alleged that Mt. Sinai had unlawfully retaliated against her for filing her first EEOC complaint. (*See* Phillips Aff. Ex. A). She further alleged that "the termination continued the age discrimination [she] encountered from [her] supervisor . . . [who] [*10] often derided [her] national origin, Jamaican, by making fun of [her] accent, and [by making] other derogatory comments about Jamaicans." (*Id.*). Although the disposition of Phillips second EEOC charge is not part of the record, Mt. Sinai does not dispute that this claim was properly exhausted.

D. *Federal Action*

Phillips commenced this action by delivering her complaint to the Pro Se Office of the Court on or about June 21, 2000. (*See* Docket No. 1). Thereafter, she retained Robert J. Barsch, Esq., as her attorney; he appeared on October 16, 2001, and filed an amended complaint on March 13, 2002. (*See* Docket No. 8). Phillips' amended complaint alleges that she was discriminated against on the basis of her national origin and age and was the victim of unlawful retaliation. The amended complaint alleges that Mt. Sinai's discriminatory conduct violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.*; the ADEA, 29 U.S.C. § 621, *et seq.*; the New York State Human Rights Law ("NYSHRL"), Executive Law § 290, *et seq.*; and the New York City Human Rights Law ("NYCHRL"), New York [*11] City Administrative Code § 8-101, *et seq.* Subsequently, pursuant to a May 30, 2002 Stipulation and Order, Phillips withdrew her claim of national origin discrimination under Title VII. (*See* Docket No. 11).

E. *Summary Judgment Motion*

Mt. Sinai filed its motion for summary judgment on February 23, 2005. (Docket Nos. 22, 23). On August 2, 2005, following several extensions, Phillips served her opposition papers. (Docket Nos. 10, 18, 21, 24, 28). Thereafter, on May 6, 2005, Mt. Sinai filed a reply memorandum. (Docket No. 25). Once the motion was fully submitted, Your Honor referred it to me on September 7, 2005, for a Report and Recommendation. (Docket No. 29).

III. *Discussion*

A. *Summary Judgment Standard*

[HN1]Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate only when:

> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

[HN2]In deciding a motion for summary judgment, the court must "view the [*12] evidence in the light most favorable to the party against whom summary judgment is sought and . . . draw all permissible inferences in favor of that party." *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997). The Court also must accept as true the non-moving party's evidence, if supported by affidavits or other evidentiary material. *See Kulak v. City of New York*, 88 F.3d 63, 70 (2d Cir. 1996). Assessments of credibility, choosing between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court. *Fischl*, 128 F.3d at 55. *See also* Fed. R. Civ. P. 56(e) 1963 advisory committee's note. Thus, "the court's function is not to resolve disputed issues of fact but only to determine whether there is a genuine issue of material fact to be tried." *Fischl*, 128 F.3d at 55.

[HN3]To defeat a motion for summary judgment, the non-moving party cannot merely rely upon allegations contained in the pleadings that raise no more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). [*13] Rather, the non-moving party must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

[HN4]The Second Circuit has cautioned that summary judgment is often inappropriate in cases where the trier of fact will have to delve into an employer's intent, because intent is an issue as to which direct evidence is rarely

available. *See, e.g.*, *Gallo v. Prudential Residential Servs. Ltd. P'ship,* 22 F.3d 1219, 1224 (2d Cir. 1994); *Patrick v. LeFevre,* 745 F.2d 153, 159 (2d Cir. 1984). However, when an employer has explained its conduct and the plaintiff has offered only conclusory assertions in opposition, summary judgment may be granted. *See, e.g.*, *Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir. 1985) ("To allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all [discrimination] cases.").

B. *Substantive Claims*

1. *Age Discrimination*

   a. *Applicable Law*

[HN5]Under the ADEA, it is unlawful [*14] for "an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Similarly, [HN6]the NYSHRL and NYCHRL make it unlawful for an employer to discriminate against an employee in the terms, conditions, or privileges of employment on the basis of age. *See* N.Y. Exec. Law § 296(1)(a); N.Y. City Admin. Code § 8-107(1)(a).

