# EXHIBIT L

Francesco Gallo                                                    1/11/2008

                                                              1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------x

ESTER LORUSSO,

                            Plaintiff,

        -against-

                                1:07 CV 03583-LBS


ALITALIA-LINEE AEREE ITALIANE, SpA,

                            Defendant.

----------------------------------x



            DEPOSITION OF FRANCESCO GALLO

              Friday,  January 11, 2008

                  New York, New York



REPORTED BY:
Holly Hough

```
                    Gallo                42
 1
 2     Q.  And he elected to take the retirement
 3  package, the ERP, in 2005, correct?
 4     A.  Yes, sir.
 5     Q.  And did you hire someone to replace him?
 6     A.  Yes.
 7     Q.  And that was you promoted Dursun Oksuz,
 8  correct?
 9     A.  Yes. Alitalia promoted with me.
10     Q.  It was your proposal, correct?
11     A.  Yes.
12     Q.  What were Mr. Dursun Oksuz's
13  qualifications for the position of vice president of
14  Regulatory Affairs?
15     A.  The biggest and the most important for me
16  was his ability and potential to learn and to grow.
17     Q.  To learn and to grow?
18     A.  To learn and grow, good potential, right.
19  And he studied law in Turkey, excellent in computer
20  science.
21     Q.  Was he the ideal candidate for the
22  position?
23     A.  No, but it was the best under the
24  circumstances.
25     Q.  Why was he a better candidate than Ester
```

```
                    Gallo                43
 1
 2  LoRusso?
 3     A.  When the position of Regulatory Affairs,
 4  Ester LoRusso, if I don't recall, was still managing
 5  director of GA 2000. It would have been a demotion
 6  for her.
 7     Q.  Didn't GA 2000 close in October of 2005?
 8     A.  October of 2005, no, I don't think so.
 9     Q.  You don't think it closed in 2005?
10     A.  No, it was closed in 2006.
11     Q.  Isn't that when you found Ester LoRusso a
12  job in Cargo as a director in 2006?
13     A.  Yes, therefore from GA, she was
14  transferred in Cargo, I believe, if I recall well,
15  2006.
16     Q.  You do not recall that there was a period
17  of four or five months that Ester LoRusso had
18  nothing to do because GA 2000 was closed and the
19  position in Cargo had not yet materialized?
20         MR. KOCIAN: Objection.
21     A.  No. I remember especially during this
22  time Ester LoRusso was overloaded up to the ceiling
23  of her office in files and refunds and so forth
24  because of the upcoming official closing, as
25  procedural consequences of the closing of the
```

```
                    Gallo                44
 1
 2  company.
 3     Q.  When was Mr. Oksuz promoted?
 4     A.  I don't remember. Sometime in 2006.
 5     Q.  February 2006?
 6     A.  May very well be.
 7     Q.  And didn't Ms. LoRusso take her position
 8  in Cargo in April 2006?
 9     A.  April 2006, I don't recall. Probably
10  prior than that.
11     Q.  All right. And do you recall that Ms.
12  LoRusso asked you if she could be considered for the
13  position of vice president of Regulatory Affairs?
14     A.  No.
15     Q.  If I told you that she makes that
16  allegation --
17     A.  Probably, probably.
18     Q.  Did you consider Ester LoRusso for that
19  position?
20     A.  At one point I did, I was thinking of, but
21  then again, it was Mr. Libutti's position that Ester
22  LoRusso was, in a way or another, going to be
23  terminated. Otherwise, there would have been other
24  jobs that Ester could have.
25     Q.  Let's just talk about --
```

```
                    Gallo                45
 1
 2         THE VIDEOGRAPHER: The tape ran out. We
 3  went off the record at 11:06 a.m.
 4         (A brief recess was taken.)
 5         THE VIDEOGRAPHER: This is the beginning
 6  of tape two. We're back on the record at 11:18
 7  a.m.
 8     Q.  Okay. Do you remember what Ester LoRusso
 9  said to you about her interest in the Regulatory
10  Affairs position?
11     A.  I don't remember.
12     Q.  Okay.
13     A.  But I believe that it was referred to me
14  of interest in the job by Mr. D'Oro. I'm not sure.
15  I don't know.
16     Q.  Did Mr. D'Oro recommend that you hire Ms.
17  LoRusso to the job of vice president, Regulatory
18  Affairs?
19     A.  No.
20     Q.  Did Mr. D'Oro, if you know, consider her
21  qualified for that position?
22         MS. KURZON: Objection.
23         MR. KOCIAN: Objection.
24         MR. KORAL: I don't see what is
25  objectionable.
```

