# EXHIBIT M

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------

ESTER LORUSSO,

               Plaintiff,

           -against-

ALITALIA–LINEE AEREE ITALIANE SpA,

               Defendant.

--------------------------------------------------------

Case No. 07 CV 3583 (LBS)(RLE)

### STATEMENT OF UNCONTESTED MATERIAL FACTS IN SUPPORT OF DEFENDANT ALITALIA–LINEE AEREE ITALIANE SPA'S MOTION FOR SUMMARY JUDGMENT

      Defendant Alitalia–Linee Aeree Italiane SpA, by its attorneys, Vedder Price P.C., submits this Statement of Uncontested Material Facts, pursuant to Rule 56.1 of the Local Civil Rules of the United States District Court for the Southern District of New York, in support of its motion for summary judgment dismissing the Complaint by Ester Lorusso in the above captioned action.

      This Statement of Uncontested Material Facts contains citations to the record in which support for such facts is found. Copies of those portions of the record which are referenced herein are annexed to the accompanying Declaration of Alan M. Koral, Esq. ("Koral Declaration").

### Parties

      1.     Defendant Alitalia–Linee Aeree Italiane SpA ("Defendant" or "Alitalia") is the national airline of Italy and is headquartered in Rome, Italy. Alitalia's principal New York office is at 350 Fifth Avenue, New York, New York (Complaint, attached to the Notice of the instant Motion, ¶2).

2.     Plaintiff Ester Lorusso ("Plaintiff" or "Lorusso") was an employee of Alitalia from October 1978 until January 2007 (Complaint, ¶1).

### Elimination of Lorusso's Position as
### Director of Marketing for Alitalia's Passenger Division

3.     By the year 2000, Lorusso had been promoted to the position of Director of Marketing for Alitalia's Passenger Division (Complaint, ¶10; Deposition of Ester Lorusso, hereafter "Lorusso Dep.," p. 31 (all referenced pages are collected in minuscript form at Ex. A to Koral Declaration)).

4.     In 2003, Giulio Libutti ("Libutti") was transferred from Buenos Aires Argentina to Alitalia's New York office, where he became Senior Vice President, North America, and where Lorusso reported to him (Complaint, ¶¶16-17; January 21, 2008 Deposition of Giulio Libutti, hereafter "1/21 Libutti Dep.," p. 10 (all referenced pages are collected in minuscript form at Ex. B to Koral Declaration)).

5.     In 2004, in response to widely-reported financial difficulties characterized variously as a "big financial crisis," a "very strong [financial] crisis," and the "bad condition of the company," Alitalia took a number of cost-saving initiatives including, *inter alia*, the introduction of an early retirement plan and worldwide reductions in force (Deposition of Andrea Porru, hereafter "Porru Dep.," p. 7 (all referenced pages are collected at Ex. C to Koral Declaration); January 22, 2008 Deposition of Giulio Libutti, pp. 43-44 (all referenced pages are collected in minuscript form at Ex. D to Koral Declaration); Deposition of Pierandrea Galli, hereafter "Galli Dep.," p. 38 (all referenced pages are collected At Ex. E to Koral Declaration)).

6.      Over the course of the three years from December 31, 2003 to December 31, 2006, Alitalia reduced its presence in New York from 130 employees to 58, and it reduced its presence by a further 10 employees over the course of the next year (Defendant's Verified Response to Plaintiff's Second Set of Interrogatories, and Schedule A thereto, annexed as Exhibit AA to the Koral Declaration; *see also* 1/21 Libutti Dep. p. 28, at Ex. B to Koral Declaration; Deposition of Angela Ross, hereafter "Ross Dep.," pp. 23-24 (all referenced pages are collected at Ex. F to Koral Declaration)).

7.      In or around August of 2004, a decision was made by the Senior Vice President of Marketing and Business Strategies at Alitalia's headquarters to centralize all of the company's Passenger Division advertising functions there and to close the rest of the company's Passenger Division advertising and marketing offices (Galli Dep. pp. 24-25, at Ex. E to Koral Declaration). Lorusso's work responsibilities principally addressed advertising, and consequently her job was eliminated, although not until she had accepted a new position.    Neither Libutti nor or his supervisor, Pierandrea Galli, was the decisionmaker (Lorusso Dep. pp. 190-94, at Ex. A to Koral Declaration; 1/21 Libutti Dep. pp. 48-51, 76-77, at Ex. B to Koral Declaration; Galli Dep. pp. 17-18, 24-25, 27, 43-44, at Ex. E to Koral Declaration; e-mail from Libutti to Andrea Porru dated November 9 2006 and annexed as Ex. G to Koral Declaration).

