Robert Ottinger (RO-8879)
The Ottinger Firm, P.C.
South Street Seaport
19 Fulton Street, Suite 408
New York, New York 10038
(212) 571-2000

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ESTER LORUSSO, | 07 CV 3583 |
| Plaintiffs, | |
| vs. | |
| ALITALIA-LINEE AEREE ITALIANE SpA. | |
| Defendant. | |

**PLAINTIFF ESTER LORUSSO'S  MEMORANDUM OF LAW**
**IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Table of Contents

Page

I. Preliminary Statement.................................................................................1

II. Facts.......................................................................................................4
   A. Plaintiff's Employment At Alitalia .................................................4
   B. Plaintiff's Duties Are Undermined By Her Supervisor And Her Position Eliminated..4
   C. Libutti And Galli Express Their Plan To Eliminate Older Workers,  And Libutti
      States His Discomfort With Women In Positions of Power.............................5
   D. Plaintiff's Transfer To GA2000.................................................7
   E. After The Closure Of GA2000, Plaintiff Is Ultimately Given A New Position And
      Terminated Thereafter.....................................................................8
   F. Plaintiff Repeatedly Voices Her Concerns Of Discrimination To Alitalia..............8

III. Legal Argument...............................................................................10

   A. The Statements of Galli and Libutti To Gallo And Libutti To Sciarresi Concerning
      A Plan To Fire Older People And Of Libutti To Sciarresi  Regarding His Attitude
      Towards Women In High Positions Alone Create Material Issues of Fact Precluding
      Summary Judgment And Give Rise To An Inference Of Discrimination..............11

       1. The Statements of Galli And Libutti Are Far More Than "Stray Remarks"
          And Are Sufficient To Avoid Summary Judgment.............................14

          a. The Statements Of Galli and Libutti Are Probative Of An Intent To
             Discriminate...............................................................14
          b. Remarks Akin To Those Of Galli And Libutti Preclude Summary
             Judgment...................................................................16
       2. The Testimony Of Gallo And Sciarresi Is Admissible Evidence..............17
       3. Issues Of Witness Credibility Cannot Be Resolved At Summary Judgment
          And Are Reserved For Trial................................................20

   B. There Is A Material Issue Of Fact Concerning Whether Libutti And Galli
      Transferred Plaintiff To GA2000 Knowing This Company Would Be Eliminated...21

   C. Plaintiff States A Prima Facie Case Of Employment Discrimination Based On Age
      And Gender And Of Retaliation..........................................................23

1.   Employment Discrimination Based On Age And Gender ...........................23
2.   Plaintiff States A Prima Facie Case Of Retaliation..................................24

IV.     Conclusion..........................................................................................27

Table of Authorities

Page

Federal Cases

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct, 2505 (1986)........................10, 20
Babcock v. CAE-Link Corp., 878 F. Supp. 377 (N.D.N.Y 1995)....................................22
Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107 (2d Cir. 2004)...........14, 16, 19
Blake v. Race, 487 F. Supp. 2d 187 (E.D.N.Y. 2007)............................................21
Blitzer v. Potter, 03 Civ. 6124 (DLC), 2005 WL 1107064 (S.D.N.Y. May 6, 2005)..............25
Browne v. CNN America, Inc., No. 98 CIV. 1768(JSM), 1999 WL 1084236 (S.D.N.Y. Dec. 1, 1999).......................................................................................18
Burlington Northern & Santa Fe Ry Co. v. White, 548 U.S. 53, 126 S.Ct. 2405 (2006)..........24
Cronin v. Aetna Life Ins. Co., 46 F.3d 196 (2d Cir. 1995).......................................10
Dais v. Lane Bryant, Inc., No. 97CIV2011 (PKL)(RLE), 2001 WL 1285329 (E.D.N.Y. Oct. 22, 2001)....................................................................................18, 19
De la Cruz v. New York City Human Resources Administration Department of Social Services, 82 F.3d 16 (2d Cir. 1996)....................................................................22
Eastman Machine Co. v. United States, 841 F.2d 469 (2d Cir. 1988)..............................10
E.E.O.C. v. Town of Huntington, No. 05 CV 4559(DRH)(WDW), 2008 WL 361136 (E.D.N.Y. Feb. 8, 2008).............................................................................15, 16, 19
Holtz v. Rockefeller & Co., 258 F.3d 62 (2d Cir. 2001)..........................................14
Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons, 842 F.2d 590 (2d Cir. 1988)...25
Meschino v. Int'l Tel. and Tel. Corp., 563 F. Supp. 1066 (S.D.N.Y. 1983)...................17, 20
Quinby v. WestLB AG, No. 04 Civ.7406 (WHP), 2007 WL 1153994 (S.D.N.Y. Apr. 19, 2007)......................................................................14, 15, 17, 26
Rivera v. Ndola Pharmacy Corp., 497 F. Supp. 2d 381(E.D.N.Y. 2007)...........................21
Rodriguez v. Board of Educ., 620 F.2d 362 (2d Cir. 1980)........................................22
Rose v. New York City Board of Educ., 257 F.3d 156 (2d Cir. 2001)...............................19
Rule v. Brine, Inc., 85 F.3d 1002 (2d Cir. 1996)............................................10, 20
Savarese v. William Penn Life Ins. Co. of New York, 418 F. Supp.2d 158 (E.D.N.Y. 2006).....23
Schreiber v. Worldco, LLC, 324 F. Supp. 2d 512 (S.D.N.Y. 2004).................................15
Sumner v. United States Postal Service, 899 F.2d 203 (2d Cir. 1990)............................25
Terry v. Ashcroft, 336 F.3d 128 (2d Cir. 2003).................................................23
Tomassi v. Insignia Fin. Group, Inc., 478 F.3d 111 (2d Cir. 2007).........................14, 15, 16
Weinstock v. Columbia Univ., 224 F.3d 33 (2d Cir. 2000)........................................23
United States v. Rem, 38 F.3d 634 (2d Cir. 1994)...............................................20
Weinstock v. Columbia Univ., 224 F.3d 33 (2d Cir. 2000)........................................23

Statues
42 U.S.C.A. § 2000)............................................................................24

Treatises

6 Moore's Federal Practice ¶ 56.02[10], at 56-45 (2d ed. 1986)....................................20

Robert Ottinger (RO-8879)
The Ottinger Firm, P.C.
South Street Seaport
19 Fulton Street, Suite 408
New York, New York 10038
(212) 571-2000

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ESTER LORUSSO,<br><br>                Plaintiffs,<br><br>vs.<br><br>ALITALIA-LINEE AEREE ITALIANE SpA.<br><br>                Defendant. | 07 CV 3583 |

**PLAINTIFF ESTER LORUSSO'S  MEMORANDUM OF LAW**
**IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

I.      **Preliminary Statement**

Through this action, Plaintiff Ester Lorusso ("Plaintiff" or "Lorusso") seeks recovery against Defendant Alitalia Linee Aeree Italiane SpA ("Defendant" or "Alitalia") under the New York City Human Rights Law for employment discrimination based upon age and gender and for retaliation.

