UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------

ESTER LORUSSO,

                              Plaintiff,                      Case No. 07 CV 3583 (LBS)(RLE)


                 -against-

ALITALIA-LINEE AEREE ITALIANE SpA,

                              Defendant.

---------------------------------------------------


### REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT ALITALIA-LINEE AEREE ITALIANE SpA'S MOTION FOR SUMMARY JUDGMENT


Alan M. Koral (AK-1503)
Daniel C. Green (DG-0059)
VEDDER PRICE P.C.
1633 Broadway, 47th Floor
New York, New York 10019
(212) 407-7700

*Attorneys for Defendant
Alitalia-Linee Aeree Italiane SpA*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

PLAINTIFF'S ADDITIONAL FACTUAL ALLEGATIONS.......................................................3

ARGUMENT ...............................................................................................................................5

POINT ONE    THE UNDISPUTED FACTS SHOW THAT PLAINTIFF'S
PROMOTION TO MANAGING DIRECTOR OF GA 2000 WAS
NOT AN ADVERSE ACTION ........................................................................5

POINT TWO    PLAINTIFF HAS FAILED TO RAISE AN INFERENCE OF
DISCRIMINATORY INTENT AS TO ANY ACTION TAKEN
TOWARDS HER...............................................................................................7

POINT THREE    PLAINTIFF HAS FAILED TO RAISE AN INFERENCE OF
RETALIATORY INTENT AS TO ANY ACTION TAKEN
TOWARDS HER...............................................................................................9

CONCLUSION ............................................................................................................................10

NEWYORK/#196610.3

# TABLE OF AUTHORITIES

**Page**

**Cases**

Giannone v. Deutsche Bank Sec., Inc., 392 F. Supp.2d 576 (S.D.N.Y. 2005).............................. 9

Laverack & Haines, Inc. v. NY State Div. of Human Rights, 88 N.Y.2d 734,
   650 N.Y.S.2d 76, 673 N.E.2d 586 (1996) .............................................................. 10

Morser v. AT&T Information Systems, 703 F. Supp. 1072 (S.D.N.Y. 1989).............................. 8

Suttell v. Manufacturers Hanover Trust Co., 793 F. Supp. 70 (S.D.N.Y. 1992).......................... 8

Tarshis v. Riese Organization, 195 F.Supp.2d 518 (S.D.N.Y. 2002).......................................... 10

NEWYORK/#196610.3

Defendant Alitalia–Linee Aeree Italiane SpA ("Defendant" or "Alitalia"), by its attorneys Vedder Price P.C., submits this reply memorandum of law in further support of its motion, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment dismissing the Complaint of Ester Lorusso ("Plaintiff" or "Lorusso"), on the ground that the undisputed facts in the record preclude Lorusso from establishing the requisite elements of any of her claims against Defendant.

## PRELIMINARY STATEMENT

Lorusso has asserted three claims under the New York City Human Rights Law: 1) gender discrimination (First Cause of Action); 2) age discrimination (Second Cause of Action); and 3) retaliation (Third Cause of Action). She apparently acknowledges that certain of the events raised in her Complaint cannot legally constitute adverse employment actions, and has thus narrowed her contentions to "two adverse employment actions: (a) her transfer in August/September 2004 to GA 2000… and (b) her 2007 termination from Alitalia" (Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment (the "Opposition") pp. 3, 24). Alitalia previously demonstrated in its moving papers that, to the extent that Lorusso's claims spring from her promotion to Managing Director of Alitalia subsidiary GA 2000, they must fail as a matter of law because, far from suffering an adverse employment action, she received an enhanced title and a salary increase of more than $25,000 (*see* Memorandum of Law in Support of Defendant Alitalia-Linee Aeree Italiane SpA's Motion for Summary Judgment (the "Moving Memorandum") pp. 14-15). In fact, despite its widely-reported deepening financial crisis, this was but one in a series of executive positions that

Alitalia provided to Lorusso in order to avoid laying her off, over a period during which it was forced to eliminate nearly two-thirds of its New York employees.[1]

In an effort to salvage her claims, Lorusso's Opposition alleges comments by two Alitalia executives which she claims establish that they actually intended to eliminate GA 2000 at some point prior to the promotion. The Opposition further identifies a number of alleged biases by the same two executives which Lorusso contends evidence their discriminatory intent towards her. None of these alleged actions raises an issue of material fact or otherwise warrants denial of summary judgment to Alitalia.