[HN7]The framework for analyzing NYSHRL and NYCHRL age discrimination claims is essentially the same as under the ADEA. *See Molin v. Permafiber Corp.*, 2002 U.S. Dist. LEXIS 23674, No. 01 Civ. 9279 (SHS), 2002 WL 31760215, at *3 (S.D.N.Y. Dec. 9, 2002) ("Claims made pursuant to the New York State Human Rights Law and the New York City Human Rights Law are subject to the same analysis as claims brought pursuant to the ADEA."); *Schreiber v. Worldco, LLC,* 324 F. Supp. 2d 512, 520 (S.D.N.Y. 2004) (same); *see also Carr v. WestLB Admin., Inc.,* 171 F. Supp. 2d 302, 307 n.1 (S.D.N.Y. 2001) (treating plaintiff's NYSHRL age discrimination claim [*15] "in a manner identical to" plaintiff's ADEA claim). Accordingly, only Phillips' ADEA claim need be discussed in detail.

[HN8]In assessing an ADEA claim, a court must apply the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-03, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), and its progeny. Under that rubric, the plaintiff must satisfy an initial burden of "proving by a preponderance of the evidence a prima facie case of discrimination." *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 252-53, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). To establish a *prima facie* case, an employee must show that: (1) she was within the protected age group; (2) she was qualified for the job; (3) she was subjected to an adverse employment decision or discharge; and (4) the adverse action occurred under circumstances giving rise to an inference of age discrimination. *See Stratton v. Dep't For the Aging,* 132 F.3d 869, 879 (2d Cir. 1997); *Stetson v. Nynex Service Co.,* 995 F.2d 355, 359 (2d Cir. 1993).

[HN9]Once the plaintiff makes out a *prima facie* case, "a rebuttable presumption of discrimination arises and the burden then shifts [*16] to the defendant to articulate a legitimate nondiscriminatory reason for the employment decision." *Stratton,* 132 F.3d at 879. The purpose of this step is "to force the defendant to give an explanation for its conduct, in order to prevent employers from simply remaining silent while the plaintiff founders on the difficulty of proving discriminatory intent." *Fisher v. Vassar College,* 114 F.3d 1332, 1335-36 (2d Cir. 1997) (*en banc*).

Finally, if the defendant provides a nondiscriminatory rationale for its conduct, the rebuttable presumption drops out of the case. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 510-11, 113 S. Ct. 2742, 125 L. Ed. 2d 407

(1993). The burden then rests on the plaintiff to prove not only that the proffered nondiscriminatory reason was pretextual, but also that the defendant discriminated against the plaintiff. *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 91 (2d Cir. 2001).

b. *Plaintiff's Prima Facie Case*

Phillips has established the first three elements of her *prima facie* case. At the time of her termination, Phillips was 56 years old and therefore within the protected age group. The [*17] fact that Mt. Sinai approved Phillips' request to transfer to the Cardiac Care Unit and then her request to transfer back to the Payroll Department also suggests that she was qualified for the job. (*See* Phillips Dep. 31-32; Def.'s R. 56.1 Stmt. P2). Finally, it is clear that Phillips' suspension and later termination were adverse employment actions. Thus, the only question remaining is whether Phillips has shown that an adverse employment action occurred under circumstances giving rise to an inference of age discrimination.

Phillips does not contend that Lopez or any other Mt. Sinai employee made ageist remarks to her or in her presence. Instead, she offers several alleged examples of disparate treatment on the basis of her age. First, she notes that she received a disciplinary notice for the March 27, 2000 payroll error despite the fact that Anthony, whom she describes as younger, was the person who brought the time cards to the Payroll Department from the mail room. (Phillips Aff. P3). Second, Phillips complains that after her co-worker Desiree Green was terminated, Lopez reassigned all of her payroll clerk duties to Phillips without "any effort to divide them evenly among the [*18] employees." (*Id.* P6). Third, Phillips contends that Anthony paid a dead employee, and Shroff, whom she also describes as "younger," overpaid an employee for unearned sick pay for over two years, without receiving disciplinary notices. (*Id.* P9). Fourth, Phillips asserts that Shroff directed her to make the August 14, 2000 overpayment as part of a deliberate effort to cause her to make errors. (*Id.* P7; Phillips Dep. 123-27). Fifth, Philips notes that Lopez "refused to train" her on the "Atkins" system, a computerized payroll system used by the Payroll Department. (Phillips Aff. P4). Sixth, Phillips claims that, on one occasion, Lopez accused her of overpaying more than thirty employees, but dropped the matter without disciplining anyone once he learned that another employee had handled the payroll. (*Id.* P12). For purposes of the *McDonnell Douglas* analysis, I will assume that some or all of these allegations make out a *prima facie* case that the true motivation for Mt. Sinai's actions was age discrimination.