12 (Pages 42 to 45)

```
                    Gallo               46
 1
 2    Q.  If you know.
 3    A.  No.
 4    Q.  Do you know?
 5    A.  He did not express any.
 6    Q.  So you don't know whether he thought she
 7  was qualified or not; is that right?
 8    A.  Right.
 9    Q.  Did you regard Mr. Oksuz as better
10  qualified for vice president of Regulatory Affairs
11  than Ms. LoRusso?
12    A.  No.
13    Q.  You thought they were equally qualified?
14    A.  Yes.
15    Q.  And your reason for selecting Mr. Oksuz
16  was that you think that Ms. LoRusso was still busy
17  with GA 2000 around February 2006?
18        MR. KOCIAN:  Objection.
19    A.  Yes.
20    Q.  Is that correct?
21    A.  Yes, it was one of the reasons.
22    Q.  I'm sorry, that was?
23    A.  One of the reasons.
24    Q.  What are the other reasons?
25        MR. KOCIAN:  Other than what you have told
```

```
                    Gallo               47
 1
 2  us already.
 3    A.  The selection of Mr. Oksuz to that
 4  position was the result of a compromise among
 5  Mr. Libutti, myself, and Mr. Marchese because of the
 6  program of the restructure of the Administration
 7  Department.
 8        MR. KORAL:  Would you read that answer
 9        back to me.
10        (Previous answer was read.)
11    Q.  So there was a restructure of the
12  Administration Department going on at this time?
13    A.  Yes.
14    Q.  And when you say it was the result of a
15  compromise, I think I need that to be explained
16  better.  What was Mr. Libutti's position?
17    A.  What was Mr. Libutti's position in
18  appointing Mr. Oksuz?
19    Q.  Well, you said choosing Oksuz was a
20  compromise.
21    A.  Yes, because Mr. Libutti asked me to
22  confer with headhunter in New York for the president
23  of the HR position, as well as Mr. D'Oro's
24  replacement.
25    Q.  Let's just focus on Mr. D'Oro's
```

```
                    Gallo               48
 1
 2  replacement.
 3    A.  Okay.
 4    Q.  He wanted you to hire a headhunter?
 5    A.  We did.
 6    Q.  In order to replace Mr. D'Oro?
 7    A.  Yes.
 8    Q.  As vice president of Regulatory Affairs?
 9    A.  That is correct.
10    Q.  And you did engage such a headhunter?
11    A.  Mr. Libutti did.
12    Q.  Mr. Libutti directly engaged --
13    A.  Yes.
14    Q.  Weren't you in charge of Human Resources
15  at this time?
16    A.  Yes.
17    Q.  But Mr. Libutti found his own headhunter?
18    A.  Yes.  And we had a meeting with them, as a
19  matter of fact, and introduced them to me.
20    Q.  You didn't recommend this headhunter to
21  Mr. Libutti?
22    A.  No.
23    Q.  Do you remember the name of the headhunter
24  or the company?
25    A.  No, but it is in file.
```

```
                    Gallo               49
 1
 2    Q.  All right.  When did Mr. Libutti engage
 3  the headhunter?
 4    A.  I believe the end of 2005.
 5    Q.  Okay.  Did the headhunter present any
 6  candidates?
 7    A.  Many.
 8    Q.  Were any of them qualified, in your
 9  opinion, I mean?
10    A.  Yes, they would be qualified with a long
11  process of training.
12    Q.  All the candidates presented by the
13  headhunter would have required a long process of
14  training?
15    A.  Very correct.
16    Q.  Did Mr. Libutti want to hire one of them
17  anyway?
18    A.  No, because they all were uneconomical,
19  very expensive.
20    Q.  Did Mr. Libutti then suggest that you
21  promote Mr. Oksuz?
22    A.  No.  I suggested Mr. Libutti that to see
23  if since Alitalia either way had to invest in
24  training in order to personalize the job and the
25  knowledge, according to the Alitalia necessity, to
```

13 (Pages 46 to 49)