8.      Certain of the surviving functions of Lorusso's department were redistributed to Lisa Del Percio and Francesca Forte, both women.    Responsibilities for planning an annual symposium were transferred from Elizabeth Santella, a female subordinate of Lorusso's, to Grace DeFranco, a female subordinate of Timothy O'Neill, a man who was "a little older" than Lorusso (Lorusso Dep. pp. 47-48, 192-93, 196-97, 202-04, 272-73, at Ex. A to Koral Declaration).

9.      Lorusso herself was promoted to the position of Managing Director of GA 2000, a subsidiary of Alitalia (1/21 Libutti Dep. pp. 50-52, at Ex. B to Koral Declaration; Galli Dep. p. 27, at Ex. E to Koral Declaration; January 7, 2008 Deposition of Francesco Gallo, hereafter "1/7 Gallo Dep.," pp. 96-97 (all referenced pages are collected at Ex. H to Koral Declaration)). GA 2000's objective was to "safeguard and regain" Italian-American "ethnic" air passenger traffic (1/7 Gallo Dep. pp. 26-27, at Ex. H to Koral Declaration).

### Lorusso's First Complaint

10.      On or around August 24, 2004, Lorusso met with Andrea Sciarresi ("Sciarresi"), then Alitalia's Human Resources Director, and complained about the alleged fact that she was the lowest paid of the three directors at her level and two events that had previously occurred: the transfer of certain of her department's duties to Timothy O'Neill's department, and the plan to promote her to Managing Director of GA 2000. She memorialized these concerns via an e-mail to Sciarresi, claiming that "these instances are resulting in an issue of gender bias" (Lorusso Dep. pp. 250-51, at Ex. A to Koral Declaration; e-mail annexed as Ex. I to Koral Declaration).

11.      Lorusso maintains that she was being "transferred" to GA 2000, rather than promoted, and complained on or around September 1, 2004, via e-mail to Sciarresi, that this constituted "continuing discrimination" (Lorusso Dep. p. 257, at Ex. A to Koral Declaration; e-mail annexed as Ex. J to Koral Declaration). Nonetheless, she acknowledges that her title was changed from "Director" to "Managing Director" and that her salary was increased from "$80,000.00" (actually $78,520.80) per year to $105,000 per year (Complaint, ¶21; Lorusso Dep. pp. 127-28, at Ex. A to Koral Declaration; October 13, 2004 letter from Andrea Sciarresi and Giulio Libutti to Ester Lorusso annexed as Ex. K to Koral Declaration). Francesco Gallo, then Alitalia's Senior Vice President for Corporate Affairs, who orchestrated the transfer, confirmed

that it was a promotion (1/7 Gallo Dep. pp. 128-29, at Ex. H to Koral Declaration; January 11, 2008 Deposition of Francesco Gallo, hereafter "1/11 Gallo Dep.," pp. 73-74, 85 (all referenced pages are collected in minuscript form at Ex. L to Koral Declaration)).

12.     Gallo did not consider Lorusso's promotion to GA 2000 to be discriminatory and disagreed with her characterization of it at the time as a "unilateral transfer" (1/11 Gallo Dep. pp. 73-74, 85, at Ex. L to Koral Declaration; 1/7 Gallo Dep. pp. 128-29, at Ex. H to Koral Declaration).  Libutti felt that the promotion to GA 2000 was "a very good opportunity" because "she [could] work as a managing director [and] have a lot of autonomy in her profit and loss," in addition to gaining the sales experience that she lacked and receiving a significant salary increase (1/21 Libutti Dep. pp. 49-50, at Ex. B to Koral Declaration).  However, while Lorusso was at GA 2000, her subordinate, John Ferro ("Ferro"), actually held primary responsibility for sales (Lorusso Dep. p. 156-57, at Ex. A to Koral Declaration).

13.     On or around September 16, 2004, Lorusso complained again via e-mail, this time to Libutti and Gallo, that she had not been invited to a recent sales meeting in Rome and that it was her belief that she was "systematically being cut out of… [her] responsibilities".  She acknowledged in that e-mail that an investigation into her complaints was already under way. (Lorusso Dep. pp. 262-63, at Ex. A to Koral Declaration; e-mail annexed as Ex. M to Koral Declaration).