There are no less than two key categories of facts precluding summary judgment in this case:

There are questions of fact surrounding repeated statements by the highest ranking employees in Alitalia's New York office, Galli and Libutti,[1] that "there was a program to substitute as much as possible old people at Alitalia, not just Ester Lorusso." Ex. D at 16:17-17:21 (Gallo Depo., Jan. 7, 2008). In addition, one of these employees, Libutti, also declared "he wasn't comfortable with a woman in high position". Ex. G at 11:24-12:10 (Sciarresi Depo.). These statements were made to two Alitalia employees, each of whom was a former or then-current Director, Human Resources for Alitalia. In addition, these statements were made in 2004, including August/September 2004, when Alitalia eliminated Plaintiff's position as Director.

1. Moreover, these statements were made at a time that Libutti was engaged in cost-cutting efforts at Alitalia, including reducing the number of employees. Ex. E at 18-29 (Libutti Depo.). Accordingly, there are issues of fact in connection with whether any reduction in force initiated by Alitalia was executed in a discriminatory manner.

2. There are also questions of fact concerning the viability of GA2000, the entity to which Plaintiff was transferred after the elimination of her Director, Marketing position. In particular, a high-ranking employee of Alitalia, Mariotti, was present in 2003 and 2004 when Galli and Libutti stated that they intended to close GA2000. Ex. H at ¶¶ 3-4 (Mariotti Aff.). Moreover, Libutti and Galli made these statements *before* Plaintiff was transferred to GA2000 in late 2004. Ex. H at ¶ 4 (Mariotti Aff.). Since GA2000 was

---

[1]    All capitalized terms are defined in the subsequent "Facts" section.

slated for closure at the time of Plaintiff's transfer, her move to this position, combined with the elimination of her position as Director, Marketing would be an adverse employment action. In November 2005, Alitalia closed GA2000.

With regard to Plaintiff's claims of employment discrimination based on age and gender, Plaintiff was subjected to no less than two adverse employment actions: the transfer to GA2000 in August/September 2004 when this entity was slated for closure and her ultimate termination from Alitalia in January 2007. Moreover, her January 2007 termination followed her most recent late-September and early-November 2006 grievances to Alitalia concerning perceived employment discrimination and retaliation – an adverse action occurring within 2-3 months of her grievances.

Furthermore, the legitimate business reason proffered by Alitalia for the elimination of Plaintiff's position is tainted by the concurrent statements of Galli and Libutti suggesting a strong discriminatory animus in the manner such a plan was executed.

Accordingly, there are material issues of fact precluding summary judgment.

3

## II.    Facts

### A.    Plaintiff's Employment At Alitalia

In 1978, Plaintiff began working at age 21 for Alitalia as a Telephone Sales Representative.  Ex. A ¶ 8 (Complaint); Ex. B ¶ 8 (Answer). [2]  By 2000, at the age of 42, Plaintiff reached the level of Director, Marketing at Alitalia.  Ex. A ¶ 10 (Complaint); Ex. A ¶ 10 (Answer).

In addition to several promotions over the course of her employment at Alitalia, Plaintiff's accomplishments were recognized in the media.  For example, in 1997, Travel Agent Magazine named Plaintiff to its "Most Powerful Women in Travel" list.  Ex. A ¶ 9 (Complaint); Ex. I.  In addition, in 2001, the New York Times positively reviewed Plaintiff's advertising campaign for Alitalia.  Ex. A ¶ 11 (Complaint); Ex. B ¶ 11 (Answer).

### B.    Plaintiff's Duties Are Undermined By Her Supervisor And Her Position Eliminated

In 2003, Plaintiff began reporting directly to Giulio Libutti who, after being transferred to New York City from Buenos Aires, Argentina, became Senior Vice President for North America of Alitalia.  Ex. A ¶¶ 16-17 (Complaint); Ex. B  ¶¶ 16-17 (Answer).   After the departure of Pierandrea Galli, Managing Director for the Americas, in 2004, Libutti was the highest ranking Alitalia official in the New York office.  Ex. E at 13:25-15:1 (Libutti Depo.); Ex. F at 8 (Galli Depo.).

Libutti marginalized Plaintiff from her role as Director, Marketing.  Libutti cut her off from information by neglecting to inform her of numerous essential meetings

---

[2]     All Exhibit references are to documents annexed to the accompanying Declaration of Robert Ottinger.

regarding marketing and communications despite her position, while male peers were

informed and invited to attend. Exs. J and K. In addition, throughout 2004, Libutti

shifted Plaintiff's duties to a less experienced male employee, Timothy O'Neill, and his

staff, and left Plaintiff with minimal responsibilities. For example, Libutti gave O'Neill

responsibility for a yearly sales meeting, a yearly symposium, certain workshops and

other marketing meetings. Ex. C at 127, 192-193, 196, 199 (Lorusso Depo.); Ex. L.

      Ultimately, in August/September 2004, Plaintiff's job was eliminated.