As established in Alitalia's Moving Memorandum, the lone *bona fide* adverse employment action that Lorusso ever suffered was her ultimate termination by Alitalia in January 2007 (*see* Moving Memorandum pp. 14-15, 17-18). The alleged intentions of two executives to eliminate GA 2000 at a certain point does not create a material disputed issue that they possessed such intentions *at the time* of Lorusso's promotion to Managing Director of that subsidiary (*see* Point One, *infra*). The allegations that Lorusso claims evidence discriminatory intent involve biases allegedly expressed two-and-a-half years or more prior to her termination by two executives unconnected to the decision to terminate her (*see* Point Two, *infra*). Finally, Lorusso has failed to identify any evidence whatsoever suggesting that her termination was retaliatory or that it was informed by any motivation other than the critical need to respond to Alitalia's ever-deepening financial crisis (*see* Point Three, *infra*). Lorusso has thus failed to adduce facts necessary to state a *prima facie* case as to any of her claims, much less to identify

---

[1] Over the course of the three years from December 31, 2003 to December 31, 2006, Alitalia reduced its presence in New York from 130 employees to 58, and it reduced its presence by a further 10 employees over the course of the next year (*see* the Statement of Uncontested Material Facts in Support of Alitalia's Motion For Summary Judgment ¶ 6).

material factual disputes that create a triable issue as to the legitimacy of Alitalia's nondiscriminatory business reasons for taking the various employment actions that Lorusso dislikes.

## PLAINTIFF'S ADDITIONAL FACTUAL ALLEGATIONS

In an effort to establish that her promotion to Managing Director of GA 2000 constituted an adverse employment action, Lorusso has obtained an affidavit from Gabriele M. Mariotti ("Mariotti"), a former Alitalia executive, who carefully alleges that:

> As a member of senior management, I frequently participated in management meetings at the New York Office with Giulio Libutti and Pierandrea Galli and GA 2000 was discussed on occasion…. In 2003 and 2004, Mr. Libutti and Mr. Galli stated in my presence that they intended to close GA 2000. These statements were made before Ester Lorusso was transferred to work in GA 2000 in late 2004.

(Affidavit of Gabriele M. Mariotti ¶¶ 3-4, at Exhibit H to the Declaration of Robert Ottinger (the "Ottinger Declaration"); referred to at Opposition pp. 21-23).

Lorusso also identifies three alleged expressions of bias made by Alitalia executives which she contends raise questions of fact as to Alitalia's motives for making various employment decisions pertaining to her. All three of these allegations are introduced via hearsay testimony, and two are purely conclusory in nature. Alitalia disputes that the testimony on which they are based is accurate but, even assuming their admissibility, they are insufficient to salvage Lorusso's claims, as demonstrated below. The three allegations are as follows:

1. Alitalia's former Senior Vice President for Corporate Affairs, Francesco Gallo ("Gallo"), claims to have been "caucusing with" Alitalia's former Senior Vice President for North America, Giulio Libutti ("Libutti") and Libutti's Supervisor, Pierandrea Galli ("Galli"), "about how to eliminate Ester Lorusso" in 2004. The "main reason" for their desire to "fire" Lorusso, according to Gallo, was that "Ester [Lorusso] was reaching her 50th

birthday[2] and there was a program to substitute as much as possible old people at Alitalia…"[3] (January 7, 2008 Gallo Deposition pp. 16-17, at Exhibit D to the Ottinger Declaration; referred to at Opposition pp. 5-6).

2.    Alitalia's former Human Resources Director, Andrea Sciarresi ("Sciarresi"), claims that in August of 2004, Libutti "wanted to make a reorganization plan in order to fire the old people in the company and replace them with young people, new, appoint or maybe promoting new manager in the company" and that:

> Mr. Libutti wanted to move Ester Lorusso because he wanted Mrs. Lorusso out of the company, out of the organization plan, the organization chart of Alitalia.  So he wanted to move her to GA 2000, promoting her with the position of managing director of GA 2000.[4]

(April 18, 2008 Sciarresi Deposition pp. 8-9, 11, at Exhibit G to the Ottinger Declaration; referred to at Opposition pp. 5-6).[5]  Notably, Sciarresi does not suggest that Libutti ever evinced any intention of firing Lorusso or, indeed, that Libutti's ambition to "fire the old people" was ever attempted, much less realized.

---

[2] In fact, Lorusso was not nearing her 50th birthday in 2004; she was born in 1957, making her just 47 years old at that time (*see* Complaint, annexed to the Notice of Motion, ¶¶ 1, 8 & 10).