c. *Mt. Sinai's Defense*

On the assumption that Phillips has established a *prima facie* case, the burden shifts to Mt. Sinai to articulate a legitimate, [*19] nondiscriminatory reason for its decision to suspend and eventually terminate Phillips. Mt. Sinai's position, quite simply, is that Phillips was a serial offender, who made repeated errors despite several warnings. Mt. Sinai asserts that Phillips was suspended and then terminated solely for these payroll errors, as evidenced by the disciplinary notices previously issued to her. Having stated a legitimate nondiscriminatory reason for its actions, the burden shifts to Phillips to show that the proffered reasons are pretextual and that Mt. Sinai's real motivation was age discrimination.

As noted earlier, this is not a case in which there is any direct evidence of age discrimination. For example, there is no proof that Lopez or anyone else in the Payroll Department made any remarks reflecting a bias against older Mt. Sinai employees. Instead, Phillips apparently seeks to prove that Mt. Sinai's purportedly age-neutral reasons for its actions are pretextual because younger employees were treated more favorably. Since Phillips took no depositions during discovery and has not proffered any exhibits other than

her EEOC retaliation complaint as part of her motion papers, the record in this regard [*20] is remarkably sparse.

In her papers, Phillips alleges that Anthony should have been disciplined for her role in the March 27, 2002 failure to process a large number of payroll checks, but was not - presumably because she was younger. [2] (*See* Pl.'s Mem. at 4). In order to warrant an inference of discrimination on the basis of age, Phillips would have to show that Anthony was similarly situated in all material respects. *See Lloyd v. Bear Stearns & Co.*, 2004 U.S. Dist. LEXIS 24914, No. 99 Civ. 3323 (GBD), 2004 WL 2848536, at *7 (S.D.N.Y. Dec. 9, 2004). Phillips has made no such showing in this case. [3] Accordingly, the fact that Anthony was not disciplined does not show that Phillips was treated disparately, much less that the differences in treatment are attributable to their respective ages. Indeed, as Mt. Sinai notes, during the period from 1998 through 2001, three payroll clerks other than Phillips were given disciplinary warnings. (Ex. M at 7) (Resp. to Interrog. No. 13). Two of the three employees were under the age of forty. (*Id.* 2004 U.S. Dist. LEXIS 24914, at [WL] 8) (Resp. to Interrog. No. 15).

> 2   In her affidavit, Phillips alleges that Anthony is in her 30s. (Phillips Aff. P10). At her deposition, however, Phillips testified that Anthony was "maybe 40, 41." (Phillips Dep. 76-77). For its part, Mt. Sinai contends that Anthony was, in fact, 43 years old in 2001. (*See* Ex. C at 5 n.2). The only documentary support for this assertion is an excerpt from a letter that Mt. Sinai's in-house counsel sent to the EEOC on March 16, 2001. (*See id.*). To the extent that this letter is offered for the truth of its contents, it plainly is inadmissible. *See* Fed. R. Civ. P. 56(e), Fed. R. Evid. 802.

[*21]

> 3   Mt. Sinai contends that Anthony was a Payroll Coordinator, not a Payroll Clerk like Phillips. (*See* Def.'s Reply Mem. at 4). Here, again, however, the only documentary support proffered by Mt. Sinai is a letter containing inadmissible hearsay.

Phillips also alleges that Anthony and Shroff committed other errors comparable to hers without being disciplined. More specifically, Phillips states that Anthony once "paid a dead person, Noel Johnson, and was not disciplined," and that Shroff paid another employee, Ms. Cleckly, "for unearned sick pay for over two years." (Phillips Aff. P9). She similarly avers that, because of the many problems arising out of a manual payroll system, "overpaying errors . . . were not grounds for suspension or termination unless many errors were made." [4] (*Id.*).