One Penn Plaza, NYC              Toby Feldman, Inc.                    tel (212) 244.3990
email@tobyfeldman.com    NATIONWIDE SERVICES FOR LEGAL PROFESSIONALS    tel (800) 246.4950

Page 58

1  Q. The HR person from Rome was physically
2  present?
3  A. Yes. As a matter of fact, following that,
4  Tina went to Italy, I believe, two or three weeks.
5  And she enrolled, she was enrolled at Berlitz
6  School, Berlitz School in Italy, to learn some
7  Italian. So that was, you know.
8  Q. Berlitz, is that what you said?
9  A. Yeah.
10 Q. Okay. Did Tina get a letter of
11 appointment signed by you and somebody else?
12 A. Probably.
13 Q. Do you remember signing a letter of
14 appointment?
15 A. I don't remember. I don't remember.
16 Probably.
17 Q. You testified that Mr. Oksuz had the
18 ability and potential to learn and that his
19 qualifications included studying law in Turkey,
20 having excellent computer-science skills, and able
21 to learn; can you think of any other qualifications
22 he had for that position?
23 A. Time, time and dedication.
24 Q. Time and dedication?

Page 59

1  A. Dedication to job, you know. It was a job
2  that you had to invest a lot of your own time.
3  Forget, you know.
4  Q. Was the arrangement that Mr. Orlando D'Oro
5  would stay on at least for some period of time as a
6  consultant in order to train Mr. Oksuz?
7  A. Yes.
8  Q. And did that in fact happen?
9  A. Yes.
10 Q. Yes?
11 A. And Mr. D'Oro signed an agreement of
12 consultancy.
13 Q. Prior to your departure from Alitalia in
14 May of 2006, did Mr. D'Oro give you any opinion as
15 to how Mr. Oksuz was doing in terms of performing
16 the functions of the job?
17 A. Yes. He said that I would have a lot to
18 do in order to train Mr. Oksuz, which I knew.
19 Q. So he said, I, Orlando D'Oro, will have a
20 lot to do in order to train Mr. Oksuz?
21 A. No, no, me.
22 Q. You?
23 A. Right.
24 Q. You were going to train Mr. Oksuz?

Page 60

1  A. Yes.
2  Q. I thought the arrangement was that Mr.
3  D'Oro would stay on and train Mr. Oksuz.
4  A. Together, till we could afford to have Mr.
5  D'Oro as a consultant.
6  Q. Did he give you any other opinion about
7  Mr. Oksuz during the time he was still employed?
8  A. No.
9  Q. Have you ever spoken to Mr. D'Oro about
10 Mr. Oksuz since you left Alitalia?
11 A. Yes.
12 Q. How many times?
13 A. Two, three, two, three times.
14 Q. When was the last time?
15 A. March, April of last year.
16 Q. Of 2007?
17 A. That is correct.
18 Q. What was that conversation about?
19 A. In March, mainly his son that got engaged
20 and his wife being transferred to Monte Carlo with
21 an Italian bank.
22 Q. Did you discuss --
23 A. And he was --
24 Q. Did you discuss Mr. Oksuz in that

Page 61

1  conversation?
2  A. No.
3  Q. Did you discuss Mr. Oksuz in any
4  conversation that you had with Orlando D'Oro since
5  you left Alitalia?
6  A. Yes.
7  Q. All right. When was that conversation?
8  A. It was about a month, two months, after
9  that I was terminated that Orlando, Mr. D'Oro,
10 called me and actually informed me of what I really
11 already knew, that Mr. Oksuz alleged that I took
12 advantage of him sexually, but I knew already
13 because I met with you.
14    And he told me why he should tell me what
15 was going on. I had to learn it because Mr. Libutti
16 left the file. He made sure that people could read
17 Mr. Oksuz's complaint, paper were nearby photocopy
18 machine, something to that effect.
19 Q. And how did you answer Mr. D'Oro who asked
20 you why didn't you tell me before?
21 A. I told him, well, Orlando, it's clear to
22 me that this is part of a scheme, a plot.
23 Q. Is that all you said?
24 A. Something to that effect, yes.