14.     Lorusso was informed via a letter dated September 17, 2004, signed by Libutti and Gallo, that the list of invitees to the sales meeting had been composed in Rome and that "the home office decided to limit it to certain functions only".  She was also assured that her office would be involved in the planning of an upcoming concert sponsored by Alitalia—which had

prompted her complaint that she believed that her responsibilities were being "systematically" taken from her—"in due time" (Lorusso Dep. pp. 264-65, at Ex. A to Koral Declaration; letter annexed as Ex. N to Koral Declaration). Lorusso then responded, on or around September 20, 2004, via an e-mail to Libutti and Gallo, characterizing the representation that the sales meeting had been limited to "certain functions only" as "false" (Lorusso Dep. p. 267, at Ex. A to Koral Declaration; letter annexed as Ex. O to Koral Declaration).

15.     On or around September 2, 2004, as part of the investigation, Gallo and Stephanie DiClemente ("DiClemente"), then Manager of Employee Relations and Organizational Development for Alitalia, met with Lorusso, as documented in a memorandum prepared by DiClemente (Lorusso Dep. pp. 260-62, at Ex. A to Koral Declaration; memorandum annexed as Ex. P to Koral Declaration). Gallo and DiClemente also met subsequently with Libutti, who rebutted all of Lorusso's accusations, including her claim that she was paid less than all of the company's other directors, as documented in a second memorandum prepared by DiClemente (memorandum annexed as Ex. Q to Koral Declaration).

16.     Lorusso testified that she resisted the transfer in part because she "suspected" that GA 2000 might soon close (Lorusso Dep. p. 205, at Ex. A to Koral Declaration). However, Gallo, who also functioned as GA 2000's president at the time, testified that at the point that Lorusso arrived and in the subsequent year he had no reason to believe that Alitalia's management was considering closing GA 2000 and, in fact, that he "expected GA [2000] to grow, because that was the project" (1/7 Gallo Dep. pp. 27, 101, 128-29, at Ex. H to Koral Declaration). Libutti, Lorusso's supervisor prior to her promotion, also lacked awareness of any such plan to close GA 2000 (1/21 Libutti Dep. p. 52, at Ex. B to Koral Declaration). Indeed, a memorandum signed by Libutti and Gallo, dated July 6, 2004, contrasted GA 2000 favorably

with another Alitalia subsidiary, noting that GA 2000, "despite the negative trends in the sector in the years 2002/2003, has developed to the point that it recorded (2002) sales for more than USD 25 million…". The memorandum did not reflect any plan to close GA 2000, although it did recommend the closing of the other subsidiary (memorandum and certified translation of same annexed as Ex. R to Koral Declaration).

### Elimination of Lorusso's Position as Managing Director of GA 2000

17.    In late 2005, Libutti, Gallo and Marco Marchese—Alitalia's Chief Financial Officer for the Americas—determined to close GA 2000, with the approval Alitalia's Rome offices, because the subsidiary was losing money and "there was no more commercial need [for it]" (Galli Dep. pp. 12-13, at Ex. E to Koral Declaration; 1/21 Libutti Dep. pp. 52-53, at Ex. B to Koral Declaration; September 19, 2005 memorandum titled "proposal for winding up… Service LTD (GA 2000)" and certified translation of same annexed as Ex. S to Koral Declaration).

18.    All of GA 2000's employees (16 to 18 individuals), except for Lorusso and Ferro, were terminated and received two weeks severance. Ferro qualified for an early retirement plan that was being offered to employees who were aged 50 or older and who had worked at Alitalia for 15 years or more as of December 31, 2005, but Lorusso was too young to do so (Lorusso Dep. pp. 130, 156, 208, at Ex. A to Koral Declaration; Plan Document and Summary Plan Description annexed as Ex. T to Koral Declaration).

19.    Lorusso alleges that in October 2005, after she learned that GA 2000 was closing, she complained of "age and gender discrimination". She does not recall to whom this complaint was made or whether or not it was in writing (Complaint, ¶30; Lorusso Dep. pp. 206-207, at Ex.

A to Koral Declaration).   No evidence of this purported complaint other than Lorusso's testimony has been adduced during the discovery process.

20.      Lorusso retained her Managing Director's salary of $105,000.00 from November, 2005 until she was given the position of Director of Marketing Communications for Alitalia's Cargo Division in April of 2006 (Lorusso Dep. pp. 131-32, at Ex. A to Koral Declaration).