Nonetheless, some of her responsibilities were redistributed to younger women, Lisa Del

Percio, who is in her early 30s, and Francesca Forte, who is in her mid 30s. Ex. M at ¶¶

7-8 (Defendant's Rule 56.1 Statement, dated April 28, 2008 "Defendant's Rule 56.1

Statement); Ex. C at 202-204 (Lorusso Depo.) Ex. X (Affidavit of Ester Lorusso, dated

May 29, 2008); Ex. D at 20:21-25:8 (Gallo Depo., dated January 7, 2008). For instance,

Plaintiff's advertising responsibilities were given to Forte, and her responsibilities for

promotional barter were given to Del Percio. Ex. C at 202-204 (Lorusso Depo.) In

addition, O'Neill continued to perform some of Plaintiff's job responsibilities. Ex. M at

¶¶ 7-8 (Defendant's Rule 56.1 Statement, dated April 28, 2008 "Defendant's Rule 56.1

Statement); Ex. C at 47-48 (Lorusso Depo.).

### C.    Libutti And Galli Express Their Plan To Eliminate Older Workers, And Libutti States His Discomfort With Women In Positions of Power

      In 2004, Libutti and Galli engaged in an effort to eliminate older workers, and

specifically, Lorusso, as part of a program to substitute older workers with workers under

the age of thirty (30). Ex.D at 16:17-17:21; 26:3-25, 29:6-30:13 (Gallo Depo., Jan. 7,

2008) and at 119:18-120:21 (Gallo Depo., Jan. 11, 2008). Libutti and Galli stated their

intentions to both Francesco Gallo (then Senior Vice President, Regulatory Affairs for

North America and a former Vice President, Human Resources for North America) and

Andrea Sciarresi (a current employee of Alitalia, who was Alitalia's Human Resources

Director for North America and Mexico starting January 2004 and was in that position in

August/September 2004 at the time that Plaintiff position as Director, Marketing was

eliminated).  Ex. G at 6-8 (Sciarresi Depo.).

Specifically, Libutti and Galli conferred with Gallo to determine how to

terminate Lorusso since she was approaching her fiftieth (50th) birthday.  At this same

time, Libutti and Galli explained that, "there was a program to substitute as much as

possible old people at Alitalia, not just Ester Lorusso." Ex. D at 16:17-17:21 (Gallo

Depo., Jan. 7, 2008)].  Similarly, in August 2004, Libutti made several comments to

Sciarresi regarding personnel changes he wanted to make -- changes in clear violation of

American law including employment discrimination based on age or gender.  Ex. G at 7-

12 (Sciarresi Depo.); Ex. E at 13:25-15:1 (Libutti Depo.).  Libutti, Sciarresi's supervisor,

told Sciarresi that "[h]e wanted to make a reorganization plan in order to fire the old

people in the company and replace them with young people, new, appoint or maybe

promoting new manager in the company." Ex. G at 8-9 (Sciarresi Depo.).  As a direct

result of Libutti's plan, "Mr. Libutti wanted to move Ester Lorusso  to GA2000," a

subsidiary of Alitalia.  Ex. G at 10 (Sciarresi Depo.).  Moreover, at this same time, Libutti

told Sciarresi, "he wasn't comfortable with a woman in high position".  Ex. G at 11:24-

12:10 (Sciarresi Depo.).

In addition, the statements made by Galli and/or Libutti were concurrent with

Libutti's responsibility to cut costs at Alitalia, including by reducing the number of

employees in the New York office.  Ex. E at 18-29 (Libutti Depo.).

### D.    Plaintiff's Transfer To GA2000

Concurrent with the elimination of Plaintiff's position as Director, Marketing, and consistent with the conversation of Libutti and/or Galli with Gallo and Sciarresi, Plaintiff was offered and reluctantly accepted a transfer to an Alitalia subsidiary, GA2000 (a subsidiary of Alitalia with the objective of "safeguard[ing] and regaining[ing]" Italian-American "ethnic" air passenger traffic) in the position of Managing Director of GA2000. Ex. A ¶ 27 (Complaint); Ex. B ¶ 27 (Answer); Ex. C at 257 (Lorusso Depo.); Ex. N; Ex. M at ¶ 9 (Defendant's Rule 56.1 Statement). Plaintiff viewed GA2000 as a "sinking ship", and viewed the transfer as a detriment to her career since she believed GA2000 was likely to close. Ex. C at 128, 205 (Lorusso Depo.).

Plaintiff's suspicions about the continued existence of GA2000 were correct, according to Gabriele M. Mariotti, a member of the senior management for Alitalia in the New York office, who from 2003-2005 held the positions of Director of Pricing and, later, Director of Pricing and Direct Sales. Ex. H at ¶ 1 (Mariotti Affidavit, dated May 28, 2008, ("Mariotto Aff."). As a member of senior management, Mariotti frequently participated in management meetings in the New York office with Libutti and Galli, and GA2000 was discussed on occasion. In fact, in Mariotti's presence, Libutti and Galli stated in 2003 and 2004 that they intended to close GA2000. Ex. H at ¶¶ 3-4 (Mariotti Aff.). Moreover, Libutti and Galli made these statements *before* Plaintiff was transferred to GA2000 in late 2004. Ex. H at ¶ 4 (Mariotti Aff.).[3]

---

[3]    See also Ex. P at D0698. In this September 2005 document entitled, "Proposal for Winding Up Travel Selection, Inc. (GE) and Service LTD (GA2000)," Galli (then Senior Sales Director for Alitalia) noted that though GA2000's goal was not to make a profit, it nonetheless had "major difficulties even with regard to breaking even . . . making major losses in 2002 and 2003." Though certain steps were taken to return GA2000 to profitability in 2004, the fact remains that Galli was aware of major problems at GA2000 – problems that led to its closure in late 2005.

Accordingly, in October 2005, Plaintiff's concerns about GA2000's closure were confirmed when Libutti informed Plaintiff that GA2000 would close in November 2005, and her position would be eliminated.  Ex. A ¶ 29 (Complaint); Ex. B ¶ 29 (Answer).

**E.    After The Closure Of GA2000, Plaintiff Is Ultimately Given A New Position And Terminated Thereafter**

After the closure of GA2000, in early 2006, Plaintiff was given a position as Director, Marketing Communications, Cargo for Alitalia.  Ex. A ¶ 32 (Complaint); Ex. B ¶ 32 (Answer).  In this position, Plaintiff was again denied the opportunity to play a role in her division since she was not informed of meetings or permitted to attend major events while male peers were invited and encouraged to attend.  Ex. O.  Instead, Plaintiff had little work to do and created work for herself such as updating company phone directories.  Ex. C at 237:12-238 (Lorusso Depo.)  Moreover, she had no budget and no employees to supervise.  Ex. O.