[3] Lorusso argues that these purported statements "raise issues of fact" because they were made "at a time that Libutti was engaged in cost-cutting efforts at Alitalia, including reducing the number of employees" (Opposition p. 2).  However, as elaborated upon *infra*, Lorusso was unaffected by this reduction in force, retaining her employment with Alitalia for a further two-and-a-half years.

[4] Sciarresi's testimony also ascribes an alternate and nondiscriminatory motivation to Libutti in promoting Lorusso out of his direct line of supervision:  "[Libutti] told me [Sciarresi] that he didn't like her [Lorusso] because she often wasn't in line with his way of thinking and his orders" (April 18, 2008 Sciarresi Deposition pp. 13-14, at Exhibit G to the Ottinger Declaration).

[5] Lorusso mis-cites pages 13-15 of the transcript of Libutti's January 21, 2008 deposition in support of this claim (*see* Opposition p. 6; deposition pages at Exhibit E to the Ottinger Declaration); those pages do not contain any admissions from Libutti regarding this alleged reason for Lorusso's promotion and are, instead, simply a description of his role within Alitalia's North American management structure.

-4-

3.      Finally, Sciarresi alleges that Libutti told him, also in August 2004, that "[H]e wasn't comfortable with a woman in high position" (April 18, 2008 Sciarresi Deposition p. 12, at Exhibit G to the Ottinger Declaration; referred to at Opposition pp. 5-6).

**ARGUMENT**

**POINT ONE**

**THE UNDISPUTED FACTS SHOW THAT PLAINTIFF'S PROMOTION TO MANAGING DIRECTOR OF GA 2000 WAS NOT AN ADVERSE ACTION**

As demonstrated in Alitalia's Moving Memorandum, Lorusso's elevation to Managing Director of GA 2000 was inarguably a promotion and therefore cannot constitute an adverse action as a matter of law, regardless of how she chooses to characterize it (*see* Moving Memorandum pp. 4-6, 14-15).   Lorusso now attempts to establish—through Mariotti's affidavit[6]—that "there is a material issue of fact" as to whether Alitalia effected this promotion with the intent of eliminating GA 2000 (Opposition pp. 21-23).  Mariotti is careful, however, not to suggest that either Libutti or Galli evinced an intention to terminate Lorusso through promoting her to a doomed subsidiary in any of his frequent meetings with them or, indeed, that they wanted to terminate her at all, let alone for discriminatory reasons.

Even accepting Mariotti's allegations as true, they are not sufficient to raise an issue of fact as to whether Alitalia's management intended to eliminate GA 2000 at the time of Lorusso's promotion to Managing Director.  Rather, it is undisputed that on or around July 6, 2004—just over a month before Lorusso's promotion—Libutti and Galli signed a memorandum describing the continuing viability of GA 2000, which recorded sales of $25 million in 2002 and was "currently subject to re-launch initiatives," which were generating considerable further

---

[6] Lorusso never sought to depose Mariotti or, indeed, suggested to Alitalia that she believed him to have any knowledge regarding the company's plans for GA 2000, and so Alitalia has never had the opportunity to examine him on this point.

improvement (in contrast to another Alitalia subsidiary, whose closure they indeed recommend in that memorandum)[7] (memorandum and certified translation of same annexed as Exhibit R to the previously filed Declaration of Alan M. Koral (the "Koral Declaration")).  Consequently, even if Libutti or Galli did evince an intention to close GA 2000 in 2003 or at some earlier point in 2004, as Mariotti claims, the record is clear that they did not hold that view in July 2004.  Moreover, Libutti and Francesco Gallo (then GA 2000's president) both testified at deposition that they were unaware of any plan to close GA 2000 at the time of Lorusso's promotion and were, in fact, enthusiastic about the subsidiary and Lorusso's prospects there (January 7 Gallo Deposition pp. 27, 101, 128-29, at Ex. H to Koral Declaration; January 21 Libutti Deposition pp. 49-50, 52, at Ex. B to Koral Declaration).  Lorusso has thus failed to introduce any evidence creating a factual dispute as to Alitalia's plans for GA 2000 at the time of her promotion (much less that Lorusso's promotion was effected with discriminatory intent), and that promotion therefore cannot be construed as an adverse action.