> 4   Phillips does not indicate how many errors were too many under Mt. Sinai's alleged policy. Mt. Sinai contends, however, that Phillips committed numerous errors after receiving her second Warning Notice. (*See* Def.'s Reply Mem. at 4 n.1)

[*22] Phillips has not indicated how many errors were necessary for an employee to cross the disciplinary threshold. Her affidavit also fails to describe the circumstances surrounding the payments to Johnson and Cleckly. She therefore has not shown that the errors she cites are comparable to those that caused Mt. Sinai to discipline her. Moreover, although she provides the names of the payees and a generalized description of the alleged errors, Phillips has not shown, as Rule 56(e) of the Federal Rules of Civil Procedure requires, that she has personal knowledge of the matters at issue and is competent to testify as to them. Her statements concerning alleged errors by other Payroll Department employees, and the circumstances under which such employees are

disciplined, consequently cannot be considered by the Court in connection with Mt. Sinai's motion.

Phillips also complains that she was assigned all of the duties formerly handled by Desiree Green after Green was fired by Lopez. (Phillips Aff. P6). Phillips suggests that these duties should have been divided evenly among the remaining Payroll Department employees. (*Id.*). Ironically, Green was [*23] significantly younger than Phillips. (*See* Phillips Dep. at 41) (stating that Green was "30-something" in 2000). Although Phillips speculates that Lopez took such steps as redistributing Green's work unevenly "to either worsen [Phillips'] job performance or to make [her] quit," (Phillips Aff. P6), such conclusory assertions obviously are not admissible to show that Lopez acted on the basis of Phillips age. *See Randolph v. CIBC World Mkts.*, 2005 U.S. Dist. LEXIS 4839, No. 01 Civ. 11589 (RWS), 2005 WL 704804, at *6 (S.D.N.Y. Mar. 29, 2005) (citing *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 65 (2d Cir. 1997) [HN10]("conclusory" allegations concerning the treatment of similarly situated employees "do not raise a genuine issue of material fact")); *see also Alston v. New York City Transit Auth.*, 1999 U.S. Dist. LEXIS 11376, No. 97 Civ. 1080 (RWS), 1999 WL 540442, at *7 (S.D.N.Y. July 26, 1999) (finding that Title VII plaintiff's "conclusory allegations and failure to provide some factual support for his *prima facie* case of discrimination did not satisfy even the light burden with which [he] is faced at this stage of the proceedings").

Phillips also suggests that at least one of [*24] the August 2000 erroneous payments was made because Shroff told her that the payee had time available. (Phillips Aff. P7). She also avers that both of her alleged errors in August were attributable to "poor management by Lopez and Shroff." (*Id.*). Assuming that both of these assertions are correct, they plainly do not suggest that either Lopez or Shroff was motivated to act as they did on the basis of Phillips' age.

Phillips also alleges that she "wanted to learn the [computerized] Atkins system" so that she would not have to locate index cards in order to perform her work, but that Lopez refused this request. (*Id.* PP4, 9). Again, this brief statement provides no particulars as to the timing of her request, how comparable individuals were treated, or the reasons why her request was denied. In the absence of such details, there is no basis upon which a finder of fact could reasonably conclude that the alleged denial of her request evidences Lopez's bias against older persons. Phillips' fleeting reference to an occasion when Lopez accused her of overpaying thirty or more employees, but then "dropped the matter without disciplining anyone" after he learned that someone else [*25] had "handled the payroll," is similarly bereft of any evidentiary detail from which a finder of fact could reasonably conclude that the incident evidenced Lopez's bias against older employees. (*Id.* P12).

In sum, taken individually or as a group, the events that Phillips relies upon as the basis for her claim of age discrimination would not permit a finder of fact to conclude that Mt. Sinai discriminated against her on the basis of her age. Mt. Sinai therefore is entitled to summary judgment on these claims.