One Penn Plaza, NYC
email@tobyfeldman.com

Toby Feldman, Inc.
NATIONWIDE SERVICES FOR LEGAL PROFESSIONALS

tel (212) 244.3990
tel (800) 246.4950

```
                  Gallo                    70
 1
 2    Q.  Mr. Gallo, the only question I'm going to
 3  ask you about this to begin with is do you recall
 4  seeing this before.
 5    A.  I should remember.
 6       MS. KURZON:  Could you identify it for the
 7  record?
 8       MR. KORAL:  It's a memo, an email, from
 9  Ester LoRusso to Andrea Sciarresi, dated
10  August 24, 2004, "Subject, My position."
11    A.  Yes, I didn't go through, but now I think
12  I saw this.
13    Q.  Sorry?
14    A.  It was part of the complaint, and I think
15  it's part of the investigation I remember.
16    Q.  Mr. Sciarresi either gave you a copy or
17  showed it to you?
18    A.  I believe Mr. Libutti and DiClemente
19  called me about this.  I don't remember.  I don't
20  remember.
21    Q.  If you don't remember, that's fine, but
22  you can just say that.
23       So you don't remember Mr. Libutti sending
24  a copy to you?
25    A.  No.
```

```
                  Gallo                    71
 1
 2    Q.  Okay.  Wasn't Mr. Sciarresi hospitalized
 3  just around this time that this was written,
 4  August 24, 2004?
 5    A.  Maybe.
 6    Q.  He was hospitalized at some point?
 7    A.  Definitely.
 8       MR. KOCIAN:  Definitely what?
 9    A.  He was hospitalized.
10       MR. KOCIAN:  Just always wait for Counsel
11  to finish his question because I didn't even
12  hear the tail end of that question.
13    Q.  Do you recall that he was hospitalized
14  sometime in the late summer of 2004?
15       THE WITNESS:  I answer?
16       MR. KOCIAN:  Of course.  Always answer.
17    A.  I remember that he was hospitalized in
18  summer 2004.
19    Q.  And while Mr. Sciarresi was hospitalized,
20  did you and Ms. DiClemente cover the functions of
21  the HR Department, except what Angela Ross was
22  doing?
23    A.  Yes.
24    Q.  I believe you testified already that you
25  found the position in GA 2000 for Ms. LoRusso; is
```

```
                  Gallo                    72
 1
 2  that correct?
 3    A.  Yes, I proposed it.
 4       MR. KORAL:  Let's mark, as Gallo Exhibit
 5  2, a letter to Ester LoRusso, confidential,
 6  dated September 1, 2004, signed by Andrea
 7  Sciarresi and Giulio Libutti.
 8       (Gallo Exhibit 2, document Bates stamped D
 9  035, marked for identification, as of this
10  date.)
11    Q.  Mr. Gallo, will you take a look at that.
12  And my question will be have you seen that before.
13    A.  Yes.
14    Q.  Did you approve this appointment at the
15  time it was made?
16    A.  Not only approved but suggested.
17    Q.  Not only approved but suggested, okay.
18       I'm going to show you an email, dated
19  Wednesday, September 1, 2004, from Ester LoRusso, to
20  Andrea Sciarresi, with a copy to Giulio Libutti.
21  And I will ask you, once you get to see it, whether
22  you have seen it before.
23       (Gallo Exhibit 3, document Bates stamped D
24  212, marked for identification, as of this
25  date.)
```

```
                  Gallo                    73
 1
 2    Q.  Have you seen it before, Mr. Gallo?
 3    A.  Yes, Mr. Libutti showed me.
 4    Q.  Did you ever speak with an attorney named
 5  Cynthia Gill?
 6    A.  In this reference here?
 7    Q.  Have you ever spoken to a Cynthia Gill?
 8    A.  No, I don't think so.
 9    Q.  So you did not speak with her in
10  connection with Ms. LoRusso's complaints?
11    A.  This, yes, no.
12    Q.  Do you know if anybody from Alitalia spoke
13  to Ms. Gill?
14    A.  I don't know.
15    Q.  Mr. Sciarresi, for example, never told you
16  he spoke to her?
17    A.  No.
18    Q.  In this email, Ms. LoRusso said that the
19  offer of a unilateral transfer is not an offer of
20  promotion, in the second paragraph; do you see that?
21    A.  Yes.
22    Q.  My question is, you testified previously
23  that going from director to managing director is a
24  promotion; do you disagree with Ms. LoRusso here?
25    A.  Do I agree with this?
```

19 (Pages 70 to 73)