21.      While in the Cargo Division, Lorusso's job consisted of, among other functions, assembling a client database, putting together newsletters, and developing promotional materials (Lorusso Dep. pp. 237-38, at Ex. A to Koral Declaration).  Lorusso also assumed responsibility for a "very, very important" project with Delta/Air France, and Gallo testified that the Director of Marketing Communications position was "a real job" (1/7 Gallo Dep. pp. 109-10, at Ex. A to Koral Declaration).

22.      During both the period that Lorusso was Managing Director of GA 2000 and most of the subsequent period when she worked in the Cargo Division, she shared the 36th floor with the IT department and the ticketing office (the latter consisting of about eight people) as well as with her subordinates at GA 2000, until that subsidiary closed (Lorusso Dep. pp. 212-14, 242-43, at Ex. A to Koral Declaration).

**The Regulatory Affairs Positions**

23.      After being informed of the elimination of her position as Managing Director of GA 2000, Lorusso expressed an interest in applying for the position of Vice President of Regulatory Affairs (1/11 Gallo Dep. pp. 44-45, at Ex. L to Koral Declaration).  She claims that she was denied the opportunity to do so and that the position went to "a younger male with no experience," Dursun Oksuz (Complaint ¶¶ 34-35).

24.    Lorusso's purported qualification for the position as Vice President for Regulatory Affairs, in which she would be required to deal with government agencies and ensure compliance with their regulations, was the fact that she had "been in charge of customer relations," and she acknowledged that she had never actually dealt with any government agencies in connection with her previous job duties (Lorusso Dep. pp. 159-161, 164-67, at Ex. A to Koral Declaration).

25.    When Lorusso inquired as to "why would someone who barely speaks English, is totally incompetent, be placed in that position when I wasn't even considered," she was told that Oksuz was engaged in a homosexual liaison with Gallo, who hired him for the Regulatory Affairs position.    Allegations regarding this relationship and promotion were "in the air" in Alitalia's offices (Lorusso Dep. pp. 88-90, at Ex. A to Koral Declaration).

26.    Gallo, for his part, testified that he did not consider Lorusso for the position because she was already employed with GA 2000 (1/11 Gallo Dep. pp. 43-44, at Ex. L to Koral Declaration).    He also testified that he viewed Lorusso and Oksuz as equally unqualified, but that Oksuz had more potential to "learn and grow" because of his background in law and computer technology, as well as his dedication and willingness to devote a significant amount of time to learning the job (1/11 Gallo Dep. pp. 42-43, 46, 58-59, at Ex. L to Koral Declaration).

27.    Subsequently, in or around November 2006, the Regulatory Affairs position became available a second time (though it had now been downgraded to Director) and Lorusso actually interviewed it on November 8, 2006 (Lorusso Dep. pp. 214-16, at Ex. A to Koral Declaration; e-mail from Andrea Porru to Lorusso dated November 7 2006 and annexed as Ex. W to Koral Declaration).    However, she did not then and has at no time since alleged or offered

any evidence that her qualifications had improved since the first time that she had expressed interest in the position and, in any case, the benefits and compensation for the position would have been the same as those of the director-level position that she already held.  Lorusso also does not allege that the position was filled at any time prior to her departure from Alitalia, but admits instead that Orlando D'Oro—the previous Vice President of Regulatory Affairs, who had accepted an early retirement package—still remained on as a consultant for regulatory affairs matters (Lorusso Dep. pp. 168, 286-87, at Ex. A to Koral Declaration).

### The Sales and Marketing Positions

28.    Lorusso alleges that two positions "in her area of expertise, marketing and sales, opened up" in the fall of 2006, while she was in the Cargo Division (Complaint, ¶44).  She did not ask to interview for either position because she "didn't even know they were available" (Lorusso Dep. pp. 219-220, at Ex. A to Koral Declaration).

29.    The marketing position was given to Lucia Alla, a female of "[a]bout 50" (Lorusso Dep. pp. 148-50, at Ex. A to Koral Declaration).  Lorusso did not express an interest in that position to anyone in either the Passenger Division or in Human Resources; in fact, the only supervisor with whom she discussed it was Walter Longo ("Longo"), her own boss in the Cargo Division (Lorusso Dep. p. 151, at Ex. A to Koral Declaration).

### The Bonus Program

30.    During 2006, Alitalia offered an incentive program to certain Cargo Division employees whose job responsibilities primarily concerned generating revenue, and to certain executives in Italy whose job responsibilities primarily concerned airline operations.  It was not offered to employees whose job responsibilities primarily concerned communications.  Because

Lorusso, as Director of Marketing Communications, was one such employee, she was not eligible to participate in the program (accompanying Affidavit of Marco D'Ilario, hereafter "D'Ilario Affidavit," ¶2).