Ultimately, Plaintiff was terminated in January 2007 at age 49.  Ex. A ¶¶ 8, 46 (Complaint); Ex. B ¶ 8 (Answer); Ex. M ¶¶ 41-42 (Defendant's Rule 56.1 Statement).

**F.    Plaintiff Repeatedly Voices Her Concerns Of Discrimination To Alitalia**

Throughout the time that Plaintiff's job responsibilities were reduced and her jobs changed, Plaintiff voiced her concerns of discrimination to Alitalia.  Concurrent with the elimination of her position as Director, Marketing, Plaintiff informed Sciarresi in August/September 2004 of her suspicions of discrimination and catalogued the systematic elimination of her responsibilities as Director, Marketing.  Exs. L, Q, J, R, and

S.  Following the closure of GA2000, Plaintiff again voiced her concerns.  Ex. C at 206-207. (Lorusso Depo.)

Plaintiff's outspoken approach continued when she held the position of Director, Marketing Communications, Cargo.  In late-September 2006 and early-November 2006, Plaintiff voiced extensive protests regarding her position as Director, Marketing Communications, Cargo, expressed her belief that she was the subject of discrimination and retaliation, and referred to her earlier allegations of employment discrimination based on gender.  Exs. T, U and O.

Plaintiff complained, among other things, that her salary had been reduced following the closure of GA2000, that she was put on a six-month probation (unlike when she took the position at GA2000), that she had not been permitted to participate in relevant meetings and that her purported duties were also assigned to other employees.  Ex. T.  At this same time, Plaintiff reiterated the systematic reduction of her responsibilities while she was the Director, Marketing in 2004 as well as her belief that her transfer to GA2000 was made with Libutti's knowledge that GA2000 would close.  Ex. T.

In January 2007 -- mere months later -- Plaintiff was terminated by Alitalia. Ex. V; Ex. A ¶ 46 (Complaint); Ex. M  ¶¶ 41-42 (Defendant's Rule 56.1 Statement).  Libutti had remained employed at Alitalia's New York office throughout Plaintiff's remaining tenure at Alitalia.  Libutti left Alitalia in March 2007.   Ex. E at 28-29 (Libutti Depo.).

### III.    Legal Argument

It is long established that a "party who moves for summary judgment has the burden of showing that no genuine issue of material fact exists and that the undisputed facts entitle it to judgment as a matter of law." Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608 (1970)). Furthermore, "to defeat a properly supported summary judgment motion, the opposing party must come forward with affidavits, depositions, or other sworn evidence as permitted by Fed.R.Civ.P. 56, setting forth specific facts showing that there exists a genuine issue of material fact." Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996)

When considering a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party, and the Court must resolve all ambiguities and draw all reasonable references in its favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct, 2505 (1986); Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 202 (2d Cir. 1995). Moreover, "[t]he function of the district court in considering the motion for summary judgment is not to resolve disputed issues of fact but only to determine whether there is a genuine issue to be tried." Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513-14 (1986); Eastman Machine Co. v. United States, 841 F.2d 469, 473(2d Cir. 1988)).

    **A.**    **The Statements of Galli and Libutti To Gallo And Libutti To Sciarresi Concerning A Plan To Fire Older People And Of Libutti To Sciarresi Regarding His Attitude Towards Women In High Positions Alone Create Material Issues of Fact Precluding Summary Judgment And Give Rise To An Inference Of Discrimination.**

There are material issues of fact concerning the states of mind and attitudes of Galli and Libutti towards older workers and of Libutti towards females. As detailed below, both Gallo and Sciarresi testified to statements made by Galli and/or Libutti regarding their intention to eliminate older workers in favor of younger ones and of Libutti's discomfort with women in positions of power – statements that were made concurrently with Libutti's expressed responsibility to reduce both costs and the number of workers in the New York office of Alitalia. Ex. E at 18-29 (Libutti Depo.).

In 2004, Galli and Libutti told Gallo, "there was a program to substitute as much as possible old people at Alitalia, not just Ester Lorusso" and "to substitute older people with younger employees, no older than 30." Ex. D at 16:17-17:21; 29:6-30:13 (Gallo Depo., Jan. 7, 2008).

In addition to the 2004 statements made by Galli and Libutti, in August 2004, Libutti, Sciarresi's supervisor, told Sciarresi that "[h]e wanted to make a reorganization plan in order to fire the old people in the company and replace them with young people, new, appoint or maybe promoting new manager in the company." Ex. G at 8-9 (Sciarresi Depo.). When Sciarresi pointed out that Libutti's proposed changes were illegal, Libutti said he didn't care and wanted to proceed. Ex. G at 9 (Sciarresi Depo.). Libutti's plan had a direct impact on Plaintiff because she was an employee in a senior position with longevity. Ex. G at 9 (Sciarresi Depo.). As a direct result of Libutti's plan, "Mr. Libutti wanted to move Ester Lorusso to GA2000," a subsidiary of Alitalia. Ex. G at 10

11

(Sciarresi Depo.). Even more specifically, and with regard to Plaintiff's claims based on age and gender discrimination, Sciarresi testified:

Q.    Now, based upon what you know from what Mr. Libutti told you, was Ms. Lorusso's age a factor in Mr. Libutti's decision to move her out of Alitalia into GA2000?

MR. KORAL: Objection.

A.    Yes. He wanted to move Mrs. Lorusso because she was one of the old people in the position. So he told me these words.

Q.    And it was based upon, in part at least, her age?

.A.    Yes.

MR. KORAL: Objection.

Q.    Did Mr. Libutti, based on your knowledge of him and your work with him, have an opinion of Ester Lorusso based on the fact she was a woman?

MR. KORAL: Objection.

A.    Yes. He told me he wasn't comfortable with a woman in high position.

Q.    When did he tell you that?

A.    When he came to my office and telling me about this organization plan that he had in mind.

Q.     Did Mr. Libutti ever say anything to you about his comfort with women or minorities working under him?

MR. KORAL:  Objection.