## POINT TWO

### PLAINTIFF HAS FAILED TO RAISE AN INFERENCE OF DISCRIMINATORY INTENT AS TO ANY ACTION TAKEN TOWARDS HER

Lorusso attempts to raise an inference of discriminatory intent by pointing to allegations by Gallo and Sciarresi of a desire on the part of Libutti and/or Galli in 2004 to terminate "old people".  Lorusso has also offered an alleged statement by Libutti that he "wasn't comfortable with a woman in high position".  However, the statements in question were all made no later

---

[7] Lorusso notes a subsequent Galli memorandum, dated September 2005 (a year *after* Lorusso's promotion), in which Galli noted that GA 2000 had had "Major difficulties even with regard to breaking even" (Opposition p. 7, fn.3; memorandum and certified translation of same annexed as Exhibit P to Ottinger Declaration).  However, the same memorandum notes that although "the making of profits" was not GA 2000's "primary target," the subsidiary still returned to profitability in 2004, the final quarter of which marked Lorusso's appointment as Managing Director.

than August of 2004, and (as demonstrated at Point One, *supra*), Lorusso did not experience any adverse action until nearly two-and-a-half years later, when she was terminated in January 2007. More importantly, the record is undisputed that neither Libutti nor Galli was involved in the decision to terminate her in 2007.

The sole decision-maker was Marco D'Ilario ("D'Ilario"), then Alitalia's Head of International Cargo Sales, and—as already demonstrated through the submission of contemporaneous e-mails and D'Ilario's own uncontroverted testimony—that decision came within the context of a worldwide reduction in force in Alitalia's Cargo Division that resulted in the elimination of seven other positions in North America and fifty positions worldwide (*see* Moving Memorandum pp. 11, 23-24; the Statement of Uncontested Material Facts in Support of Alitalia's Motion For Summary Judgment ¶¶ 39-42; March 14, 2008 Affidavit of Marco D'Ilario ¶¶ 1-3). Lorusso has offered no evidence whatsoever that could support an inference of discriminatory intent on D'Ilario's part—indeed, she simply ignores his role—and consequently, to the extent that her claims spring from her ultimate termination by Alitalia (or from any purported discriminatory intent on the part of Libutti or Galli), they must be dismissed.

Lorusso has further attempted to raise an inference of discrimination by noting that, upon the elimination of her position as Director of Marketing for Alitalia's Passenger Division in 2004, "[s]ome of her responsibilities were redistributed to younger women, Lisa Del Percio, who is in her early 30s, and Francesca Forte, who is in her mid 30s"[8] as well as to a "male employee, Timothy O'Neill, and his staff" (Opposition pp. 5, 23-24). Setting aside the fact that the

---

[8] As demonstrated by deposition testimony, both individuals were very low-level employees: neither was a manager; Del Percio was an administrative assistant; and Forte was "a junior clerk" (Lorusso Deposition pp. 202-205, annexed at Exhibit A to the Koral Declaration; January 21, 2008 Libutti Deposition pp. 50-51, 77, annexed at Exhibit B to the Koral Declaration). Neither individual "replaced" Lorusso as Director of Marketing.

elimination of this position followed Lorusso's promotion to Managing Director of GA 2000, the law is still clear that reassignment of a former employee's duties to other employees does not suffice to establish that he or she has been "replaced," as would be necessary to raise an inference of discrimination. *Suttell v. Manufacturers Hanover Trust Co.*, 793 F. Supp. 70, 73 (S.D.N.Y. 1992) ("[t]he fact that other employees are handling the [duties] previously covered by [former employee] does not indicate that [former employee] was 'replaced' but merely demonstrates that, as in most 'reduction in force' cases, the [employer] has been successful in reducing the number of employees required to perform certain work"); *Morser v. AT&T Information Systems*, 703 F. Supp. 1072, 1083 (S.D.N.Y. 1989) (employee failed to make out even *prima facie* case of age discrimination, notwithstanding that portion of duties were reassigned to younger employee). Lorusso has consequently failed to raise an inference of discrimination through the allegations relating to the reassignment of certain of her job duties, or through any other evidence.

### POINT THREE

### PLAINTIFF HAS FAILED TO RAISE AN INFERENCE OF RETALIATORY INTENT AS TO ANY ACTION TAKEN TOWARDS HER

Lorusso apparently concedes that, as previously demonstrated by Alitalia (*see* Moving Memorandum pp. 16-17, 19-23), retaliatory motivation would be a factual impossibility as to all of the employment actions that she contends are adverse, save for her termination (*see* Opposition p. 26). That termination is thus the lone action at issue in her claim for retaliation, but her Opposition fails to identify facts supporting a causal connection between her protected activity and her termination, as would be necessary to state a *prima facie* case, much less to rebut Alitalia's legitimate nondiscriminatory business reasons for terminating her.