2. *National Origin*

Phillips' original EEOC complaint made no mention of her national origin as a basis for Mt. Sinai's alleged discrimination. (*See* Ex. K). Apparently for that reason, Phillips has withdrawn her claim of discrimination on the basis of her national origin under Title VII. (*See* Docket No. 11). This claim consequently is being pursued only under the NYSHRL and NYCHRL. Those statutes [HN11]make it unlawful for an employer to discriminate against an employee in the terms, conditions or privileges of employment on the basis of

national origin. *See* N.Y. Exec. Law § 296(1)(a); N.Y. City Admin. Code § 8-107(1)(a). Although Title [*26] VII is not available as a basis for Phillips to recover damages for this claim, the *McDonnell Douglas* framework nevertheless is applicable. *See Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 565 n.1 (2d Cir. 2000); *Landwehr v. Grey Adver., Inc.*, 211 A.D.2d 583, 622 N.Y.S.2d 17 (App. Div. 1st Dep't 1995).

Phillips was born in Panama, but her grandparents were Jamaican. (*See* Phillips Aff. P1; Phillips Dep. at 5-6, 193-94). Her national origin discrimination claim rests on her belief that Lopez discriminated against her because she is of Jamaican descent. (*See* Pl.'s Mem. at 4-5). Phillips does not contend that anyone other than Lopez discriminated against her because of her national origin. (Phillips Dep. 285).

The evidence that Phillips offers to support her claim is largely a rehash of the evidence that she cited in support of her age discrimination claim. For example, Phillips notes that Anthony and Shroff, who are not Jamaican, were not disciplined although they also made errors in the processing of Mt. Sinai's payroll. (*See* Pl.'s Mem. at 5). Phillips also again relies on Lopez's alleged refusal to train her on the Atkins system. ( [*27] *Id.*). The only evidence that Phillips relies upon which even remotely suggests that Lopez may have discriminated against her based on her heritage relates to an occasion in 2000 or 2001 when Phillips answered an office telephone and told Lopez, "Sue called." Lopez apparently thought Phillips said "Stew called," and responded, "I don't understand your Jamaican accent." (Phillips Dep. 197). In her affidavit, Phillips maintains that Lopez "constantly" made fun of her Jamaican accent in front of office staff, despite the fact that he clearly could understand her speech. (Phillips Aff. P3). When Phillips was asked during her deposition whether Lopez made other comments about her Jamaican accent, she said, "To be frank, Mr. Lopez was always talking about everybody's accent." (Phillips Dep. 199). She also testified that she did not recall Lopez saying "anything else" about her accent. (*Id.* at 200). Mt. Sinai reads this deposition testimony as an admission that Lopez only made a comment about her accent on a single occasion. (*See* Def.'s Mem. at 6-7). The testimony can also be read to indicate that Lopez was "always talking about" Phillips accent, but restricted his remarks to statements [*28] about his alleged difficulty understanding her.

Even if a finder of fact were to conclude that Lopez frequently made fun of Phillips' accent, there is nothing in the record before the Court which indicates a nexus between those comments and his decision to discipline or terminate her. Moreover, with the exception of the one incident involving a telephone call from "Sue," Phillips has provided no details as to Lopez's allegedly repeated acts. Phillips also did not complain to the EEOC or SDHR about Lopez's alleged harassment prior to her termination. (*See* Exs. J, K). [5]

> 5   Following her termination, in her EEOC complaint charging Mt. Sinai with retaliation, Phillips alleged for the first time that "my supervisor often derided my national origin, Jamaican, by making fun of my accent, and made other derogatory comments about Jamaicans." (Phillips Aff. Ex. A).

In these circumstances, Lopez's alleged remarks about Phillips' accent are insufficient to establish a *prima facie* case of discrimination on national [*29] origin grounds. *See Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 56 (2d Cir. 1998) [HN12]("As a general rule, isolated and disconnected derogatory remarks by a decision maker are by themselves insufficient to raise an inference of discrimination."); *see also O'Connor v. Viacom Inc.*, 1996 U.S. Dist. LEXIS 5289, No. 93 Civ. 2399 (LMM), 1996

WL 194299, at *5 (S.D.N.Y. April 23, 1996) ("Stray remarks in the workplace, by themselves, and without a demonstrated nexus to the complained of personnel action will not defeat the employer's motion for summary judgment."); *De La Cruz v. New York City Human Res. Admin. Dep't of Soc. Servs.*, 884 F. Supp. 112, 116 (S.D.N.Y. 1995) (granting employer's motion for summary judgment, despite allegations of stray racial remarks, where plaintiff's work contained "numerous and critical errors").