One Penn Plaza, NYC          Toby Feldman, Inc.                    tel (212) 244.3990
email@tobyfeldman.com   NATIONWIDE SERVICES FOR LEGAL PROFESSIONALS   tel (800) 246.4950

```
                    Gallo           74
 1
 2    Q.  Do you disagree with Ms. LoRusso?
 3    A.  Yes.
 4        MR. KORAL:  This has already been marked
 5    as Defendants' Exhibit 13 in Ms. LoRusso's
 6    deposition.  I don't see any reason to remark
 7    it, do you?
 8        MS. KURZON:  No, that's fine.
 9        MR. KORAL:  I have copies.
10    Q.  Mr. Gallo?
11    A.  Thank you.
12        MR. KORAL:  I think we will mark this, as
13    well, as Gallo Exhibit 4.
14        (Gallo Exhibit 4, document Bates stamped D
15    0001 through 04, marked for identification, as
16    of this date.)
17    Q.  Mr. Gallo, have you seen this before?
18    A.  Yes.
19        MS. KURZON:  Have you identified it for
20    the record?
21        MR. KORAL:  No, I don't usually do that,
22    actually, but since you like it done that way,
23    I will be chivalrous.
24        MS. KURZON:  Thank you.
25        MR. KORAL:  It is a memo to file from
```

```
                    Gallo           75
 1
 2    Stephanie DiClemente, the Manager of Employee
 3    Relations and Organizational Development, dated
 4    September 2, 2004, re. notes of meeting with
 5    Ester LoRusso and Francesco Gallo.
 6    Q.  Mr. Gallo, my question is, did you regard
 7    this meeting that you had with Ester LoRusso that is
 8    memorialized in Ms. DiClemente's notes to constitute
 9    your investigation of Ms. LoRusso's allegations of
10    discrimination?
11    A.  May I read this?
12        MR. KOCIAN:  Yes, please.
13    Q.  If you want to read it, you can read the
14    whole thing.
15    A.  Yes, thanks.
16    Q.  I will also represent that there are
17    marginal notes made here and that those are notes
18    made by Mr. Libutti.  Ignore the Libutti notes for
19    the time being.
20    A.  Doesn't make any sense to me, well, I
21    remember, I have seen this.
22    Q.  Without agreeing that this is a verbatim
23    transcript of that meeting that you attended with
24    Ms. DiClemente and Ms. LoRusso, does this memo seem
25    to you to be substantially an accurate record of
```

```
                    Gallo           76
 1
 2    what happened at that meeting?
 3    A.  Yes.
 4    Q.  Okay.
 5        MR. KOCIAN:  Do you need to read it more?
 6        THE WITNESS:  No, but this goes back to
 7    the other day, deposition, whereby it seemed
 8    that --
 9        MR. KOCIAN:  Just wait for a question.
10    Q.  Did you consider following this meeting
11    that Ms. LoRusso's discrimination complaints had
12    been addressed by you?
13        MS. KURZON:  Objection.
14        THE WITNESS:  Repeat that question.
15        (Pending question was read.)
16    A.  If it was necessary, I would have
17    continued.  I was under the impression that still,
18    still disappointed.
19    Q.  Did you feel that any further
20    investigation was necessary at this time?
21    A.  No.
22        MR. KORAL:  Let's take a look at a memo
23    from Ester LoRusso, to Giulio Libutti, dated
24    the Thursday, September 16th.  It is also
25    addressed to Francesco Gallo, that's
```

```
                    Gallo           77
 1
 2    September 16, 2004.
 3        (Gallo Exhibit 5, document Bates stamped D
 4    211, marked for identification, as of this
 5    date.)
 6    Q.  And I will ask whether you remember
 7    receiving it.
 8        MR. KORAL:  It will be marked Gallo
 9    Exhibit 5.
10    Q.  Mr. Gallo, are you waiting for me to ask
11    you a question?
12    A.  Yes.
13    Q.  Oh, I'm sorry.  I thought you were
14    studying the document.
15    A.  No, I have memory.
16    Q.  Oh.  My question to you is whether you
17    recall receiving this email.
18    A.  Yes.
19    Q.  Did you investigate this complaint?
20    A.  Yes, I spoke to Mr. Libutti and I believe
21    I spoke to Mr. Galli as well.
22    Q.  Okay.  Did you do any other investigation?
23    A.  No.
24        MR. KORAL:  Let's mark, as Gallo Exhibit
25    6, a memo, dated September 17, 2004, marked
```

20 (Pages 74 to 77)