31.     Lorusso never inquired of anyone at Alitalia—either in management or human resources—why she was not a participant in the bonus program (Lorusso Dep. pp. 248-49, at Ex. A to Koral Declaration).

### Lorusso's Complaints While in Cargo Division

32.     On or around September 27, 2006, Lorusso complained via e-mail to Longo, her supervisor, copying Alitalia's new Director of Human Resources for the Americas, Andrea Porru ("Porru"), that her job responsibilities as Director of Marketing Communications for the Cargo Division "remain[ed] unclear". She further complained that her salary had been reduced from the amount she had earned as Managing Director of GA 2000, that she had been placed on probation for six months, that she had not been invited to attend certain meetings and that she was "isolated" on the 36th floor. She did not suggest that she believed that she was being discriminated against on the basis of her age or sex, although she did refer to her earlier complaint regarding "sexual discrimination" of summer 2004 (Lorusso Dep. pp. 283-84, at Ex. A to Koral Declaration; e-mail annexed as Ex. U to Koral Declaration).

33.     On or around October 11, 2006, Porru responded to Lorusso, promising to investigate her claims regarding the alleged failure to include her in meetings and her purported isolation, and informing her that Longo had confirmed that she had successfully completed probation. (Lorusso Dep. pp. 283-84, at Ex. A to Koral Declaration; e-mail annexed as Ex. U to

Koral Declaration). Lorusso herself acknowledges that she did not suffer any ill effects as a result of being on probation (Lorusso Dep. p. 291, at Ex. A to Koral Declaration).

34. On or around October 30, 2006, Porru e-mailed a list of nine questions—some with multiple individually lettered parts—to Longo as part of his investigation into Lorusso's concerns; Longo responded on or around November 9, stating, *inter alia*, that the decision not to invite Lorusso to certain meetings had been made in Rome because the meetings in question did not require a contribution from her and that he (Longo) had, in fact, requested previously that Lorusso be moved to a less "isolated" area (e-mails annexed as Ex. V to Koral Declaration).

35. Lorusso meanwhile complained to Porru directly via e-mail on or around November 6, 2006, detailing the ways in which she believed that her current position was below her capabilities. She noted that Lucia Alla—a woman who is Lorusso's age—had recently been promoted to a director-level position in the Passenger Division, for which Lorusso believed herself to be qualified, and questioned Alitalia's business judgment, asking "Is there a need to… tax the company further?" Again, she did not refer to discrimination on the basis of either her age or sex (Lorusso Dep. pp. 286-87, at Ex. A to Koral Declaration; e-mail annexed as Ex. W to Koral Declaration).

36. On or around November 7, 2006, Porru again e-mailed Longo asking that Longo respond to a further series of questions addressing the allegations raised by Lorusso in her November 6 e-mail; Longo then responded on or around November 10, confirming that Lorusso's position was "real," that Lorusso had performed significant work in the position and that she would continue to do so (Porru Dep. pp. 20-21, at Ex. C to Koral Declaration; e-mails annexed as Ex. X to Koral Declaration).

37.     Simultaneously, on or around November 8, 2006, Porru e-mailed a list of twenty-five questions—many of which, again, contained multiple parts—to Libutti as part of his investigation into Lorusso's allegations about him, and Libutti responded on or around November 9, 2006, interpolating his responses into the body of Porru's e-mail (Porru Dep. pp. 22-23, at Ex. C to Koral Declaration; e-mail annexed as Ex. G to Koral Declaration).

38.     Porru's investigation of Lorusso's complaints concluded upon her departure from Alitalia in January 2007 because Lorusso refused to speak with him beyond that point (Porru Dep. pp. 26, 34, 37-39, 44, at Ex. C to Koral Declaration; Lorusso Dep. pp. 284-86, at Ex. A to Koral Declaration).

### Worldwide Reduction in Force

39.     In December of 2006 and January of 2007, Alitalia's management determined to engage in a worldwide restructuring of the Cargo Division in an effort to achieve the company's profitability targets.  As part of that process, management determined to eliminate more than fifty positions (more than 14% of the Cargo Division's total workforce) and to centralize the Cargo Division's director level marketing and communications positions in Alitalia's Rome office (Galli Dep. pp. 8-10, at Ex. E to Koral Declaration; Porru Dep. pp. 39-40, at Ex. C to Koral Declaration; D'Ilario Affidavit ¶ 3; e-mail and certified translation of same annexed as Ex. Y to Koral Declaration).