A.     He wasn't comfortable with the minority and the other people that could be different from his way of thinking.

Ex. G at 11:11-12:17.  (Sciarresi Depo.).  See also Ex. G at 14-18 (regarding Libutti's contempt for American anti-discrimination laws, an opinion he expressed on several occasions); at 20-22 (regarding Libutti's implementation of proposed plan to terminate older workers); at 22-24 (regarding Libutti's attitude toward women, including Plaintiff); at 24-25 (regarding Libutti's discomfort with diversity in the workplace); at 21, 25-27 (reiterating impact of Libutti's plan on Plaintiff due to her age and gender); at 27-30 (regarding Libutti's abusive attitude toward Sciarresi due to his challenge to Libutti's plan); at 34 (regarding Sciarresi traveling to United States at his own expense to testify in order "to tell the truth and to answer the question about this case. And to have justice for the situation.") (Sciarresi Depo.);  Ex. G at 18:14-19:4 (regarding presence of discriminatory intent on the parts of Galli and Libutti); at 26:3-25 (regarding the interest of Galli and Libutti to terminate Lorusso based on age and gender); at 35:11-37:8 (regarding 2002 instructions to terminate older people and replace with youger people); (Gallo Deposition, Jan. 7, 2008); at 119:18-120:21 (regarding Libutti's interest in terminating Lorusso based on age and gender) (Jan. 11, 2008).

Galli and Libutti were the highest ranking Alitalia employees in the United States at the time in 2004 when they made their comments to Gallo and Sciaressi, and Libutti

remained employed at Alitalia through March 2007, just a couple months after Lorusso's termination. Ex. E at 13:25-15:1, 28-29 (Libutti Depo.); Ex. F at 8 (Galli Depo.)] Moreover, the statements attributed to Galli and Libutti were made at a time that Libutti was charged with reducing both costs and the number of employees in the New York office. Ex. E at 18-29 (Libutti Depo.). Accordingly, the legitimate business reason proffered by Alitalia is undermined by the statements of Galli and Libutti, and their comments give rise to an inference of discrimination avoiding summary judgment.

1.    **The Statements of Galli And Libutti Are Far More Than "Stray Remarks" And Are Sufficient To Avoid Summary Judgment**

A discriminatory motive may be inferred from remarks made by the employer, though mere "stray remarks" are insufficient to create a material issue of fact to defeat summary judgment. Quinby v. WestLB AG, No. 04 Civ.7406 (WHP), 2007 WL 1153994, at *6 (S.D.N.Y. Apr. 19, 2007)(citing, among others, Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 124 (2d Cir. 2004); Holtz v. Rockefeller & Co., 258 F.3d 62, 77-78 (2d Cir. 2001); Tomassi v. Insignia Fin. Group, Inc., 478 F.3d 111 (2d Cir. 2007).

a.    **The Statements Of Galli and Libutti Are Probative Of An Intent To Discriminate**

When analyzing whether comments – such as those Galli and/or Libutti made to Gallo and Sciarresi -- are probative statements evidencing an intent to discriminate or non-probative "stray remarks", courts consider (1) whether the remarks were made by a decisionmaker, a supervisor or a low-level employee; (2) whether the remarks evince a discriminatory state of mind and how close its relationship is to the allegedly discriminatory behavior; (3) whether the remarks tend to show the decisionmaker was

14

motivated by assumptions or attitudes relating to the protected class; and (4) whether the timing of the remarks is close to the employment decision at issue.  <u>Tomassi v. Insignia Fin. Group, Inc.</u>, 478 F.3d 111 (2d Cir. 2007); <u>Quinby v. WestLB AG</u>, No. 04 Civ.7406 (WHP), 2007 WL 1153994, at *6 (S.D.N.Y. Apr. 19, 2007)(citing <u>Schreiber v. Worldco, LLC</u>, 324 F. Supp. 2d 512, 519 (S.D.N.Y. 2004)).  In Plaintiff's case, these factors support a finding of employment discrimination based on age and gender.

First, the remarks recounted by Gallo and Sciarresi were made by Galli and/or Libutti, the highest ranking Alitalia employees in the United States.  Ex. F at 7-8 (Galli Depo); Ex. E at 13:25-15:1 (Libutti Depo.).  Second and Third, the interest of Galli and Libutti in terminating older workers and Libutti's expressed issues with women in positions of power, generally, as well as those remarks pertaining to Plaintiff, specifically, are directly related to Plaintiff's claims of discrimination based upon age and gender and suggest Galli and Libutti were motivated by assumptions or attitudes relating to the protected classes.  Fourth, the comments attributed to Galli and Libutti were made in 2004 and/or August 2004, at the very time Plaintiff was told her position as Director, Marketing was being eliminated, and she was requested to take the position with GA2000.

In addition, the strength of the comments made by Libutti regarding age and gender further support the conclusion that Plaintiff's termination in January 2007 – when Libutti remained employed at Alitalia – was another adverse employment action stemming from Libutti's clear discriminatory motive.  <u>E.E.O.C. v. Town of Huntington</u>, No. 05 CV 4559(DRH)(WDW), 2008 WL 361136, at *7-10 (E.D.N.Y. Feb. 8, 2008)(finding that comments four years prior to plaintiff's termination "dr[a]w a direct

line between [age] stereotypes and the conclusion that [the plaintiff] should not [hold the relevant position]," and citing Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 124 n.12 (2d Cir.2004); see also Tomassi v. Insignia Fin. Group, Inc., 478 F.3d 111, 115 (2d Cir. 2007) ("The more a remark evinces a discriminatory state of mind, and the closer the remark's relation to the allegedly discriminatory behavior, the more probative that remark will be.").