Lorusso has offered only the following conclusory allegation:

-8-

> [A] causal connection exists because Plaintiff's termination occurred in January 2007 within just 2-3 months of her most recent allegations of discrimination and retaliation in late-September and early-November 2006.

(Opposition p. 26). However, as demonstrated in the Moving Memorandum (*see* pp. 24-25), the factual record is undisputed that Marco D'Ilario was the sole person responsible for the decision to eliminate Lorusso's position as part of Alitalia's worldwide reduction in force, and yet none of Lorusso's complaints in 2006 were directed to D'Ilario, he was not the object of any of these complaints, and Lorusso has adduced no evidence that D'Ilario bore retaliatory animus towards her. Indeed, Lorusso has no evidence that D'Ilario was even aware of her complaints. Consequently, she cannot establish a *prima facie* case of retaliation. *See Giannone v. Deutsche Bank Sec., Inc.*, 392 F. Supp.2d 576, 592 (S.D.N.Y. 2005).

Even should the Court conclude that Lorusso can establish a *prima facie* case, the record is undisputed that the elimination of Lorusso's position came within the context of a worldwide reduction of force in the Cargo Division, pursuant to which 50 positions were eliminated and director-level marketing positions were centralized in Rome, in an effort to address the company's ongoing financial crisis (*see* Moving Memorandum, pp. 11, 24-25; the Statement of Uncontested Material Facts in Support of Alitalia's Motion For Summary Judgment ¶¶ 39-42; March 14, 2008 Affidavit of Marco D'Ilario ¶¶ 1-3). As discussed in the Moving Memorandum (*see* pp. 17, 24-25) a *bona fide* reduction in force made in an effort to maintain a deeply troubled company's financial viability is a legitimate non-discriminatory reason for an adverse employment action. *See Tarshis v. Riese Organization*, 195 F.Supp.2d 518, 526 (S.D.N.Y. 2002) (inability to rebut the legitimate nondiscriminatory reason for "layoff" fatal to discrimination claim); *Laverack & Haines, Inc. v. NY State Div. of Human Rights*, 88 N.Y.2d 734, 738, 650 N.Y.S.2d 76, 78, 673 N.E.2d 586, 588 (1996) ("[t]he downsizing of a company's employment rolls, due to business failings and economic setbacks, constitutes a

-9-

sustainable rebuttal and explanation for the decision to terminate a particular employee"). Because Lorusso cannot rebut this legitimate non-discriminatory reason for her termination, her retaliation claim must be dismissed.

## CONCLUSION

From 2004 to 2007, while Alitalia was in crisis, and reduced the workforce in New York from about 130 to under 60, the company gave Lorusso a series of important executive positions in order to avoid laying her off. She has adduced no evidence whatsoever that any further suitable position was available when her final position was eliminated for legitimate reasons. She cannot conjure from this history a cognizable claim for discrimination or retaliation. Thus Defendant respectfully requests an Order, pursuant to Rule 56, granting its motion for summary judgment dismissing the Complaint of Ester Lorusso in its entirety, and granting such other and further relief as the Court deems appropriate.

Dated: New York, New York
      June 19, 2008

VEDDER PRICE P.C.

By: s/ Alan M. Koral
     Alan M. Koral (AK-1503)
     Daniel C. Green (DG-0059)
     1633 Broadway, 47th Floor
     New York, New York 10019
     (212) 407-7700

     *Attorneys for Defendant*
     *Alitalia–Linee Aeree Italiane SpA*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------

ESTER LORUSSO,

                       Plaintiff,

             -against-

ALITALIA-LINEE AEREE ITALIANE SpA,

                     Defendant.

------------------------------------------------------

Case No. 07 CV 3583 (LBS)(RLE)

**CERTIFICATE OF SERVICE**

      I, Daniel Green, hereby declare, pursuant to 28 U.S.C. 1746, under penalty of perjury, that on June 19, 2008, I caused a copy of the **REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT ALITALIA-LINEE AEREE ITALIANE SpA'S MOTION FOR SUMMARY JUDGMENT** to be served upon Plaintiff by electronically filing same, thereby ensuring that Plaintiff's attorney, Robert Ottinger, Esq. of The Ottinger Firm, P.C., received same because he is a registered e-filer and registered to receive e-notices in this case.

DATED:  June 19, 2008                s/  Daniel C. Green
                                          Daniel C. Green