### 3. *Retaliation*

Phillips' Third Cause of Action alleges that Mt. Sinai violated the ADEA by terminating her in retaliation for her filing of a Charge of Discrimination with the EEOC. (Am. Compl. PP 34-37). Similarly, her Sixth and Ninth Causes of Action allege that Mt. Sinai violated, respectively, the NYSHRL and the NYCHRL by retaliating against [*30] her. (*Id.* PP54-60, 73-79).

[HN13]Under the ADEA, it is unlawful for an employer to retaliate against an employee who has exercised her statutory right to complain about conduct that she considers discriminatory. *See Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87 at 94; *see also Davis v. State Univ. of N.Y.*, 802 F.2d 638, 642 (2d Cir. 1986) ("A finding of unlawful retaliation is not dependent on the merits of the underlying discrimination complaint."). Similarly, [HN14]the NYSHRL and NYCHRL both provide that an employer may not retaliate against an employee engaged in a protected activity. *See* N.Y. Exec. Law § 296(7); N.Y. City Admin. Code § 8-107(7).

Retaliation claims brought under all three statutes are governed by the same standards. *See Duffy v. Drake Beam Morin, Harcourt General, Inc.*, 1998 U.S. Dist. LEXIS 7215, No. 96 Civ. 5605 (MBM), 1998 WL 252063, at *6 n.7 (S.D.N.Y. May 19, 1998); *Devlin v. Transp. Communs. Int'l Union*, 2002 U.S. Dist. LEXIS 10048, No. 95 Civ. 0742 (JFK), 2002 WL 413919, at *12 (S.D.N.Y. Mar. 14, 2002), *aff'd sub nom Milone v. Travelers Ins. Co.*, 93 Fed. Appx. 323, 324 (2d Cir. 2004); *see also Tomka v. Seiler Corp.*, 66 F.3d 1295, 1305 n.4 (2d Cir. 1995) [*31] (standard of proof for claims under the state Human Rights Law is the same as for those brought under Title VII); *Pace Univ. v. Comm'n on Human Rights*, 200 A.D.2d 173, 182-83, 611 N.Y.S.2d 835 (1st Dep't 1994), *rev'd on other grounds*, 85 N.Y.2d 125, 647 N.E.2d 1273, 623 N.Y.S.2d 765 (1995) (setting forth elements of retaliation claim under NYCHRL and noting that the requirements of Title VII are "virtually identical"). Accordingly, [HN15]to make out a *prima facie* case of retaliation, Phillips must show that (1) she participated in a protected activity; (2) Mt. Sinai knew of this activity; (3) she was subjected to an adverse employment action; and (4) there is a causal connection between the protected activity and the adverse employment action. *See Cifra v. GE*, 252 F.3d 205, 216 (2d Cir. 2001); *Holt v. KMI-Continental, Inc.*, 95 F.3d 123, 130 (2d Cir. 1996). The last of these elements can be established: (a) "*directly* through evidence of retaliatory animus directed against a plaintiff by the defendant;" or (b) "*indirectly* by showing that the protected activity was followed closely by discriminatory treatment . . . or through other evidence such as disparate [*32] treatment of fellow employees who engaged in similar conduct . . ." *DeCintio v. Westchester County Med. Ctr.*, 821 F.2d 111, 115 (2d Cir. 1987) (internal citations omitted) (emphasis in original).

[HN16]Once a *prima facie* showing has been made, an employee's retaliation claim is subject to the *McDonnell Douglas* burden-shifting analysis. Consequently, if the employer furnishes a legitimate nondiscriminatory reason for the contested actions, the burden of persuasion rests with the employee, who must "demonstrate that there is sufficient potential proof for a reasonable juror to find the

proffered legitimate reason merely a pretext for impermissible retaliation." *Richardson v. New York State Dep't of Correctional Serv.*, 180 F.3d 426, 443 (2d Cir. 1999).