One Penn Plaza, NYC            Toby Feldman, Inc.                    tel (212) 244.3990
email@tobyfeldman.com    NATIONWIDE SERVICES FOR LEGAL PROFESSIONALS    tel (800) 246.4950

```
                    Gallo          82
 1
 2   the list of people who would be invited; is that
 3   what you said?
 4       A.  The list would have been prepared by the
 5   Marketing Department and Mr. Libutti and Mr. Galli
 6   would approve the participants.
 7       Q.  I don't want to know what would have
 8   happened, I want to know what did happen.
 9           Did you know for a fact that Mr. Libutti
10   and Galli approved a list prepared by Rome's
11   Marketing Department?
12       A.  According to what Mr. Libutti told me, and
13   Mr. Galli, yes.
14       Q.  You remember?
15       A.  Yes, sure, because we had an argument, as
16   I said before.
17       Q.  What was the argument about?
18       A.  That it was unnecessary not to invite
19   Ester LoRusso to a sales meeting.
20       Q.  You had this argument in response to
21   Ester's complaint in her email or memo, sorry, of
22   September?
23           MS. KURZON:  16th, I believe.
24       Q.  In her email of September 16th?
25       A.  It was, you know, a problem,
```

```
                    Gallo          83
 1
 2   September 16th was about the issue, the invitation,
 3   not to extend the invitation or not to have Ester
 4   participate to the sales meeting, which she has been
 5   participating for the last 20 years.
 6       Q.  When did you have that argument with
 7   Mr. Libutti?
 8       A.  I don't remember.
 9       Q.  I mean, was it in response to Ms.
10   LoRusso's September 16th memo, was it in connection
11   with the preparation of this September 17th memo?
12           MR. KOCIAN:  Objection.
13       Q.  Or was it at some other time?
14           MR. KOCIAN:  Objection.  In addition to
15       what he told us already?  I think he was clear
16       that it was not, I believe, in response to this
17       particular --
18       A.  No, it wasn't, right.  I remember the
19   facts, I don't remember chronologically when did
20   this happen.
21       Q.  Did you have any input into who would
22   attend sales meetings?
23       A.  No.
24       Q.  Did you ever see lists of people who would
25   be invited before the invitations went out?
```

```
                    Gallo          84
 1
 2       A.  Yes.
 3       Q.  Did you give your opinions about who
 4   should be invited when you would see those lists?
 5       A.  Yes.
 6       Q.  Do you recall seeing a list of people to
 7   be invited to this meeting that Ms. LoRusso was
 8   complaining about and noticing that her name wasn't
 9   there?
10       A.  No, I don't think so.
11       Q.  Okay.
12           MR. KORAL:  Let's look at a document, it's
13       a memo, confidential, to Ester LoRusso, dated
14       October 13th of 2004, signed for Andrea
15       Sciarresi by Stephanie DiClemente and by Giulio
16       Libutti.  We will mark that Gallo 7.
17           (Gallo Exhibit 7, document Bates stamped D
18       0037, marked for identification, as of this
19       date.)
20       Q.  My question is, do you recall seeing this
21   before?
22       A.  I wrote it.
23       Q.  You wrote it, okay.
24       A.  Yes.
25       Q.  And you directed Stephanie DiClemente to
```

```
                    Gallo          85
 1
 2   sign for Mr. Sciarresi?
 3       A.  Probably I was out or Mr. Sciarresi was
 4   out.
 5       Q.  So you said, Stephanie, sign for
 6   Mr. Sciarresi?
 7       A.  Automatically.
 8       Q.  It was automatic?
 9       A.  Yeah.
10       Q.  And you agree that the promotion was in
11   fact effective November 1, 2004?
12       A.  Yes.
13       Q.  And you did not regard the promotion to
14   general manager of GA 2000 as discriminatory, did
15   you?
16           MR. KOCIAN:  Objection.
17           MS. KURZON:  Objection.  Objection.
18           (Pending question was read.)
19       A.  No.
20       Q.  Let us look at what I think will be the
21   final document I need to show you.  We will mark it
22   Gallo Exhibit 8.  It's a memo dated October 25,
23   2004, from Stephanie DiClemente to file, re.
24   Libutti's rebuttal reference LoRusso's claim.
25           (Gallo Exhibit 8, document Bates stamped D
```

22 (Pages 82 to 85)