40.     Marco D'Ilario ("D'Ilario"), then Head of International Cargo Sales, consequently determined to eliminate Lorusso's position as part of this restructuring (D'Ilario Affidavit ¶¶ 1, 3; Galli Dep. pp. 8-10, at Ex. E to Koral Declaration).  On or around December 13, 2006, D'Ilario sent an e-mail to various members of Alitalia's management reflecting a determination

made by him at an earlier meeting amongst some of those managers to reconfigure the Cargo Division by eliminating 8 positions in North America and 50 positions worldwide, including that of "Director of Communications and Marketing" (e-mail and certified translation of same annexed as Ex. Y to Koral Declaration).

41.     On or around January 4, 2007, D'Ilario sent a further e-mail elaborating on his intention to eliminate the 8 positions identified in his previous e-mail.  The position of Director of Communications and Marketing was to be eliminated by January 31 (Galli Dep. p. 10, at Ex. E to Koral Declaration; e-mail and certified translation of same annexed as Ex. Y to Koral Declaration).

42.     Lorusso was informed of her impending termination on or around January 18 (Complaint, ¶46).  At the time of her job elimination, she was offered an enhanced severance package based upon her status as a director, which she refused (Porru Dep. pp. 31-32, at Ex. C to Koral Declaration; January 18, 2007 letter from Porru to Lorusso annexed as Ex. Z to Koral Declaration).

### Alleged Discriminatory Acts by Libutti and Galli

43.     Lorusso does not recall ever having heard Libutti or his supervisor, Pierandrea Galli ("Galli"), publicly or privately express contempt for older employees (Lorusso Dep. pp. 42-43, 84, at Ex. A to Koral Declaration).

44.     She recalls only one instance which she characterizes as an expression of contempt by Libutti for female employees, in which Libutti "referred to a female marketing executive in Rome and he alluded to the fact that she could get a higher position if she would sleep with someone" (Lorusso Dep. pp. 43-44, at Ex. A to Koral Declaration).

45.     She also recalls one instance in which Galli allegedly stated publicly that "[S]peeches are like women's skirts.  The shorter the better." (Lorusso Dep. pp. 83-84, at Ex. A to Koral Declaration).

46.     Lorusso also claims that on one occasion, at an event commemorating the launch of Alitalia's Washington D.C. office, Libutti allegedly "screamed at" her because she had employed Alitalia staff, rather than professional models, to serve as greeters and because he believed that she was purposely failing to return his telephone calls (Lorusso Dep. pp. 110-12, at Ex. A to Koral Declaration).

47.     Lorusso has suggested that Libutti "started the chain of events that led to… [her] termination" (Lorusso Dep. p. 125, at Ex. A to Koral Declaration), but Libutti had already departed the employ of Alitalia at the point that the decision was made to eliminate her position and, in any case, he had had no involvement with the Cargo Division when he was at Alitalia (1/21 Libutti Dep. pp. 9-10, 51, 55-58, at Ex. B to Koral Declaration; Lorusso Dep. pp. 125-26, at Ex. A to Koral Declaration).

Dated: New York, New York
      April 28, 2008

VEDDER PRICE P.C.


By:   s/ Alan M. Koral
     Alan M. Koral (AK-1503)
     Daniel C. Green (DG-0059)
     1633 Broadway, 47th Floor
     New York, New York  10019
     (212) 407-7700

     *Attorneys for Defendant*
     *Alitalia–Linee Aeree Italiane SpA*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------

ESTER LORUSSO,

               Plaintiff,

          -against-

ALITALIA–LINEE AEREE ITALIANE SpA,

              Defendant.

-------------------------------------------------

Case No. 07 CV 3583 (LBS)(RLE)

**CERTIFICATE OF SERVICE**

     I, Daniel Green, hereby declare, pursuant to 28 U.S.C. 1746, under penalty of perjury, that on April 28, 2008, I caused a copy of the **STATEMENT OF UNCONTESTED MATERIAL FACTS IN SUPPORT OF DEFENDANT ALITALIA–LINEE AEREE ITALIANE SPA'S MOTION FOR SUMMARY JUDGMENT** to be served upon Plaintiff by electronically filing same, thereby ensuring that Plaintiff's attorney, Robert Ottinger, Esq. of The Ottinger Firm, P.C., received same because he is a registered e-filer and registered to receive e-notices in this case.

DATED:  April 28, 2008

                                  s/  Daniel C. Green
                                  Daniel C. Green