   b.   **Remarks Akin To Those Of Galli And Libutti Preclude Summary Judgment**

        The remarks of Galli and Libutti create a material issue of fact and preclude summary judgment, a conclusion consistent with other Second Circuit precedent. For example, in Tomassi, the Second Circuit found that the repeated age-related remarks from the Tomassi plaintiff's supervisor suggesting, among other things, that she would work well with seniors, that she must be tired of the commute and might want to think about retiring and that she might want to work part-time all supported a finding of age discrimination and prevented summary judgment in favor of the employer. Tomassi v. Insignia Fin. Group, Inc., 478 F.3d 111, 112-114 (2d Cir. 2007). Summary judgment was also denied on an age discrimination claim where a high-ranking employee with a lot of input with the decisionmaker made a comment four years prior suggesting the plaintiff was too old for the job, as well as more contemporaneous comments remarking how well certain employees got along together since they were all about the same age and that the plaintiff should "hang out" with the staff of a different project because they were "young and motivated". E.E.O.C. v. Town of Huntington, No. 05 CV 4559(DRH)(WDW), 2008 WL 361136, at *7-10 (E.D.N.Y. Feb. 8, 2008). A court also refused to grant summary judgment on a gender discrimination claim where the relevant

decisionmaker repeatedly made offensive comments regarding women including that they were a "problem" and "high maintenance" and stated there was the "girlie" way of doing things and the "right" way.  Quinby v. WestLB AG, No. 04 Civ.7406 (WHP), 2007 WL 1153994, at *7-10 (S.D.N.Y. Apr. 19, 2007).  See also Meschino v. Int'l Tel. and Tel. Corp., 563 F. Supp. 1066, 1070-1073 (S.D.N.Y. 1983) (denying summary judgment in age discrimination case and deeming statements admissible evidence where Director responsible for termination decision described plaintiff to direct subordinate tasked with terminating plaintiff as "a sleepy kind of guy, droopy with no pizzazz").

Accordingly, the straightforward statements made by Galli and/or Libutti to Gallo and Sciarresi regarding their plan to replace older workers with younger ones, and Libutti's discomfort with women in high positions alone preclude summary judgment. Moreover, these same comments dilute the legitimate business reason offered by Alitalia since these comments were made at a time Libutti was responsible for reducing costs and employees in the New York office.

### 2.    The Testimony Of Gallo And Sciarresi Is Admissible Evidence

The statements made by Galli and/or Libutti to Gallo and Sciarresi concerning their plan to terminate older workers, and Libutti's expressions to Sciarresi of his discomfort with women in positions of power are admissible evidence.  As an initial matter, Federal Rule of Evidence 801(d)(2)(D) provides "**(d) Statements which are not hearsay.** A statement is not hearsay if-- **(2) Admission by party-opponent.** The statement is offered against a party and is . . . . (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship . . . ." Fed. R. Evid. 801(d)(2)(D).  Moreover, Federal

17

Rule of Evidence 803 provides two other bases upon which the statements of Galli and
Libutti are admissible -- as either a present sense impression under 803(1) or as a
statement of the declarants' then existing state of mind. Fed. R. Evid. 803(1), 803(3).[4]

In an employment discrimination case alleging racial discrimination, the court
found that statements made by store sales managers to the plaintiff that a store was
"becoming 'too black'" and a comment to plaintiff stating "you know what, you don't
talk like a black guy, Jim," qualified as party admissions because as the store sales
managers, the declarants had responsibility "for the recruitment of personnel, and for
attracting and keeping customers" as well as for supervising the plaintiff. Dais v. Lane
Bryant, Inc., No. 97CIV2011(PKL)(RLE), 2001 WL 1285329, at *3-4 (E.D.N.Y. Oct.
22, 2001)(denying aspects of defendant's motion in limine). In addition, these same
comments could also be admissible under the present sense impression or state of mind
exceptions to the hearsay rule. Dais v. Lane Bryant, Inc., No. 97CIV2011(PKL)(RLE),
2001 WL 1285329, at *3 & n.3, *4, *5 n.4 (E.D.N.Y. Oct. 22, 2001). See also Browne
v. CNN America, Inc., No. 98 CIV. 1768(JSM), 1999 WL 1084236, at *3 n.3 (S.D.N.Y.

---

[4]      Federal Rules of Evidence 803(1) and 803(3) provide, "[t]he following are not excluded by the
hearsay rule, even though the declarant is available as a witness:

**(1) Present sense impression.** A statement describing or explaining an event or condition made while the
     declarant was perceiving the event or condition, or immediately thereafter.

**(2) Then existing mental, emotional, or physical condition.** A statement of the declarant's then
     existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design,
     mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove
     the fact remembered or believed unless it relates to the execution, revocation, identification, or terms
     of declarant's will.

Fed. R. Evid. 803(1), (3).

Dec. 1, 1999)(finding employer's comments regarding plaintiff's performance admissible to show state of mind in age discrimination case).  Moreover, the statement of a store employee who was asked to enforce a policy "that any black person that came into the store was to be followed," could also qualify as a party admission.  Dais v. Lane Bryant, Inc., No. 97CIV2011(PKL)(RLE), 2001 WL 1285329, at *2 (E.D.N.Y. Oct. 22, 2001).

With regard to Galli and Libutti, they were the highest ranking Alitalia employees in the New York office, so their opinion of which employees should be hired and fired to reduce costs is within their bailiwick.  Ex. E at 13:25-15:1; 18-29 (Libutti Depo.); Ex. F at 8 (Galli Depo.).  To the extent Libutti tries to claim that he was not the specific decisionmaker in Plaintiff's case, the testimony of Sciarresi suggests otherwise.  Ex. E at 48 (Libutti Depo.); Ex. G at 9-12 (Sciarresi Depo).  Moreover, even if Galli and Libutti were not the specific decisionmakers, as the highest ranking employees in the New York office, they were in a position to influence those who did make the decision. Consequently, their opinions are relevant.  E.E.O.C v. Town of Huntington, No. 05 CV 4559 (DRH)(WDW), 2008 WL 361136, at *7-10 (E.D.N.Y. Feb. 8, 2008)(finding that the comments of the plaintiff's direct supervisor who had substantial input, but lacked specific authority to terminate plaintiff, were admissions of a party-opponent and had a sufficient nexus to the adverse employment action against the plaintiff).[5]  See also

---

[5]     The Huntington court cited Second Circuit authority for the principle that the a supervisor with input who lacked authority to terminate nevertheless  supported a finding of a discriminatory motive.  See Back v. Hastings on Hudson Union Free School Dist., 365 F.3d 107, 124 n.12 (2d Cir. 2004) (repeated stereotypical comments made by a supervisor who played a substantial role in the decision to terminate are sufficient to support a finding of discriminatory motive); Rose v. New York City Board of Educ., 257 F.3d 156, 162 (2d Cir. 2001) (finding discriminatory motive where comments were made to plaintiff "on more than one occasion by her immediate supervisor, who had enormous influence in the decision-making process").