In this case, Phillips retaliation claim founders on the shoals of the causal nexus requirement. Phillips concedes that the first Mt. Sinai Warning Notice could not have been issued in retaliation for her NYSDHR complaint because her filing was made several weeks after Mt. Sinai acted. (Pl.'s Mem. at 6). She argues, however, that she has made a *prima facie* showing of causation because her suspension and termination [*33] occurred *after* her NYSDHR and EEOC filings. Indeed, it is undisputed that Phillips was suspended on October 6, 2000, six months after she filed her NYSDHR complaint. It similarly is undisputed that Phillips was terminated on April 20, 2001, approximately three months after she filed her first EEOC complaint on January 23, 2001. (Def.'s R. 56.1 Stmt. P7; Phillips Aff. P11). The alleged temporal nexus between Phillips' filings and her suspension and termination is the only evidence that Phillips proffers in an effort to establish that Mt. Sinai's actions were retaliatory. (*See* Pl.'s Mem. at 6-7).

[HN17]The Second Circuit has not drawn a bright line as to the maximum amount of time between a protected activity and an adverse employment action that will satisfy the causation element of a retaliation claim. *Gorman-Bakos v. Cornell Co-op Extension of Schenectady County*, 252 F.3d 545, 554 (2d Cir. 2001). Nevertheless, a gap of only a month or two clearly warrants the inference that a causal nexus may exist. *See, e.g.*, *Treglia v. Town of Manlius*, 313 F.3d 713, 721 (2d Cir. 2002) ("The temporal proximity between . . . protected activity in February 1998 [*34] and the allegedly adverse employment actions in March 1998 is sufficient to establish the required causal link for a prima facie case."); *Cifra*, 252 F.3d at 217 (summary judgment should not have been granted where employee was fired "just 20 days after GE learned that she had hired an attorney to pursue her claim of gender discrimination"); *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 769 (2d Cir. 1998) (error to grant summary judgment where plaintiff's "discharge came less than two months after she filed a complaint with [defendant's] management and just ten days after she filed a complaint with the [SDHR]"). On the other hand, durations longer than that may not be sufficient to defeat a motion for summary judgment in the absence of other corroborative evidence. *See, e.g.*, *Hollander v. Am. Cyanamid Co.*, 895 F.2d 80, 85 (2d Cir. 1990) (finding three-month gap too long to "fulfill the final requirement of a causal nexus" between the protected activity and retaliatory action); *Gilford v. City of New York*, 2004 U.S. Dist. LEXIS 13150, No 03 Civ. 0091 (SHS), 2004 WL 1574695, at *7 (S.D.N.Y. Jul. 14, 2004) (plaintiff "failed to raise an [*35] inference of retaliation based on temporal proximity" because nearly four months had elapsed between filing of charge and alleged retaliation); *Allen v. St. Cabrini Nursing Home, Inc.*, 198 F. Supp. 2d 442, 450 (S.D.N.Y. 2002) ("Claims of retaliation are routinely dismissed when as few as three months elapse between the protected activity and the alleged act of retaliation."); *but see, e.g.*, *Suggs v. Port. Auth. of N.Y. and N.J.*, 1999 U.S. Dist. LEXIS 6319, No. 97 Civ. 4026 (RPP), 1999 WL 269905, at *6 (S.D.N.Y. May 4, 1999) (six-month interval between EEOC filing and termination suggests causal relationship); *Stephens v. SUNY at Buffalo*, 11 F. Supp. 2d 242, 250 (W.D.N.Y. 1998) (summary judgment denied despite seven-month gap).

In this case, Phillips' assertion that she was suspended in retaliation for her filing of a discrimination complaint with the NYSDHR fails as a matter of law. At the outset, the warning notice that triggered her suspension was issued some six months after she commenced the state administrative proceeding, which substantially attenuates any

inference of causal nexus that might be drawn. Furthermore, Phillips has not shown that Lopez [*36] or anyone else involved in the decision to suspend her was aware that her NYSDHR complaint had been filed. For these reasons, Phillips has not made the required *prima facie* showing.

The temporal nexus between the filing of Phillips' first EEOC charge and her subsequent termination is much greater since only about three months elapsed between the two events. It furthermore is clear that Mt. Sinai knew about Phillips' filing since its Associate General Counsel, Marine O. Lowy, Esq., sent the EEOC a detailed response to Phillips' complaint on March 16, 2001. (Ex. C). [6] For these reasons, Phillips arguably has established a *prima facie* retaliation claim with respect to her termination.