Meschino v. Int'l Tel. and Tel. Corp., 563 F. Supp. 1066, 1070-1073 (S.D.N.Y. 1983)
(denying summary judgment where Director responsible for termination decision made
potentially discriminatory comments based on age to direct subordinate tasked with
terminating plaintiff and deeming these statements admissible evidence).

Accordingly, the comments of Galli and/or Libutti to Gallo and Sciarresi are
admissible evidence and raise a material issue of fact giving rise to an inference of
discrimination and undermine Alitalia's proffered legitimate business reason.

### 3. Issues Of Witness Credibility Cannot Be Resolved At Summary Judgment And Are Reserved For Trial

Any issues regarding the credibility of Gallo and/or Sciarresi cannot be resolved
on a motion for summary judgment. In determining a motion for summary judgment,
"Assessments of credibility and choices between conflicting versions of the events are
matters for the jury, not for the court on summary judgment." Rule v. Brine, Inc., 85
F.3d 1002, 1011 (2d Cir. 1996) (citing Fed. R. Civ. P. 56(e) 1963 Advisory Committee
Note; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 2513-14
(1986); United States v. Rem, 38 F.3d 634, 644 (2d Cir. 1994); 6 Moore's Federal
Practice ¶ 56.02[10], at 56-45 (2d ed. 1986)). This principle has been interpreted to
preclude summary judgment even where there are profound doubts about the veracity of
the witness.

For instance, summary judgment was denied where a court found that the
credibility of the non-party witness could not be determined at the summary judgment
stage despite the fact the witness in question had previously recanted testimony given
under oath as well as at trial. Moreover, in describing the relevant witness, a district
court in a separate action previously noted that the witness "impressed me as a witness

20

who no longer cares about the truth or falsity of his testimony, and much of the substance

of his post-recantation testimony (both before me and in state court on the § 440 motion)

depended on which attorney questioned him last.... [the witness] is making it up as he

goes along." Blake v. Race, 487 F. Supp. 2d 187, 201-202 (E.D.N.Y. 2007).

In another case in which there was a question concerning the truthfulness of the

plaintiff-witness, the court did not grant summary judgment despite the fact the witness

had previously submitted false federal income tax returns and bankruptcy petition

submissions.  In reaching its conclusion that summary judgment should not be granted

despite issues of credibility, the court noted, "While defendants are correct that plaintiff's

past interactions with federal authorities bring into question her credibility, they are not

fatal to her claim at this stage.  Although plaintiff admitted she lied about her hours and

wages in the past, it does not follow that she must necessarily be lying about her hours

and wages to the Court." Rivera v. Ndola Pharmacy Corp., 497 F. Supp. 2d 381, 391-92

(E.D.N.Y. 2007).

Given the extreme examples above, it follows that any issues concerning the

credibility of Gallo and/or Sciarresi cannot be resolved at the summary judgment stage

and should be reserved for trial.[6]


**B.      There Is A Material Issue Of Fact Concerning Whether Libutti And
        Galli Transferred Plaintiff To GA2000 Knowing This Company
        Would Be Eliminated**

The Defendant claims that, despite the closure of GA2000 in November 2005,

Libutti had no knowledge of any intention to close GA2000 at the time Lorusso was

---

[6]      Sciaressi testified that he has a lawsuit pending against Alitalia.  Ex. G at 33:3-10 (Sciaressi Depo.)

transferred there in August/September 2004. Ex. M ¶ 16 (Defendant's Rule 56.1

Statement). Notwithstanding this claim, in his affidavit, Mariotti, a member of the senior

management for Alitalia in the New York office, attested to precisely such an intention

by Libutti, as well as Galli, during the course of management meetings at which Mariotti

was present. Ex. H (Mariotti Aff.) Specifically, Libutti and Galli stated in 2003 and

2004 that they intended to close GA2000 -- statements made *before* Plaintiff was

transferred to GA2000 in late 2004. Ex. H (Mariotti Aff.). Accordingly, there is a

material issue of fact concerning the long-term viability of GA2000 and whether

Plaintiff's transfer to this company was an adverse employment action.

Akin to the testimony of Gallo and Sciarresi, Mariotti's affidavit is admissible

evidence and assessments of his credibility are reserved for trial and cannot be resolved at

summary judgment. Babcock v. CAE-Link Corp., 878 F. Supp. 377, 382 (N.D.N.Y

1995) (finding that statements in an affidavit are admissible evidence).

Moreover, with regard to what constitutes an adverse employment action the

relevant statute prohibits employers from discriminating with respect to "compensation,

*terms, conditions, or privileges* of employment" on account of an individual's race,

color, religion, sex, or national origin, and the protections are not limited to "instances of

discrimination in pecuniary emoluments." De la Cruz v. New York City Human

Resources Administration Department of Social Services, 82 F.3d 16, 21 (2d Cir. 1996)

(finding plaintiff was subject to an adverse employment action and citing Rodriguez v.

Board of Educ., 620 F.2d 362, 366 (2d Cir. 1980) which found that transfer of art teacher

from junior high school to elementary school was an adverse employment decision).

Furthermore, an "adverse employment action" is a materially adverse change in the

terms and conditions of employment which can be evidenced by "a termination of employment, a demotion evidenced by a decrease in wage of salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to the a particular situation." Savarese v. William Penn Life Ins. Co. of New York, 418 F. Supp.2d 158, 161 (E.D.N.Y. 2006).

In Plaintiff's case, the discriminatory animus of Galli and Libutti, combined with her transfer to a company slated for closure falls into the category of "other indices unique to the a particular situation."