> 6   The first page of Ms. Lowy's letter is not annexed to Exhibit C, but it is clear from the text of the letter that the EEOC is the addressee. (*See, e.g.*, *id.* at 5 n.3 ("Should the EEOC require that information, arrangements will be made to provide it.")).

Mt. Sinai, in turn, contends that Phillips was fired, after [*37] two prior warnings, because she overpaid an additional five employees. More specifically, Mt. Sinai's termination notice alleged that Phillips failed to record non-productive time on the record cards of four employees, one of whom was on medical disability. (Ex. H). Mt. Sinai's notice further alleged that Phillips failed to record the non-productive time of an additional employee on March 19, 2001. (*Id.*). During her deposition, Phillips essentially admitted that she failed to record non-productive time on the first of these dates. (*See* Phillips Dep. 145-48). Accordingly, Mt. Sinai has proffered a legitimate nondiscriminatory reason for firing Phillips - namely, her failure to follow instructions. To defeat Mt. Sinai's motion, Phillips therefore must show that there is evidence from which a reasonable juror could conclude that Mt. Sinai's asserted reasons for firing her are pretextual.

Phillips contends that it was the practice in Mt. Sinai's Payroll Department not to make a contemporaneous record of holiday time. As she explained at her deposition, "whenever there is a holiday there are too many cards to record, so what we do is the following day if we find the card . . . [*38] we will go and post it. That's what we do." (*Id.* at 151). Taking issue with Lopez's allegation that this was contrary to the instructions that she was given, Phillips testified, "That's the rules. That's the rules from [when a prior manager] was there until I left in 2001." (*Id.* at 152; *see also id.* at 30-31 (indicating that Lopez replaced the prior manager in or around 1996)).

Mt. Sinai has not introduced any evidence of a written policy concerning the posting of nonproductive holiday time. As a consequence, the arguments of both sides rest on their respective understandings as to what the rules required. Faced with these dueling interpretations, a finder of fact could reasonably adopt Phillips' testimony and conclude that Mt. Sinai's purported reasons for firing her were pretextual. For this reason, Phillips is entitled to a trial, but only insofar as she contends that she was fired in retaliation for the filing of her first EEOC complaint.

4. *Overtime and Vacation Time*

Phillips final claim is that she is owed accrued vacation pay of less than $ 1,000 for calendar year 2000, plus $ 32 in unpaid overtime. (*See* Phillips Aff. P14). Phillips has not submitted [*39] any documentary evidence to establish her entitlement to either amount. With respect to the vacation pay, she claims that every Mt. Sinai employee lost the same amount of vacation time in 2000 due to "some glitch in the system." (Phillips Dep. at 218). At her deposition, however, she conceded that

Shroff was supposed to "fix the problem" and that she did not know if he did. (*Id.* at 220-21). She also was unable to explain her overtime claim, admitting that she did not know the dates or times to which it related. (*Id.* at 223-24).

In sum, the only evidence in the record regarding these wages claims is Phillips' conclusory statements. Such unsubstantiated speculation does not entitle Phillips to recover any damages. *Lloyd*, 2004 U.S. Dist. LEXIS 24914, 2004 WL 2848536, at *7 (citing *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) [HN18](party opposing summary judgment "may not rely on conclusory allegations or unsubstantiated speculation") and *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (same).

IV. *Conclusion*

For the reasons set forth above, Mt. Sinai's motion for summary judgment should be granted, except insofar as Phillips [*40] contends in her Third Cause of Action that Mt. Sinai unlawfully retaliated against her for filing her first EEOC complaint.

V. *Notice of Procedure for Filing of Objections to this Report and Recommendation*

The parties are hereby directed that if they have any objections to this Report and Recommendation, they must, within ten days from today, make them in writing, file them with the clerk of the Court, and send copies to the chambers of the Honorable George B. Daniels, United States District Judge, United States Courthouse, 40 Centre Street, New York, New York 10007, to the chambers of the undersigned, at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. *See* U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72(b). Any requests for an extension of time for filing objections must be directed to Judge Daniels. The failure to file timely objections will result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); 28 U.S.C. § 636(b)(1) [*41]  ; Fed. R. Civ. P. 6(a), 6(e), 72(b).

Dated: New York, New York

November 14, 2005

FRANK MAAS

United States Magistrate Judge