### C.    Plaintiff States A Prima Facie Case Of Employment Discrimination Based On Age And Gender And Of Retaliation

#### 1.    Employment Discrimination Based On Age And Gender

To establish a prima facie case of employment discrimination based on age or gender, the plaintiff must demonstrate that: (1) she is a member of a protected class; (2) she was qualified for her position; (3) she was subjected to an adverse employment action; and (4) the adverse action occurred in circumstances giving rise to an inference of discrimination. Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003); Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000).[7]  Plaintiff meets each and every one of these elements.

First, Plaintiff is a woman aged 49 years old at the time of her termination in January 2007; accordingly, she was within the protected class by being over the age of forty (40) at all times relevant to this action. Ex. A ¶¶ 8, 46 (Complaint); Ex. B ¶ 8

---

[7]    Title VII law is relevant in evaluating claims brought under the New York City Human Rights Law since "identical standards apply to employment discrimination claims brought under Title VII, Title IX, New York Executive Law § 296 and the Administrative Code of the City of New York." Weinstock v. Columbia Univ., 224 F.3d 33, 42 n.1 (2d Cir. 2000).

(Answer); Ex. M ¶¶ 41-42 (Defendant's Rule 56.1 Statement). Second, Lorusso was qualified for her position because of her extensive experience and many contributions in communications and advertising during her tenure with Alitalia. Ex. D at 22:7-16 (Gallo Depo., Jan. 7, 2008). Third, Lorusso was subjected to no less than two adverse employment actions: (a) her transfer in August/September 2004 to GA2000 at a time when this entity had been identified for closure by Galli and Libutti and (b) her 2007 termination from Alitalia. Fourth, and finally, there is an inference of discrimination because of (a) the continued performance of Lorusso's marketing duties by younger women and by a man after the elimination of her position as Director, Marketing and (b) the extensive statements by Galli and Libutti regarding their interest in terminating older workers and replacing them with younger workers, as well as Libutti's expression of his discomfort with women. For the reasons detailed in Section III.A, the statements of Galli and Libutti alone preclude summary judgment and undermine Alitalia's proffered legitimate business reason.

### 2.    Plaintiff States A Prima Facie Case Of Retaliation

The anti-retaliation provision of Title VII, and by analogy, the New York City Human Rights Law, forbid employer actions that "discriminate against" an employee (or job applicant) because he has "opposed" a practice that Title VII forbids or has "made a charge, testified, assisted, or participated in" a Title VII "investigation, proceeding, or hearing." Burlington Northern & Santa Fe Ry Co. v. White, 548 U.S. 53, 126 S.Ct. 2405, 2410 (2006) (citing 42 U.S.C.A. § 2000e-3(a)). In order to make out a claim of retaliation, an employee must show "that the employee was engaged in protected activity; that the employer was aware of that activity; that the employee suffered adverse

employment decisions; and that there was a causal connection between the protected activity and the adverse employment action." <u>Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons</u>, 842 F.2d 590, 593 (2d Cir. 1988).

Plaintiff meets each and every one of these elements. As an initial matter, a plaintiff's conduct may be deemed <u>protected activity</u> even where the plaintiff made "informal protests of discrimination, including making complaints to management." <u>Blitzer v. Potter</u>, 03 Civ. 6124 (DLC), 2005 WL 1107064, at *12 (S.D.N.Y. May 6, 2005); <u>Sumner v. United States Postal Service</u>, 899 F.2d 203, 209 (2d Cir. 1990). Moreover, an employment practice need not actually violate Title VII for the protected activities element of a retaliation claim to be satisfied – the plaintiff need only have a good faith reasonable belief that there was such a violation. <u>Blitzer v. Potter</u>, 03 Civ. 6124 (DLC), 2005 WL 1107064, at *12 (S.D.N.Y. May 6, 2005). The reasonableness of the plaintiff's belief is "assessed in light of the totality of the circumstances." <u>Blitzer v. Potter</u>, 03 Civ. 6124 (DLC), 2005 WL 1107064, at *12 (S.D.N.Y. May 6, 2005). Accordingly, Plaintiff's numerous protests, including her extensive protests in late-September and early-November 2006 regarding her position as Director, Marketing Communications, Cargo and her belief that she was the subject of discrimination and retaliation, as well as her reference therein to her earlier allegations of employment discrimination based on gender meet the first element of a retaliation claim.[8] Exs. T, U, W and O.

---

[8]     For example, in a concurrent e-mail, Plaintiff stated, "Her [Lucia Alla's] promotion comes after I raised the issue of ongoing gender discrimination, and at a time when there are no other females at the Director's level within Alitalia NAM." Ex. W at D0016.

Second, Plaintiff's employer was aware of her protected activity since she made her comments protesting her treatment in e-mails in late-2006.  For example, Andrea Porru, Director, Human Resources Americas responded to Plaintiff in an October 11, 2006 e-mail that he was "quite troubled that you raise issues of alleged discrimination with which I was entirely unfamiliar."  Ex. T at D0012.  Similarly, Walter Longo, Vice President, Cargo, The Americas, recognized that Lorusso raised issues relating to alleged discrimination when he said he "can't be of help for the questions [pertaining to …] the alleged episodes of harassment and/or discrimination . . . ." Ex. U at D0023.

Third, Plaintiff suffered an adverse employment decision based on her termination in January 2007.  Ex. V.  Fourth, a causal connection exists because Plaintiff's termination occurred in January 2007 within just 2-3 months of her most recent allegations of discrimination and retaliation in late-September and early-November 2006.  Exs. T, U, W and O.

Accordingly, Plaintiff states a claim for retaliation, and the close proximity of the adverse employment actions to her protected activity avoids summary judgment.  Quinby v. WestLB AG, No. 04 Civ.7406 (WHP), 2007 WL 1153994, at *12-13 (S.D.N.Y. Apr. 19, 2007).

**IV.     Conclusion**

Based on the foregoing, including the extensive material issues of fact, summary

judgment is not warranted.


Dated:  May 30, 2008
        New York, New York

                                    Respectfully Submitted,

                                    The Ottinger Firm, P.C.


                                    By: _____
                                        Robert W. Ottinger
                                        The Ottinger Firm, P.C.
                                        South Street Seaport
                                        19 Fulton Street, Suite 408
                                        New York, New York 10038
                                        (212) 571-2000
                                        Attorneys for Plaintiff Ester Lorusso

27